KILPATRICK TOWNSEND & STOCKTON LLP

David E. Sipiora (State Bar No. 124951)
*dsipiora@kilpatricktownsend.com*
Edward J. Mayle (admitted *pro hac vice*)
*tmayle@kilpatricktownsend.com*
1400 Wewatta Street, Ste. 600
Denver, CO  80202
Telephone:   303 571 4000
Facsimile:   303 571 4321

Scott Kolassa (State Bar No. 294732)
*skolassa@kilpatricktownsend.com*
1080 Marsh Road
Menlo Park, CA 94025
Telephone:   650 324 6349
Facsimile:   650 618 1544

Attorneys for Defendants LSI Corporation
and Avago Technologies U.S. Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| REGENTS OF THE UNIVERSITY OF MINNESOTA,<br><br>                Plaintiff,<br><br>      v.<br><br>LSI CORPORATION AND AVAGO TECHNOLOGIES U.S. INC.,<br><br>           Defendants. | Civil Action No. 18-cv-00821-EJD-NMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY THE ACTION PENDING *INTER PARTES* REVIEW**<br><br>Date:   May 31, 2018<br>Time:   9:00 A.M.<br>Place:  Courtroom 4 – 5th Floor<br><br>Hon. Edward J. Davila |

1

# TABLE OF CONTENTS

2

3   I.      INTRODUCTION AND STATEMENT OF THE ISSUE TO BE
            DECIDED ......................................................................................................2

4

5   II.     LEGAL STANDARDS.....................................................................................2

    III.    FACTUAL BACKGROUND ...........................................................................3
6
            A.      The University's Patent Litigation Campaign.......................................3
7
            B.      The University's Tactical "Sovereign Immunity" Claim Fails
8                   at the USPTO. ...................................................................................4

9           C.      All of the University's Other Patent Cases Have Been Stayed
                    Pending IPR. .....................................................................................6
10
            D.      Procedural History and Posture of This Civil Action. .......................7
11
    IV.     ALL OF THE STAY FACTORS STRONGLY FAVOR A STAY
12          PENDING IPR ...............................................................................................8

13          A.      The University Will Not Be Unduly Prejudiced By A Stay. ...............9

14          B.      The IPR Proceedings Could Simplify or Moot This Case. ...............10

15          C.      Discovery is Not Complete and No Trial Date has Been Set. ...........11

16          D.      A Stay Will Reduce the Burdens of Litigation on the Court
                    and Parties. .......................................................................................11
17
    V.      CONCLUSION .............................................................................................12
18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aylus Networks, Inc. v. Apple Inc.*,
5      856 F.3d 1353 (Fed. Cir. 2017)........................................................................................ 10

6 *Cuozzo Speed Tech., LLC v. Lee*,
     136 S. Ct. 2131 (2016) ............................................................................................... 5, 6
7

*Delphix Corp. v. Actifio, Inc.*,
8      No. 13–cv–04613–BLF, 2014 WL 6068407 (N.D. Cal. Nov. 13, 2014)..................................... 3

9 *Ericsson Inc. v. Regents of the Univ. of Minn.*,
10      IPR2017-01186, -01197, -01200, -01213, -01214, -01219 ...................................... 5, 6

11 *Ethicon, Inc. v. Quigg*,
     849 F.2d 1422 (Fed. Cir. 1988)........................................................................................ 3
12

*Evolutionary Intelligence, LLC v. Apple, Inc.*,
13      No. C 13-04201 WHA, 2014 WL 93954 (N.D. Cal. Jan. 9, 2014)........................................... 10

14 *Finjan, Inc. v. Symantec Corp.*,
15      139 F. Supp. 3d 1032 (N.D. Cal. 2015) ...................................................................... 3, 9, 10

16 *Landis v. N. Amer. Co.*,
     299 U.S. 248 (1936)............................................................................................... 2, 3, 11
17

*LSI Corp. v. Regents of the Univ. of Minn.*,
18      IPR2017-01068 (Dec. 19, 2017) ................................................................................ 5, 7, 8

19 *Microsoft Copr. V. Tivo Inc.*,
20      No. 10:cv-00240-LHK, 2011 WL 1748428 ........................................................................... 11

21 *Murata Mach. USA v. Daifuku Co., Ltd.*,
     830 F.3d 1357 (Fed. Cir. 2016)................................................................................. 3, 9, 11
22

*PersonalWeb Technologies v. Apple, Inc.*,
23      69 F. Supp. 3d. 1022 (N.D. Cal. 2014) ....................................................................... 3, 9

24 *Pragmatus AV, LLC v. Facebook, Inc.*,
25      No. 11-CV-02168-EJD, 2011 WL 4802958 (N.D. Cal. Oct. 11, 2011) ........................... 3, 9, 10

26 *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
     137 S. Ct. 1514 (2017).................................................................................................. 7
27

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
28      759 F.3d 1307, 1317 (Fed. Cir. 2014)................................................................................ 11

**Statutes**

35 U.S.C. § 101 ...........................................................................................................8

35 U.S.C. § 311 ...........................................................................................................7

35 U.S.C. § 315(b) ......................................................................................................4

**Other Authorities**

U.S. Const. amend. XI ...........................................................................................5, 6

Fed. R. Civ. P. 12(b)(3).............................................................................................7

Fed. R. Civ. P. 12(b)(6).............................................................................................7

Fed. R. Civ. P. 12(c) ..................................................................................................8

Fed. R. Civ. P. 26(f) ..................................................................................................2

Robin Feldman & Mark A. Lemley, *Do Patent Licensing Demands Mean
   Innovation*?, 101 Iowa L. Rev. 137, 175 (2015) .................................................4

1

**<u>NOTICE OF MOTION</u>**

2

TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on May 31, 2018, at 9:00 A.M. or soon thereafter as

4

counsel may be heard by the Honorable Judge Davila, in the United States District Court for the

5

Northern District of California, located at 280 South 1st Street, San Jose, California, Defendants

6

LSI Corporation and Avago Technologies U.S. Inc. (collectively, "LSI") will move and hereby do

7

move to stay this action pending *inter partes* review ("IPR") of the asserted patent.

8

Plaintiff Regents of the University of Minnesota ("the University") filed its Complaint in

9

the District of Minnesota on August 25, 2016, asserting one patent.  (Dkt. 1.)  That patent expired

10

a few weeks later, on October 15, 2016.

11

On March 10, 2017, LSI filed a Petition with the Patent Trial and Appeal Board ("PTAB")

12

of the United State Patent & Trademark Office ("USPTO") requesting IPR of all of the asserted

13

patent claims.  Then, on July 26, 2017—well before this case was transferred for improper venue

14

from the District of Minnesota on February 1, 2018—LSI moved for a stay pending IPR.  (Dkt.

15

No. 63.)  The motion to stay was briefed and argued in Minnesota, and was ripe for adjudication.

16

But the District of Minnesota found that "Minnesota is not a proper venue," (Dkt. No. 144 at 9),

17

and so, understandably, when transferring this case to this District, the Minnesota court

18

"decline[d] to address" the motion to stay.  (*Id*. at 10 n.3.)  LSI therefore respectfully renews its

19

motion to stay pending completion of the IPR process.

20

As explained below, all of the relevant factors strongly favor a stay pending IPR of the

21

expired patent-in-suit.  The University will not be prejudiced by a stay; the IPR proceedings could

22

dramatically simplify or even entirely moot this case; the case is still at an early stage; and a stay

23

would reduce the burdens of litigation on both this Court and the parties.

24

This motion is based upon this Notice of Motion, the Memorandum and Points of

25

Authorities below, the Declaration of Edward J. Mayle attaching exhibits in support of this

26

motion, any reply papers which may be filed, and such other arguments and evidence as may be

27

brought before the Court prior to or at the hearing of this motion to stay.

28

//

1

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

2

### I.   INTRODUCTION AND STATEMENT OF THE ISSUE TO BE DECIDED

3

LSI respectfully renews its motion to stay the action pending *inter partes* review ("IPR")

4

of the sole asserted patent, U.S. Pat. No. 5,859,601 ("the '601 patent").  The '601 patent expired

5

on October 15, 2016.  LSI's petition for IPR challenges all three of the claims being asserted in

6

this civil action.  As mentioned above, the motion was originally filed in the District of Minnesota

7

on July 26, 2017, (Dkt. 63), but the motion was not adjudicated because the Minnesota Court

8

found that venue did not lie in Minnesota.  (Dkt. No. 144 at 9, *id*. at 10 n.3.)

9

The issue to be decide is whether the Court should stay this action pending completion of

10

the IPR proceedings regarding the expired '601 patent, which is the only patent at issue here.  LSI

11

respectfully suggests that a stay pending IPR is warranted for the following reasons:

12

- The University would not be "unduly prejudiced" by a stay, as the '601 patent is

13

*expired*.  Moreover, the University does not, and did not, make or sell products

14

purportedly covered by the '601 patent.  The only potential remedy here is past

15

money damages.  These facts strongly favor a stay.

16

- A stay could dramatically simplify the issues in question because all three of the

17

asserted patent claims are being challenged in the petition for IPR.  If those claims

18

are cancelled, this case is moot.  And even if the asserted claims survive the IPR,

19

the case would be simplified in several significant ways, as explained below.

20

- The original motion to stay was filed in July 2017, before the Rule 26(f)

21

conference.  Discovery is still not complete, there have been no depositions, and a

22

trial date has not been set.  The early stage of litigation also strongly favors a stay.

23

- A stay pending IPR will indisputably reduce the substantial burdens of patent

24

litigation on the Court and on all parties and their counsel.

25

### II.   LEGAL STANDARDS

26

A court's "power to stay proceedings is incidental to the power inherent in every court to

27

control the disposition of the causes on its docket with economy of time and effort for itself, for

28

counsel, and for the litigants." *Landis v. N. Amer. Co*., 299 U.S. 248, 254-55 (1936).  Thus,

1    district courts have ample "authority to order a stay pending conclusion of a PTO reexamination."

2    *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citing *Landis*, 299 U.S. at 254).

3         Four factors are relevant in deciding whether a civil action should be stayed pending IPR

4    proceedings: (1) whether the non-movant would be "unduly prejudiced"; (2) whether a stay could

5    "simplify the issues in question"; (3) whether "discovery is [not] complete and [no] . . . trial date

6    has been set"; and (4) whether a stay can reduce "the burden of litigation on the court and the

7    parties." *Murata Mach. USA v. Daifuku Co., Ltd.,* 830 F.3d 1357, 1361-62 (Fed. Cir. 2016)

8    (affirming denial of motion to lift stay); *see also Finjan, Inc. v. Symantec Corp*., 139 F. Supp. 3d

9    1032 (N.D. Cal. 2015) (staying case before USPTO instituted IPR, even though Court had

10   conducted a claim construction hearing almost fourth months earlier); *PersonalWeb Technologies*

11   *v. Apple, Inc.,* 69 F. Supp. 3d. 1022, 1025 (N.D. Cal. 2014) (staying case pending IPR where only

12   "roughly half of the claims at issue in this case" were subject to IPR).  While this district generally

13   weighs the first three factors, *see Finjan,* 139 F. Supp. 3d at 1035, it is proper to also consider the

14   fourth factor.  *See Murata*, 830 F.3d at 1361-62; *accord*, *Landis*, 299 U.S. at 254-55 (noting that

15   "economy of time and effort" for the court and parties is a relevant in considering a stay).

16        "While courts are 'under no obligation to stay proceedings pending parallel litigation in the

17   PTAB, ... judicial efficiency and the desire to avoid inconsistent results may, after a careful

18   consideration of the relevant factors, counsel in favor of a limited stay, even before the PTAB has

19   acted on a petition for IPR.'"  *Finjan*, 139 F. Supp. 3d at 1035 (quoting *Delphix Corp. v. Actifio,*

20   *Inc*., No. 13–cv–04613–BLF, 2014 WL 6068407, at *2 (N.D. Cal. Nov. 13, 2014)).  "Indeed, it is

21   not uncommon for this court to grant stays pending reexamination prior to the PTO deciding to

22   reexamine the patent."  *Pragmatus AV, LLC v. Facebook, Inc*., No. 11-CV-02168-EJD, 2011 WL

23   4802958, at *3 (N.D. Cal. Oct. 11, 2011).

24   **III.    FACTUAL BACKGROUND**

25        A.    The University's Patent Litigation Campaign.

26        The University recently made a decision to become a litigious patent assertion entity, and it

27   has filed six patent cases, including this one against LSI.

28

1    On November 5, 2014, the University, in four separate complaints filed in the District of

2    Minnesota, sued the big-four U.S. wireless carriers, Sprint, A&T, T-Mobile, and Verizon.  (Dist.

3    of Minn. Case Nos. 0:14-cv-04666-JRT-TNJ; No. -04669; No. -04671; No. -04672.)  Alcatel-

4    Lucent and Ericsson have intervened.  In those cases, the University alleges infringement of

5    certain patents allegedly related to established 4G LTE network services.

6    Then, on August 25, 2016, also in the District of Minnesota, the University sued LSI.  The

7    University alleges that LSI infringed a patent that was, at the time of the Complaint, about 20-

8    years old.  The patent-in-suit *expired* on October 15, 2016, a few weeks after the Complaint was

9    filed.  The University seeks past money damages for products that had been on the market for

10   years prior to the University's lawsuit.  Judge Wright of the District of Minnesota transferred

11   venue here on February 1, 2018.  (Dkt. No. 144.)

12   Four days after suing LSI, the University sued pharmaceutical company Gilead Sciences in

13   the District of Minnesota, seeking damages for Gilead's blockbuster Hepatitis C drugs.  (Dist. Of

14   Minn. Case No. 0:16-cv-02915-SRN-HB.)  Judge Nelson of the District of Minnesota transferred

15   venue to the Northern District of California last October.  (Case No. 3:17-cv-06056-VC.)

16   By its conduct, the University has shown its intent to adopt a "business model" of waiting

17   for operating companies to succeed in the risky undertaking of bringing products to market, and

18   then filing suit to extract royalties.  As influential commentators have observed, "some universities

19   are approaching product companies, not to create joint ventures or promote the creation of new

20   products, but to seek ex post licenses for already commercialized technology."  Robin Feldman &

21   Mark A. Lemley, *Do Patent Licensing Demands Mean Innovation*?, 101 Iowa L. Rev. 137, 175

22   (2015).  The University's litigious conduct taxes the judicial system, stifles rather than encourages

23   innovation, and harms the public.

24   B.    The University's Tactical "Sovereign Immunity" Claim Fails at the USPTO.

25   In each of the University's patent cases, one or more defendants (or intervenors)

26   challenged the asserted patents by filing petition(s) for IPR seeking cancellation of the claims.

27   The University surely anticipated that the accused infringers would avail themselves of

28   their statutory right to challenge the patents in this manner.  *See* 35 U.S.C. § 315(b) ("An inter

1  partes review may not be instituted if the petition requesting the proceeding is filed more than 1

2  year after the date on which the petitioner … is served with a complaint alleging infringement of

3  the patent."); *Cuozzo Speed Tech., LLC v. Lee*, 136 S. Ct. 2131, 2143 (2016) (noting that Congress

4  intended for IPR to be a "quick and cost effective" alternative to litigation).  And even though the

5  University had voluntarily invoked federal jurisdiction by using its patents as a sword in multiple

6  federal civil patent actions, and even though IPR was foreseeable, the University attempted to

7  shield those same patents from the USPTO's review by filing motions "to dismiss" the IPR

8  proceedings, on the basis of  Eleventh Amendment "sovereign immunity."

9        The University's tactics introduced substantial delay into the IPR proceedings, which

10  normally would have been nearly completed by now.  But ultimately, on two separate occasions,

11  "expanded" panels of seven Administrative Patent Judges at the PTAB, including the chief PTAB

12  judge, unanimously rejected the University's tactical assertion of sovereign immunity, and denied

13  the University's motion to dismiss the IPR proceedings involving the patents at issue in litigation.

14  (*See, e.g.*, Dkt. No. 113; Mayle Decl. Ex. 1 (PTAB's Order in *LSI Corp. v. Regents of the Univ. of*

15  *Minn.*, IPR2017-01068 (Dec. 19, 2017); Mayle Decl. Ex. 2 (PTAB's Order in *Ericsson Inc. v.*

16  *Regents of the Univ. of Minn.*, IPR2017-01186, -01197, -01200, -01213, -01214, -01219) (Dec. 19,

17  2017).)  The panels in the LSI and Ericsson Orders included some common PTAB judges, but the

18  panels were not entirely identical.  All told, nine different PTAB judges have rejected the

19  University's sovereign immunity claim; none have credited it.

20        Once the University's "motion to dismiss" IPR was denied, the proceedings would have

21  proceeded on the merits.  But instead, the University made another procedural move specifically

22  designed to "divest" the PTAB of jurisdiction.  Under the "collateral order" exception to the rule

23  that only final judgments can be appealed, the University filed immediate appeals of the PTAB's

24  denial of the University's sovereign immunity claims.  The Federal Circuit has consolidated

25  appeals from seven IPR proceedings, including the one filed by LSI.  (*Regents of the Univ. of*

26  *Minn. vs. LSI Corp.*, Fed. Cir. Case: 18-1559 at Dkt. 2 (Feb. 21, 2018 order consolidating appeals

27  involving LSI and Ericsson).)  On March 15, 2018, Gilead moved to intervene in the appeal.  (*Id.*

28

1   at Dkt. 31.)  Further to its effort to stave off expert review of the patents by the USPTO, the

2   University has indicated that it will oppose Gilead's motion to intervene.  (*See id.*)

3        The University's appeal lacks merit, but that is not the point.  The University is attempting

4   to achieve through procedure that which it could not achieve on the merits—*viz.*, to get its expired

5   patent to trial in this action before the PTAB has the opportunity to cancel the asserted claims for

6   being unpatentable, which is the basis for LSI's IPR petition.  This conduct turns the statutory IPR

7   scheme on its head, which was designed to be a low cost and efficient alternative to litigating the

8   validity of a patent in district court.  *Cuozzo*, 136 S. Ct. at 2143.

9        Out of fairness and to save money, LSI offered to agree to stay the IPR proceedings,

10  pending the University's immediate appeal of the Eleventh Amendment issue, if the University

11  would agree to stay this action pending the ultimate completion of the IPR proceedings.  But the

12  University refused, without providing any reason for its refusal to compromise.  (Mayle Decl. Ex.

13  3 at 18:14-23:5 (PTAB Jan. 3, 2018 Hr'g Tr.).)  Because the University refuses to agree to stay

14  this action pending the IPR proceedings, LSI respectfully renews its motion for such a stay.

15       C.    All of the University's Other Patent Cases Have Been Stayed Pending IPR.

16       As mentioned above, the University also has pending patent cases against Sprint, A&T, T-

17  Mobile, Verizon, Alcatel-Lucent, Ericsson, and Gilead.  All of those actions have been stayed

18  pending IPR.

19       Specifically, on August 30, 2017, Magistrate Judge Tony N. Leung of the District of

20  Minnesota stayed the University's actions against the wireless carriers / intervenors.   (*See* Dkt.

21  No. 87-1 at 21 in this case ("The case is **STAYED** pending the USPTO's decision on Ericsson's

22  IPR petitions[.]")).  And on March 9, 2018, Judge Chhabria stayed the University's case against

23  Gilead in Case No. 17-cv-06056-VC (N.D. Cal.).  (*See* Mayle Decl. Ex. 4 ("The litigation is

24  stayed until the Board declines to institute proceedings or issues final written decisions on the

25  merits in Gilead's four pending petitions.").)

26       Those cases were stayed even though the asserted patents are still in force.  In contrast, as

27  explained above, the only patent at issue in this case is ***expired***.  It makes little sense to continue

28

1   devoting scarce judicial and party resources here, given that the patent is expired and all of three

2   of the asserted patent claims are being challenged in LSI's petition for IPR.

3           D.       Procedural History and Posture of This Civil Action.

4           This is a complicated patent case.  The '601 patent at issue – entitled "Method and

5   Apparatus for Implementing Maximum Transition Run Codes" – is highly technical. (Dkt. No. 40-

6   2).  It is similar to an academic paper written for electrical engineering Ph.D.'s. (*See* Dkt. No. 40

7   at ¶¶ 49-52).  The accused products are state-of-the-art devices "including all read channel/SOC

8   HDD [system on a chip hard disk drive] Chips currently sold under the tradename TrueStore[.]"

9   (Dkt. No. 40 at ¶ 75.)  Such products involve "immensely tricky" technology. (*Id.* at ¶ 37.)  The

10  legal issues at play include, for example: the proper construction of the patent's highly technical

11  claims (a legal issue for the Court); whether the claims are infringed, not invalid, and not

12  unenforceable; and potentially, past damages.

13          The University filed its original Complaint on August 25, 2016, in the District of

14  Minnesota.  In response to LSI's Rule 12(b)(6) motion filed October 26, 2016 (Dkt. No. 33), the

15  University filed a First Amended Complaint. (ECF No. 40.)  Shortly thereafter, as mentioned

16  above, LSI filed a Petition for IPR of the '601 patent under 35 U.S.C. § 311.  (PTAB Case

17  IPR2017-01068 (Petition filed March 10, 2017)).

18          At the time the IPR Petition was filed, neither Defendant had Answered, discovery was not

19  open, and there had been no litigation on the merits.

20          On June 29, 2017, the District of Minnesota denied the Rule 12(b)(6) motion.  Shortly

21  before that decision, the Supreme Court issued a landmark decision changing the interpretation of

22  the patent venue statute.  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514

23  (2017).  Avago Technologies U.S. Inc. promptly moved to dismiss under Rule 12(b)(3) because it

24  does not "reside" in Minnesota under *TC Heartland*.  (Dkt. No. 59.)  The University opposed the

25  motion, despite offering no record evidence indicating that venue was proper in Minnesota.

26  District of Minnesota Judge Wright transferred venue on February 1, 2018, finding that "[t]he

27  University relies *entirely on speculation and innuendo* to support its contention that Avago

28  maintains a physical place of business in Minnesota."  (Dkt. No. 144 at 8 (emphasis added).)

1    Months before the case was transferred, on July 26, 2017, LSI filed a motion to stay the

2    action pending IPR.  As mentioned above, the motion was briefed and argued in Minnesota, but it

3    was not decided because venue was improper.  (*See* Dkt. No. 95; Dkt. 144 at 10 n.3.)

4    Very recently, on March 14, 2018, the parties exchanged Preliminary Claim Constructions.

5    Both sides have produce some documents, but neither party has taken or noticed depositions.

6    Further, the highly confidential "source code" type material, which shows precisely how the

7    accused products operate, has been made available to the University since last October, but the

8    University has not inspected it yet.

9    On March 14, 2018, the Court issued its Patent Scheduling Order.  (Dkt. No. 181.)  Fact

10   discovery cutoff is September 15, 2018, expert discovery cutoff is December 7, 2018, and the

11   deadline for dispositive motions is January 18, 2019.  (*See id.* at 3.)

12   On March 15, 2018, LSI moved for a judgement on the pleadings under Fed. R. Civ. P.

13   12(c) that the asserted patent claims are invalid under 35 U.S.C. § 101.  That motion is noticed for

14   hearing on May 31, 2018, along with this motion.  However, LSI stands ready to argue this motion

15   to stay at any earlier time convenient for the court, for example, in connection with the May 3,

16   2018 Interim Case Management Conference.

17   **IV.    ALL OF THE STAY FACTORS STRONGLY FAVOR A STAY PENDING IPR**

18   As discussed above, all other cases in the University's patent litigation campaign have

19   been stayed pending IPR proceedings.  *See* Section III.C, *supra*.  The facts, law, and equities of

20   this case make out an even stronger case for a stay than in the other, already-stayed cases.

21   First, here, unlike in the other stayed cases, there is only one patent at issue, and it is

22   ***expired***.  The University asserts only three claims of its expired patent—all of which are

23   challenged on multiple grounds in LSI's Petition for IPR.

24   Second, when the University opposed LSI's motion to stay while this case was still in

25   Minnesota, the University's principal argument was that the IPR *might not* be instituted because

26   the University had invoked a "sovereign immunity" in the IPR.  (*See* Dkt. No. 72 at 25-29.)  But

27   since then, nine different PTAB judges have rejected the University's tactical assertion of

28   sovereign immunity.  (*See* Mayle Decl. Exs. 1 and 2 (finding that the University waived any claim

1   to sovereign immunity).)  No PTAB judge has credited the University's argument.  The District of

2   Minnesota stayed multiple of the University's actions, well *before* the PTAB rejected the

3   University's sovereign immunity arguments.  (*See* Dkt. No. 87-1, at *18 (rejecting University's

4   argument that Ericsson's IPR petitions will not be instituted because the University allegedly had

5   "a sovereign immunity defense.").  The District of Minnesota held that "the potential for enormous

6   cost and time savings should an IPR result outweighs the delay caused by a stay … Even the

7   chance for simplification in these hyper complex cases warrants the measure of instituting a stay

8   before IPR has instituted."  (Dkt. No. 87-1, at *20-*21.)

9       As shown below, all of the relevant factors strongly favor a stay pending IPR.

10      A.    The University Will Not Be Unduly Prejudiced By A Stay.

11       An important factor to consider is whether the non-movant would be "unduly prejudiced"

12   by a stay pending IPR.  *See Murata.,* 830 F.3d at 1361-62 (affirming denial of motion to lift stay);

13   *Finjan*, 139 F. Supp. 3d 1032 (staying case before USPTO instituted IPR, even though Court had

14   conducted a claim construction hearing months earlier); *PersonalWeb Technologies,* 69 F. Supp.

15   3d. 1022 (staying case pending IPR where only "roughly half of the claims at issue in this case"

16   were subject to IPR); *Pragmatus*, No. 11-CV-02168-EJD, 2011 WL 4802958 (granting motion to

17   stay without argument, staying action "in its entirety pending either final exhaustion of the

18   reexamination proceedings, including any appeals").

19      Here, the University cannot be heard to complain of "undue prejudice" if the case is stayed

20   because the '601 patent *expired* long ago, and in any event the University does not compete with

21   Defendants.  The fact that the only potential remedy at issue is past damages proves that there can

22   be no prejudice to the University in staying this action until the IPR process is complete.

23      District of Minnesota Judge Wright recognized that there would be no undue prejudice in

24   staying the action, given that the patent is expired, and specifically challenged the University's

25   counsel to explain otherwise, which, of course, could not and cannot be done:

26          THE COURT: But the patents are expired, right?

27          So I am trying to understand what prejudice would result

28          from a stay.

1      MR. McELHINNY: Well, Your Honor, the -- from my

2  perspective, the prejudice is delay. …

3      THE COURT: How? I mean, tell me what the harm is when the patents

4  are expired.  I'm just missing something here. …

5  (*See* Mayle Decl. Ex. 5 at 42:6-44:8 (Sept. 22, 2017 Hr'g Tr.).)

6          To be sure, the IPR has not been instituted, but that is because the University has delayed

7  that proceeding pursuing its meritless sovereign immunity claim—a claim which has been

8  universally rejected by PTAB judges.  The University should not benefit, in this forum, from its

9  own delay tactics in the IPR proceedings.  In any event, this Court often stays patent cases before

10  the USPTO has decided whether to reexamine a patent.  *See, e.g.*, *Finjan*, 139 F. Supp. 3d 1032

11  *Pragmatus*, No. 11-CV-02168-EJD, 2011 WL 4802958.  Finally, as mentioned above, all of the

12  University's other patent cases have been stayed, even though those cases (1) were at more

13  advanced stages of litigation and (2) involve ***un***-expired patents.  *See* Section III.C, *supra*.

14      B.    The IPR Proceedings Could Simplify or Moot This Case.

15          The PTAB will decide whether the '601 patent claims are unpatentable.  Any claims that

16  are cancelled in the IPR are dead for this case.  In fact, the IPR has the potential to entirely moot

17  this case if all of three of the asserted claims are cancelled—the ultimate simplification.

18          Even if the claims survive IPR (which is unlikely), there would still be simplification.  At a

19  minimum, the IPR will likely shed light on the meaning of the claims, may give rise to estoppel of

20  arguments, claims or defenses, and could prompt a settlement.  *See Aylus Networks, Inc. v. Apple*

21  *Inc*., 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("[W]e hold that statements made by a patent owner

22  during an IPR proceeding, whether before or after an institution decision, can be considered for

23  claim construction and relied upon to support a finding of prosecution disclaimer."); *see also*

24  *Evolutionary Intelligence, LLC v. Apple, Inc.*, No. C 13-04201 WHA, 2014 WL 93954, at *3

25  (N.D. Cal. Jan. 9, 2014) ("In any event, there is a possibility that one or more of the asserted

26  claims may be changed or cancelled ... This action may benefit from the PTAB's decision in this

27  regard.  Development of the inter partes review record may also clarify claim construction

28  positions for the parties, raise estoppel issues, and encourage settlement.") (staying action pending

1  decision on institution of IPR proceedings, even though defendant Apple waited until one year

2  after the complaint was filed to petition for IPR); *Microsoft Copr. V. Tivo Inc*., No. 10:cv-00240-

3  LHK, 2011 WL 1748428, at *4 (finding that a stay pending reexamination "is likely to simplify

4  the issues" even if the claims are not cancelled—granting motion to stay "pending final exhaustion

5  of all six pending reexamination proceedings." *id*. at *7).

6         When the District of Minnesota stayed the University's cases against wireless carriers, it

7  held that "the potential for enormous cost and time savings should an IPR result outweighs the

8  delay caused by a stay … Even the chance for simplification in these hyper complex cases

9  warrants the measure of instituting a stay before IPR has instituted."  (Dkt. No. 87-1, at *20-*21.)

10  So too here.

11         C.      Discovery is Not Complete and No Trial Date has Been Set.

12         As mentioned above, LSI filed its IPR Petition over a year ago, on March 10, 2017, and

13  LSI moved to stay the action while it was in Minnesota before either party had answered.  The

14  case has progressed somewhat since then, but the time of the filing of the motion to stay "is the

15  relevant time to measure the stage of litigation."  *VirtualAgility Inc. v. Salesforce.com, Inc*., 759

16  F.3d 1307, 1317 (Fed. Cir. 2014) ("Generally, the time of the motion [to stay] is the relevant time

17  to measure the stage of litigation.  … At the time Defendants filed their motion in May 2013, the

18  case was less than four months old. Discovery had not yet begun and no trial date had been set.").

19         This case is still at an early stage.  There are still six months left for completion of fact

20  discovery, nine months for expert discovery, ten months for filing of dispositive motions, and no

21  trial date has been set.  (*See* Dkt. 186 at 3.)  No matter how one looks at it, the litigation is "still at

22  its infancy, which favors granting the stay."  *VirtualAgility*, 759 F.3d at 1317.

23         D.      A Stay Will Reduce the Burdens of Litigation on the Court and Parties.

24         As mentioned above, it is also appropriate to consider whether a stay would reduce the

25  burdens of litigation on the Court and on the parties and their counsel.  *See Murata Mach. USA*,

26  830 F.3d at 1361-62; *accord*, *Landis*, 299 U.S. at 254-55 (noting that "economy of time and

27  effort" for the court and parties is relevant in considering a stay).

28         Litigating overlapping issues of patent validity in different forums is hardly an efficient use

1    of this Court's or of the parties' resources.  Especially in view of the facts that the patent is expired

2    and the PTAB has already rejected the University's sovereign immunity motion to dismiss.  This

3    fourth factor, like the first three factors discussed above, strongly favors a stay.

4    **V.    CONCLUSION**

5          All of the University's pending patent cases have been stayed pending IPR proceedings,

6    except for this one.  This case should be stayed.  The PTAB has rejected the University's alleged

7    sovereign immunity defense, and the patent-in-suit is expired.  The University will not be

8    prejudiced by a stay; the IPR process will streamline and simplify the issues; this case is still at an

9    early stage of litigation; and a stay will reduce the burdens on the Court and the parties of

10   litigating the complex issues that this case involves.  For all of these reasons, the Court should stay

11   this litigation pending the final resolution of the IPR involving the expired '601 patent.

14   DATED:  March 16, 2018              Respectfully submitted,

15                                      KILPATRICK TOWNSEND & STOCKTON LLP

17                                      By: */s/ David E. Sipiora*
                                        David E. Sipiora (State Bar No. 124951)
18                                      *dsipiora@kilpatricktownsend.com*
                                        Edward J. Mayle (admitted *pro hac vice*)
19                                      *tmayle@kilpatricktownsend.com*
                                        1400 Wewatta Street, Ste. 600
20                                      Denver, CO  80202
                                        Telephone:   303 571 4000
21                                      Facsimile:    303 571 4321

22                                      Scott Kolassa (State Bar No. 294732)
                                        *skolassa@kilpatricktownsend.com*
23                                      1080 Marsh Road
                                        Menlo Park, CA 94025
24                                      Telephone:   650 324 6349
                                        Facsimile:    650 618 1544

25                                      Attorneys for Defendants LSI Corporation
26                                      and Avago Technologies U.S. Inc.