KILPATRICK TOWNSEND & STOCKTON LLP

David E. Sipiora (State Bar No. 124951)
*dsipiora@kilpatricktownsend.com*
Edward J. Mayle (admitted *pro hac vice*)
*tmayle@kilpatricktownsend.com*
1400 Wewatta Street, Ste. 600
Denver, CO 80202
Telephone:  303 571 4000
Facsimile:   303 571 4321

Scott Kolassa (State Bar No. 294732)
*skolassa@kilpatricktownsend.com*
1080 Marsh Road
Menlo Park, CA 94025
Telephone:  650 324 6349
Facsimile:   650 618 1544

Attorneys for Defendants LSI Corporation
and Avago Technologies U.S. Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REGENTS OF THE UNIVERSITY OF MINNESOTA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LSI CORPORATION AND AVAGO TECHNOLOGIES U.S. INC.,<br><br>　　　　　Defendants. | Civil Action No. 18-cv-00821-EJD-NMC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S "SUPPLEMENTAL" INFRINGEMENT CONTENTIONS**<br><br>Date:　May 31, 2018<br>Time:　9:00 A.M.<br>Place:　Courtroom 4 – 5th Floor<br><br>Hon. Edward J. Davila |

## I. INTRODUCTION

The University's stated "two reasons" for denying the motion (Dkt. 184 at 2-3)—(1) that it was allegedly not "require[d] … to seek leave" and (2) that there is "good cause" to amend—both are without merit and should be rejected.

*First*, the operative Scheduling Order states that the "**schedule may be modified only upon formal motion and a showing of good cause as required by Local Rule 16.3**." (Dkt. 112 at 1 (emphasis by Court).)  This conspicuous text is the "express requirement that the parties move for leave to amend" that the University curiously says is "[a]bsent." (Dkt. 184 at 2.)  And, while the University argues that imposing a "move first" obligation would constitute an "unjust order" (*see id*. at 2-3), the Rules themselves impose this very obligation.  *See* Fed. R. Civ. P. 16(d) ("This order controls the course of action unless the court modifies it"); Rule 16(b)(4) ("A schedule may be modified only for good cause and with the judge′s consent.").

Further, granting the motion will not be a "draconian sanction" because the University will not be "preclude[ed]" from "responding to Defendants' non-infringement arguments." (Dkt. 184 at 3.)  Rather, the University can attempt to show infringement under its initial theory. (Dkt. 131 at 9-13.)  Indeed, the University insists that it has not modified its theory of infringement with its "supplemental" contentions (Dkt. 184 at 6 at ll. 11-13), so there should be no hardship in being required to adhere to its initial, allegedly unchanged theory.  On the other hand, if the Court denies the motion to strike the University's amended contentions, it should strike the University's initial contentions.  Otherwise, the University's failure to seek leave or show good cause will be rewarded with multiple bites at the apple, using inconsistent theories.

*Second*, the University has not shown good cause to amend.  In particular, it: (1) failed diligently to analyze the same LSI patents that it cited in the Complaint; (2) failed diligently to evaluate LSI's product specifications *before* the deadline for serving contentions; (3) delayed requesting discovery; (4) *to this day*, has not reviewed LSI's source code; and (5) delayed showing LSI's product specifications to its experts until *after* contentions were due. (Dkt. 131 at 13-17.)

The University makes no real effort to dispute points (3)-(5) above, which is reason alone to grant the motion.  And while the University tries to dispute points (1)-(2) above, it cannot

credibly do so. In particular, LSI showed that all of the information that the University needed to formulate its new contentions was available *prior* to the Court's deadline for serving contentions, both (1) in the public domain in the form of patents, and (2) in LSI's product specifications that LSI produced on November 28, 2017, in response to the University's delayed discovery requests. (Dkt. 131 at 10-14.) As to the LSI patents, the University suggests that it could not have known that those patents covered the accused products. (Dkt. 184 at 11). Then why did the University tell the District of Minnesota that those same patents show infringement? (Dkt. 131 at 11.) As to the product specifications, the University's remark that only a "handful of product specifications" were produced on November 28 underscores its own lack of diligence. (Dkt. 184 at 5.) If the production was indeed no more than a mere "handful," the University cannot explain its failure to diligently consider these "handful" of documents before the deadline for contentions.

  ***Third***, having failed to seek leave of Court, and unable to demonstrate good cause, the University retreats to its argument that there has been no "gamesmanship" and that LSI has not been prejudiced in any material way. This is beside the point. Without a showing of diligence, as here, there is "no need to consider the question of prejudice." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1368 (Fed. Cir. 2006); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (holding that if movant fails to show diligence "the inquiry should end"); *Sherman v. Winco Fireworks,* 532 F.3d 709, 711 (8th Cir. 2008) ("[W]e will not consider prejudice if the movant has not been diligent[.]"). Hence, as set forth more fully below, the University cannot justify its action and the motion should be granted, striking its "supplemental" infringement contentions.

## II. THE UNIVERSITY'S UNTIMELY CONTENTIONS ARE BRAND NEW—THEY ARE NOT MERE "ELABORATIONS"

  Prior to the service of its so-called "supplemental" infringement contentions, the University's only infringement theory was based on its allegation that the [REDACTED] in the accused products is the component that infringes the asserted method claims. (*See* Dkt. 131 at 9-12 (quoting the University's December 11, 2017 infringement contentions and the University's

1 Rule 12(b)(6) hearing slide—both of which are based entirely on operation of the ███ )).

2 In an attempt to minimize its failure to seek leave of Court or to show good cause for its

3 amendment, the University suggests that its "Supplemental Charts" merely "elaborate on" the

4 "same infringement theory" that the University "asserted initially[.]" (Dkt. 184 at 6.) Not so.

5       The University's "supplemental" theory is based on its new allegation that the ███

6 ███ in the accused products (not the ███ ) is responsible for infringement of the

7 asserted claims. (*See* Dkt. 131 at 12-13.) It is a simple matter to see that the University's two

8 theories are incompatible: If the ███ is responsible for infringement, then the ███

9 ███ is not; likewise, if the ███ is responsible for infringement—even in part—

10 then operation of the ███ does not, by itself, infringe.

11 **III. THE UNIVERSITY FAILED TO SEEK LEAVE OF COURT TO AMEND.**

12       In this District, amendment of infringement contentions "may be made only by order of the

13 Court upon a timely showing of good cause." Patent L.R. 3-6. The standard for amending

14 contentions in the District of Minnesota is the same. (Dkt. 131 at 5-7.) And, as mentioned

15 previously, the Scheduling Order that was in effect at the relevant time orders that "**The schedule**

16 **may be modified only upon formal motion and a showing of good cause as required by Local**

17 **Rule 16.3.**" (Dkt. 112 at 1.) *See* Fed. R. Civ. P. 16(d) ("This order controls the course of action

18 unless the court modifies it"); Rule 16(b)(4) ("A schedule may be modified only for good cause

19 and with the judge's consent."). Hence, the obligation to seek leave before amending is clear.[1]

20       In fact, on page 7 of its opposition, the University cites a case holding that language such

21 as that in the Scheduling Order here applies to amendment of contentions. *Leseman, LLC v.*

22 *Stratasys, Inc.*, No. CV 14-363 (SRN/SER), 2015 WL 12766650, at *19 (D. Minn. Dec. 21, 2015),

23 *aff'd in part, rev'd in part*, 2016 WL 1117411 (D. Minn. Mar. 22, 2016) ("Indeed, given the

24 language of the Amended Pretrial Scheduling Order, as well as the relevant authority from this

---

[1] In any event, this District's rules have been in effect since the case was transferred almost two months ago, and the University also did not move this Court for leave to amend. *See PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*, No. 16-CV-01266-EJD, 2017 WL 2180980, at *15 (N.D. Cal. May 18, 2017) ("The fact that this case originated in the Eastern District of Texas does not immunize PersonalWeb's shortcomings."); (*see also* Dkt. 176 at 2).

DEF. REPLY ISO MOT. TO STRIKE "SUPPLEMENTAL" INFRINGEMENT CONTENTIONS    - 3 -
CASE NO. 18-CV-00821-EJD-NMC

District, it is clear that a party such as Leseman must move the Court for relief when it seeks to supplement its claim chart beyond the deadline provided in the applicable pretrial scheduling order.").[2] The motion should be granted for this reason, standing alone.

## IV. THE UNIVERSITY FAILED TO SHOW GOOD CAUSE FOR ITS AMENDED INFRINGEMENT CONTENTIONS

Exemplary circumstances "that may" support a finding of good cause include "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." Patent L.R. 3-6. No such circumstances exist here. Quite to the contrary, the University possessed sufficient public and non-public information to develop its infringement theories *before* the Court's deadline.

### A. LSI's Non-Infringement Defense Does Not Constitute "New Information" or Good Cause to Amend Contentions.

The theme of the University's opposition is that LSI's counsel is responsible for the University's lack of diligence. This blame-shifting has no merit and should be given no weight.

#### 1. The University Possessed the Relevant Information Before the December 11, 2017 Deadline for Serving Infringement Contentions.

The University has muddied the factual waters, suggesting that, prior to the date that its infringement contentions were due, it lacked information regarding the ▮▮▮▮▮▮ in the accused products. (*See* Dkt. 184 at 10.). Not so. The University possessed all material information necessary to articulate its infringement contentions prior to the deadline.

First, as LSI showed, the University itself, in its timely infringement contentions of December 11, 2017, cited, quoted, and relied on, a page in LSI's product specification that states as follows: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (Dkt. 131 at 11-12 (citing

---

[2] The Court there "reluctantly" denied a motion to strike amended contentions, but only for reasons that do not apply here. *See Leseman*, 2015 WL 12766650, at *20-*21 (defendant "produced a significant number of documents that included engineering drawings" for products late in the case, which documents showed infringement for the first time, declining to strike the amended contentions where circumstances presented "a close case"). The University's lack of diligence in serving infringement contentions is discussed below in Section III.

undisputed record evidence).) Second, the University cut and paste an excerpt of this very page from LSI's product specification (Bates No. LSI-UMN 00001355, reproduced in Verdini Decl., Ex. A) into its infringement contentions served December 11, 2017. (*See* Dkt. 131 at 11-12). Third, as shown in LSI's opening brief and below, the University, in its Complaint, cited several LSI patents containing information consistent with the product specifications that the University quoted in its timely contentions. (*See id.* at 10, 11, 13, 14.)

Unable to dispute this record evidence, the University argues that "[t]he product specifications that Defendants produced before the University served its Claim Construction Charts did not explain ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Dkt. 184 at 10.) This is, at best, misleading. First, the product specification quoted by the University in its timely infringement contentions states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (LSI-UMN 00001381, attached as Ex. A to Verdini Declaration) (emphasis added). Second, the LSI patents cited by the University in the Complaint contain this same information. Such patents even include a picture of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.,* ▮▮▮▮▮▮▮▮▮ at Figures 1 and 4 (▮▮▮▮▮▮▮▮▮▮▮▮).[3] Thus, it is misleading for the University to suggest that it lacked such information before the deadline for serving contentions. (Dkt. 184 at 10.)

The only "new information" in the product specification that was produced on December 19, 2017 relates merely to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, in that case, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (*See id.* at 10-11, quoting Verdini Decl. Ex. B at 3.) But the University does not (and cannot) explain how its alleged lack of knowledge about the mere ▮▮▮▮▮▮▮▮ being inserted somehow prevented it from formulating its contentions. The ▮▮▮▮▮▮▮▮ being inserted is not relevant to the issue at hand, as the claimed "j and k constraints," which are allegedly imposed by ▮▮▮▮▮▮▮ in the accused products, can be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. That ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is

---

[3] Figure 1 of the patent shows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

entirely immaterial. Therefore, such "new information" does not constitute good cause for the sweeping amendments to the University's infringement contentions.

**2.    Arriving At An Understanding of Why There is No Infringement When Told By Opposing Counsel Does Not Constitute "New Information."**

The University has not cited a single case supporting its argument that a plaintiff arriving at an understanding of a defendant's non-infringement defense constitutes "new information" authorizing a plaintiff to switch its basic theory of infringement. (*See* Dkt. 184 at 11.) This is not surprising, as its argument fundamentally misunderstands the burden of proof in patent litigation. The plaintiff is required to state its theory of infringement in the first instance. *See* Patent L.R. 3-1. And then, the defendant need not produce its core technical documents (*e.g.*, source code and product specifications) until 45 days *after* the plaintiff serves infringement contentions. Patent L.R. 3-4(a). In this case, first filed in the District of Minnesota, the University had the benefit of LSI's product specifications even *before* contentions were due on December 11, 2017. The University should not be allowed to test the waters by serving some contentions—while withholding others that could have been gleaned from a diligent review of LSI's product specifications and public information—to see how LSI would respond, only to then radically switch infringement theories after the Court's deadline. *See* Patent L.R. 3-6.

**B.    The University Failed to Diligently Consider Public Information.**

The University cited public LSI patents in its original Complaint as proof of infringement. (*See* Dkt. 131 at 11, 13-15.) Then, in opposing LSI's Rule 12(b)(6) motion, the University used those same public LSI patents to tell Judge Wright of the District of Minnesota "[w]here infringement [allegedly] occurs" in the accused products. (*See id*. at 11.) All of this is undisputed. (*See* Dkt. 184 at 11.) Therefore, the University's argument that there is "nothing" in the case to suggest to the University that "Defendants implement in their actual products the technology discloses in the patents" (Dkt. 184 at 11) must fall on deaf ears. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintain that position, he may not thereafter, simply because his interests have changed, assume a contrary position[.]").

Importantly, LSI showed, and the University does not dispute, that the LSI patents cited by the University in the Complaint contain all of the information that the University needed to articulate its infringement contentions before the Court's deadline. (Dkt. 131 at 13-15.) This shows that the University was not diligent. *See* Patent L.R. 3-6; *GoPro, Inc. v. 360Heros, Inc.*, No. 16-CV-01944-SI, 2017 WL 1278756, at *2-*3 (N.D. Cal. Apr. 6, 2017) (denying leave to amend without considering prejudice, finding party "was not diligent" because product "was available for purchase on GoPro's website in August 2016, before 360Heros filed its infringement counterclaim" and "360Heros had ample time before serving its initial contentions to purchase an Omni device, investigate it, and draft appropriate contentions."); *Synopsys, Inc. v. ATopTech, Inc*, No. 13-CV-02965-MMC-DMR, 2016 WL 6610344, at *5 (N.D. Cal. Nov. 9, 2016) (granting leave to amend as to contentions based on defendant's late production of source code but denying "leave to include any proposed amendments based on," among other things, "the 2007 version of" the accused product corresponding to timely produced source code or "information that was publicly available").

### C.   The University Was Not Diligent In Seeking Discovery In the First Instance.

LSI showed that the University was not diligent in seeking discovery in the first instance. (Dkt. 131 at 15.) The University does not genuinely dispute this, and instead, admits that it "agreed not to move to compel" LSI to produce documents earlier in the case as a part of LSI's "initial document production." (Dkt. 184 at 5.) The University's stipulation is binding under Fed. R. Civ. P. 29, and it undercuts any argument that the University's lack of diligence can be blamed on LSI's document production. The product specifications for the accused were produced by LSI *before* the University's infringement contentions were due.[4]

If the University needed more time to consider the product specifications, it should have moved the Court to extend the deadline for serving contentions, before the deadline passed. It did not. Or it should have moved to compel earlier production of the product specifications. Again, it did not. In any case, it could have served its discovery requests much sooner than it did.

---

[4] Except for one that did not contain any "new information" relevant to this motion, as discussed above. *See also* Dkt. 131 at 17 n.10.

DEF. REPLY ISO MOT. TO STRIKE "SUPPLEMENTAL" INFRINGEMENT CONTENTIONS     - 7 -
CASE NO. 18-CV-00821-EJD-NMC

### D. The University Has Still Not Inspected LSI's Source Code.

Almost a year ago, the University argued that it "cannot make more detailed factual allegations [regarding infringement] because the [accused] MTR-enabled Products cannot be reverse-engineered." (Dkt. 48 at 13.) That excuse has grown stale because the source code has been available for inspection since last October—before infringement contentions were due. But for reasons that it has not explained, the University *still* not inspected LSI's source code.

The University sheepishly alleges, in a footnote, that it is "diligently attempting" to review the source code but that "Defendants twice refused to make it available on a weekend at their offices in Colorado when the University's expert (a Georgia resident) was available there." (Dkt. 184 at 12 n.3.) Absent from the University's footnote is that the University did not first ask to inspect the source code until three days *after* LSI moved to strike the University's unilaterally-amended contentions. (Mayle Decl, Ex. 1 (Jan. 26, 2018 email).) And even then, the ask from the University was to have counsel for LSI open its offices on Sunday and Monday during the 2018 President's Day long weekend. (*See id.*) Counsel for the University then asked to inspect the source code on Sunday, February 25, 2018 and Monday February, 26, 2018. LSI's counsel stated truthfully that the office is closed on Sunday, but that the University's counsel and experts were welcome to come Monday or during the week. (*See id.*) Counsel for the University did not accept or even respond to this offer, which still stands today. (*See id.*)

The University's failure to inspect LSI's source code shows a lack of diligence. *Thought, Inc. v. Oracle Corp.*, Case No. 12:cv-05601-WHO, at *7 (N.D. Cal. Oct. 7, 2015) ("Thought's decision to wait over a year to begin a substantive review of source code does not demonstrate diligence. … The delay that practice insures conflicts with the aim of the patent local rules to require parties to crystallize their theories early on in the case.") (striking amended infringement contentions); *Synopsys, Inc*, No. 13-CV-02965-MMC-DMR, 2016 WL 6610344, at *5.

### E. The University Was Not Diligent Because its Experts Did Not Review LSI's Core Technical Documents Before Infringement Contentions Were Due.

Further underscoring its lack of diligence, the University did not show LSI's product specifications to its experts until, at the earliest, *after* the deadline for serving infringement contentions. (Dkt. 131 at 16-17.) The University does not dispute this. (*See* Dkt. 184 at 11-12.)

Apparently, Plaintiff's counsel articulated the University's infringement theories without expert assistance. That is a risky move in any patent case, and especially so here, given the technical nature of the case. Perhaps not unsurprisingly, then, counsel, going it alone, failed to diligently consider and/or understand LSI's patents and product specifications (all of which they indisputably possessed *before* the deadline for serving contentions).

So, with the University's pivot to a new infringement theory, its position has "taken on a 'whack-a-mole' character[.]" *Apple, Inc. v.* Samsung *Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 252045, at *4 (N.D. Cal. Jan. 21, 2014). But the Patent Local Rules were designed to avoid this "shifting sands approach" to litigation. *O2 Micro Int'l Ltd.*, 467 F.3d at 1364.

## V. CONCLUSION

The University was required to seek leave of Court prior to amending its contentions. It did not. It was also required to show good cause. However, undisputed record evidence shows that the University was not diligent in articulating its infringement theories. Therefore, LSI respectfully requests that the Court strike the University's amended infringement contentions.

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

DATED: March 28, 2018

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ David E. Sipiora*
David E. Sipiora (State Bar No. 124951)
*dsipiora@kilpatricktownsend.com*
Edward J. Mayle (admitted *pro hac vice*)
*tmayle@kilpatricktownsend.com*
1400 Wewatta Street, Ste. 600
Denver, CO  80202
Telephone:   303 571 4000
Facsimile:   303 571 4321

Scott Kolassa (State Bar No. 294732)
*skolassa@kilpatricktownsend.com*
1080 Marsh Road
Menlo Park, CA 94025
Telephone:   650 324 6349
Facsimile:   650 618 1544

Attorneys for Defendants LSI Corporation
and Avago Technologies U.S. Inc.