1    KILPATRICK TOWNSEND & STOCKTON LLP

2    David E. Sipiora (State Bar No. 124951)
     *dsipiora@kilpatricktownsend.com*
3    Edward J. Mayle (admitted *pro hac vice*)
     *tmayle@kilpatricktownsend.com*
4    1400 Wewatta Street, Ste. 600
     Denver, CO  80202
5    Telephone:   303 571 4000
     Facsimile:   303 571 4321
6
     Scott Kolassa (State Bar No. 294732)
7    *skolassa@kilpatricktownsend.com*
     1080 Marsh Road
8    Menlo Park, CA 94025
     Telephone:   650 324 6349
9    Facsimile:   650 618 1544

10   Attorneys for Defendants LSI Corporation
     and Avago Technologies U.S. Inc.

11

12

13

14                  UNITED STATES DISTRICT COURT

15          FOR THE NORTHERN DISTRICT OF CALIFORNIA

16                       SAN JOSE DIVISION

17

18   REGENTS OF THE UNIVERSITY OF          Civil Action No. 18-cv-00821-EJD-NMC
     MINNESOTA,
19
              Plaintiff,                   **DEFENDANTS' REPLY IN SUPPORT OF
20                                         MOTION TO STAY THE ACTION
          v.                               PENDING *INTER PARTES* REVIEW**
21
     LSI CORPORATION AND                   Date:   May 31, 2018
22   AVAGO TECHNOLOGIES U.S. INC.,         Time:   9:00 A.M.
                                           Place:  Courtroom 4 – 5th Floor
23            Defendants.
                                           Hon. Edward J. Davila
24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

3

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT .......................................................................................................2

      A.    Defendants Have Not "Delayed" The Case. ....................................2

      B.    The University Should Not Benefit From Its Derailing of the
            IPR Proceedings. ...............................................................................4

      C.    Case Law Supports the Rationale Behind a Stay. ............................6

      D.    The University Will Not Be Unduly Prejudiced or
            Disadvantaged By A Stay. ................................................................6

            1.    The Expiration of the '601 Patent Weighs in Favor of a Stay. ..........6

            2.    The University's Delay in Filing Suit Weighs In Favor of a
                  Stay. ..................................................................................................8

            3.    Other Courts Have Rejected the University's Arguments. ...............8

            4.    There Was No "Gamesmanship" in Seeking IPR and a Stay. ..........9

            5.    Any Risk of "Fading Memories" and "Loss of
                  Documentation" is Outweighed By the Benefits of a Stay. ..............9

      E.    The IPR Proceedings Could Simplify or Moot This Case. ..............10

      F.    Discovery is Not Complete and No Trial Date has Been Set. .........11

      G.    A Stay Will Reduce the Burdens of Litigation on the Court
            and Parties. ......................................................................................11

III.  CONCLUSION ...................................................................................................11

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Aylus Networks, Inc. v. Apple Inc.*,
5
856 F.3d 1353 (Fed. Cir. 2017)...................................................................................... 10

6

*Biomedical Patent Mgmt. Corp. v. Cal., Dep't of Health Services*,
505 F.3d 1328 (Fed. Cir. 2007).......................................................................................... 5
7

8

*Blacoh Fluid Controls, Inc. v. Syrinix, Inc.*,
Case No. 17-cv-04007-NC, 2018 WL 1000688 (N.D. Cal. February 21, 2018) ........................ 7

9

*Cent. Va. Cmty. Coll. v. Katz*,
10
546 U.S. 356 (2006).......................................................................................................... 5

11

*Lam Research Corporation v. Flamm*,
Case No. 15-cv-01277-BLF, 2016 WL 4180412 (N.D. Cal August 8, 2016) ............................ 7
12

*LifeScan, Inc. v. Shasta Technologies, LLC*,
13
No. 5:11-cv-04494-EJD, 2013 WL 1149819 (N.D. Cal. March 19, 2013) ........................... 7, 9

14

*Microsoft Copr. V. Tivo Inc.*,
No. 10:cv-00240-LHK, 2011 WL 1748428 (N.D. Cal. May 6, 2011)........................................ 10
15

16

*MLC Intellectual Property, LLC v. Micron Technology, Inc.*,
Case No. 14-cv-03657-SI, 2017 WL 4948560 (N.D. Cal. November 1, 2017)........................... 7
17

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
18
No. 16-712, --- S.Ct. ---, 2018 WL 1914662 (Apr. 24, 2018) .................................................. 4, 5

19

*Pragmatus AV, LLC v. Facebook, Inc.*,
No. 11-CV-02168-EJD, 2011 WL 4802958 (N.D. Cal. Oct. 11, 2011) ................................... 2, 6
20

21

*Regents of Univ. of New Mexico v. Knight*,
321 F.3d 1111 (Fed. Cir. 2003)............................................................................................ 5

22

*Sears, Roebuck & Co., v. Stiffel Co.*,
23
376 U.S. 225 (1964)............................................................................................................ 7

24

*Sorensen v. Lexar Media, Inc.*,
No. C:08-00095-JW, 2009 WL 10695750 (N.D. Cal. February 25, 2009) .................................. 7
25

26

*Sorensen v. Lexar Media, Inc.*,
No. C:08-00095-JW, 2010 WL 11538250 (N.D. Cal. October 27, 2010).................................... 7

27

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
28
137 S.Ct. 1514 (2017)......................................................................................................... 3

1

2

*VirtualAgility, Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014)................................................................................................8

3

**Statutes**

4

35 U.S.C. § 315(b) ......................................................................................................................6, 9

5

35 U.S.C. § 315(e)(2)......................................................................................................................8

6

35 U.S.C. § 316(a)(11)....................................................................................................................1

7

**Other Authorities**

8

Fed. R. Civ. P. 12(b)(3).................................................................................................................3

9

Fed. R. Civ. P. 12(b)(6).................................................................................................................2

10

U.S. Const. amend. XI .........................................................................................................1, 4, 5

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.    INTRODUCTION

2

Plaintiff Regents of the University of Minnesota (the "University") argues that LSI's

3

Motion to Stay[1] "should be denied for *three* reasons."  (Plaintiff's Memorandum of Law In

4

Opposition to Motion to Stay, Dkt. 202 ("Opposition") at 1 (emphasis in original).)  Examination

5

of each of the three reasons reveals that none has merit and that the Motion to Stay should be

6

granted.

7

First, while it is true that "PTAB has not yet even reviewed the merits of Defendants' IPR"

8

(Opposition at 1), this is due entirely to conduct of the University.  LSI filed its IPR petition

9

challenging the patentability of the '601 Patent more than a year ago.  In response, the University

10

first raised an Eleventh Amendment defense to stave off the PTAB's review.  When that defense

11

was rejected, the University appealed and invoked the obscure "collateral order doctrine" in order

12

to "divest" the PTAB of jurisdiction pending the appeal.  (*See* Dkt. 191 at 4-6.)  The '610 patent

13

IPR now is effectively stayed and the Eleventh Amendment defense awaits briefing in the Federal

14

Circuit.  But for the University's actions, the IPR would have been nearing completion by now,

15

because the Petition was filed on March 10, 2017, and IPRs last one year from the date of

16

institution.  35 U.S.C. § 316(a)(11).  In any event, as reflected in the many cases cited in LSI's

17

moving brief, there is abundant case law in this District that a stay may be appropriate even if a

18

pending IPR petition has not triggered an affirmative institution decision.

19

Second, the University's unspecified and unsupported concern about "loss of witness

20

memory and documents" rings hollow and should be rejected.  The term of a patent is twenty

21

years, yet the University brought suit against LSI when the '601 Patent was six weeks from

22

expiration.  The named inventors have long since scattered to the wind (*e.g.,* one now lives in

23

Korea, outside the subpoena power of any U.S. court) and the University has few documents

24

relating to their work.  Given this scenario, the University should not be heard to complain about

25

loss of memory or loss of documents.  For its part, LSI already has produced all documentation

26

that the University needs to make its case and document retention holds are in place so that all

27

28

---

[1] Defendants LSI Corporation and Avago Technologies U.S. Inc. are collectively referred to herein as "LSI."

1   relevant documents in existence and available now, will be available later.  The parties have also

2   stipulated that any documents created after the patent expired (*i.e.*, after October 15, 2016) do not

3   need to be produced.  Hence, in addition to the fact that the University has not backed up this

4   claimed concern with a declaration or specific facts, the reality is that having waited nearly twenty

5   years to file suit, the University has no legitimate basis to claim that the passage of another year or

6   even two would materially impact witness memory or the availability of relevant documents.

7         Third, the case was at its earliest possible stage when LSI first filed this motion to stay in

8   July 2017 (before the case was transferred to this District), and the case remains at an early stage.

9   The parties are engaged in the claim construction process and not a single deposition has been

10  conducted.  The standard is whether discovery is "complete" and whether a trial date has been

11  "set."  *Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-CV-02168-EJD, 2011 WL 4802958, at *2

12  (N.D. Cal. Oct. 11, 2011).  Here, discovery is *not* complete and a trial date has *not* been set.

13        In light of the relevant factors as discussed in LSI's moving brief and below, and given the

14  lack of a contrary showing by the University, this complex patent case should be stayed before the

15  Court expends significant effort in the claim construction process and the parties begin costly fact

16  discovery.

17  **II.   ARGUMENT**

18        **A.     Defendants Have Not "Delayed" The Case.**

19        In an unfortunate effort to muddy the waters and sully LSI, the University goes on for

20  pages accusing Defendants of delay tactics.  (Opposition at 2-5.)  The University's accusations are

21  baseless.

22        First, LSI timely moved to dismiss under Fed. R. Civ. P. 12(b)(6) at the outset of the case.

23  There was nothing improper or nefarious about the motion.  Instead of opposing the motion, the

24  University voluntarily amended its Complaint, fixing some of its defects.  (*See* Dkt. 41 at 1 ("As a

25  result of the University having filed its First Amended Complaint, Defendants' Motion is

26  moot.").)

27        Defects remained in the Amended Complaint.  So LSI timely renewed its motion.  While

28  the Court ultimately denied the motion, nothing in the Court's opinion even remotely suggests that

1   LSI's motion was filed for an improper purpose.  To the contrary, the Court rejected as a matter of

2   law two of the alleged factual bases for the University's allegation that LSI had "pre-suit notice"

3   of its alleged infringement.[2]  Notice is an element of (i) induced infringement, (ii) contributory

4   infringement, and (iii) willful infringement.  Thus, even though the motion was denied, the

5   University will be gravely challenged to prove its inducement, contributory, and willfulness

6   claims in light of the Court's findings.  As for the University's accusation of "a strategy of delay,"

7   it is not LSI's fault that the District of Minnesota decided the motion almost a year after the

8   Complaint was filed.

9        Second, in light of an intervening change in the law by the Supreme Court relating to the

10   patent venue statute,[3] LSI moved to dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue.

11   (Dkt. 191 at 7.)  It is difficult to understand how the University can assert that the motion was an

12   improper "delay tactic[]" because the District of Minnesota *granted* it, finding that "Minnesota is

13   not a proper venue."  (Dkt. 144 at 9.)  If the University was concerned with a speedy resolution of

14   this case, it could have stipulated to a transfer of venue to this District, which was clearly the only

15   proper venue.  Instead, the University litigated venue, for months.  In the end, District of

16   Minnesota Judge Wright found that University's venue argument was based "entirely on

17   speculation and innuendo" and ordered transfer to this District.  (*Id*. at 8.)  If the over eight-month

18   process of litigating venue and resetting the case after the transfer counts as "delay," it is the fault

19   of the University, not of LSI.[4]

20        Third, the University's fusillade of allegations regarding Defendants' discovery efforts

21   (Opposition at 4) lack merit and have no relevance to the issue of staying this case.  Tellingly, the

---

[2] *See* Dkt. 56 at 10 ("[An academic paper published in 1996 by the inventors] could not have provided notice that the innovation described therein was patented."); *id*. ("The First Amended Complaint states that a patent examiner cited the '601 Patent during the examination of two unrelated LSI patents.  That fact does not established Defendants' knowledge of the '601 Patent.").

[3] *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC,* 137 S.Ct. 1514 (2017).

[4] Counsel met and conferred on July 25, 2017, but the University did not agree that the case should be transferred.  *See* Dkt. 69.  The District of Minnesota transferred the case on February 1, 2018, *see* Dkt. 144; the case was reassigned to Judge Davila on February 12, 2018, *see* Dkt. 150; Judge Davila issued the Patent Scheduling Order or March 14, 2018, *see* Dkt. 186; LSI renewed the Motion to Stay two days later, on March 16, 2018, *see* Dkt. 191.

1    University has not taken up any of its grievances with the Magistrate Judge other than a discrete

2    dispute between the parties about the scope of damages discovery.[5]  The University's harsh

3    accusations of a "strategy of delay," "gamesmanship," and a plot "to postpone the day of

4    reckoning" (Opposition at 3, 13, and 4, respectively), are belied by the facts.  Indeed, the vast

5    majority of the "delays" in this matter arise from the failure of the University to act or flow from

6    the time-cycle of busy U.S. District Courts.

7           **B.     The University Should Not Benefit From Its Derailing of the IPR Proceedings.**

8           The University's primary argument against a stay is that its immediate appeal of the

9    PTAB's denial of the University's motion to dismiss the IPR could take "years."  (Opposition at 5-

10   7.)  In a rehash of same arguments that the PTAB rejected, the University predicts that the Federal

11   Circuit will reverse the PTAB's unanimous decision.  This would supposedly result in a delay of

12   these proceedings "without any simplification of the issues in this case."  (*See id.*)

13          The University's optimistic prediction is not warranted.  The University's sovereign

14   immunity appeal presents an issue of first impression, so that neither party can say decisively what

15   outcome the law dictates.  Nevertheless, there is good reason to believe that the Federal Circuit

16   will find that the Eleventh Amendment does not apply in IPRs in light of the Supreme Court's

17   intervening opinion in *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, No. 16-712, -

18   -- S.Ct. ---, 2018 WL 1914662 (Apr. 24, 2018).  In *Oil States*, the Court ruled that an IPR does not

19   affect a patent owner's "private rights" because "the decision to *grant* a patent is a matter

20   involving public rights" and "[i]nter partes review is simply a reconsideration of that grant."  *Oil*

21   *States*, 2018 WL 1914662, at *6.  Thus, from a constitutional perspective, IPRs and original

22

23

24   _____

[5] Contrary to the University's narrative, Magistrate Judge Rau of the District of Minnesota *did* grant

25   Defendants' motion for a protective order, after the University jumped the gun by serving
     burdensome discovery requests before the Court scheduled an initial Case Management Conference.

26   Magistrate Judge Rau did so orally in chambers, telling the Defendants that they did not have to
     respond to the University's initial discovery requests dated August 25, 2017.  The University then

27   unilaterally waited an entire month -- until October 26, 2017 -- to serve its "amended" discovery
     requests.  Defendants timely responded and have, to date, produced thousands of documents

28   comprising about 200,000 pages and have also made their source code available for inspection.

1   prosecution before the USPTO are on equal footing, neither implicates a private right nor triggers

2   the immunity afforded by the Eleventh Amendment.[6]

3         Now that the Supreme Court has spoken in *Oil States*, the most likely outcome of the

4   University's appeal is that it will be affirmed without the Federal Circuit reaching the issue of the

5   University's waiver of its immunity through its litigation conduct.  However, if the Federal Circuit

6   finds that the Eleventh Amendment applies in IPRs, the PTAB's decision should still be affirmed

7   because the University waived its immunity when it sued LSI in federal court.  (*See* Dkt. 191-2

8   (PTAB's denial of University's motion to dismiss IPR).)  The University suggests that

9   "precedent" prevents the waiver of immunity in IPR by the filing of an infringement case.  Not so:

10  there is no "bright-line rule whereby a State's waiver of sovereign immunity can never extend to a

11  … separate lawsuit."  *Biomedical Patent Mgmt. Corp. v. Cal., Dep't of Health Services*, 505 F.3d

12  1328, 1339 (Fed. Cir. 2007).  Indeed, the University's current argument contradicts arguments it

13  made in an earlier, different IPR proceeding.  It told the PTAB previously that "[b]y voluntarily

14  invoking federal jurisdiction in the infringement litigation, the [S]tate entity could be deemed to

15  have waived its sovereign immunity to the IPR process[.]" (Dkt. 191-2 at 8-9.)  The University

16  was right then: a state waives immunity to foreseeable claims that a defendant must file in

17  response to the state's complaint "or be forever barred from doing so."  *Regents of Univ. of New*

18  *Mexico v. Knight*, 321 F.3d 1111, 1125-26 (Fed. Cir. 2003).  The University anticipated that LSI

19  would file an IPR after being sued.  In fact, Defendants had to file their IPR Petition within one

---

[6] In certain respects, the Supreme Court's reasoning in *Oil States* is remarkably similar to the concurring PTAB judge's prescient opinion in the decision denying the University's motion to dismiss LSI's IPR Petition based on a claim of sovereign immunity:

> The essential nature of *inter partes* review as a reevaluation by the Patent Office of its decision to grant a patent, rather than as an administrative analog to civil litigation, is evident from the relief available, which differs both in degree and in kind from that afforded in federal district court.  At its core, *inter partes* review is a circumscribed *in rem* proceeding, in which the Patent Office exercises jurisdiction over the patent challenged, rather than the parties named; "it does not implicate States' sovereignty to nearly the same degree as other kinds of jurisdiction." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 362 (2006).

(Dkt. 191-2, concurring op. at 3.)

1    year of service of the Complaint.  *See* 35 U.S.C. § 315(b).  Thus, as the PTAB panel found, "it is

2    reasonable to view a State that files a patent infringement action as having consented to an *inter*

3    *partes* review of the asserted patent."  (Dkt. 191-2 at 7.)

4         **C.     Case Law Supports the Rationale Behind a Stay.**

5         The University suggests that "courts in this District routinely deny stay requests like that of

6    Defendants."  (Opposition at 9.)  But none of the cases it cites is anything "like" this one; here the

7    IPR has not advanced due to the University's own procedural moves.  More persuasive are the

8    many cases where judges in this District have granted stays pending IPR or reexamination

9    proceedings *before* the Patent Office instituted such proceedings.  *See, e.g.*, *Pragmatus AV, LLC v.*

10   *Facebook, Inc.*, No. 11-CV-02168-EJD, 2011 WL 4802958, at *3 (N.D. Cal. Oct. 11, 2011)

11   ("Indeed, it is not uncommon for this court to grant stays pending reexamination prior to the PTO

12   deciding to reexamine the patent."); *see also* Moving Brief (Dkt. 191) at 10.

13        LSI is aware of only a handful of times where a university asserted a patent in federal court

14   and then resisted an IPR on the basis of sovereign immunity.  In each case, the university is the

15   University of Minnesota.  *All* of its other cases have been stayed pending IPR.  The District of

16   Minnesota stayed multiple cases against AT&T and other wireless carriers, and Judge Chhabria

17   stayed the University's case against Gilead.  (*See* Dkt. 191 at 6.)  Those cases were at more

18   advanced stages of litigation than this one, and involved patents that were *not* expired.  The

19   University vigorously opposed the motions to stay in those cases, making all of the same

20   arguments it makes now.  This Court should follow the lead of Judge Chhabria and the District of

21   Minnesota, and stay this case until final resolution of the IPR involving the expired patent.

22        **D.     The University Will Not Be Unduly Prejudiced or Disadvantaged By A Stay.**

23        Lack of prejudice to the non-movant is the most important factor in deciding whether to

24   grant a stay.  The University's arguments on this factor lack merit, as shown below.

25             **1.     The Expiration of the '601 Patent Weighs in Favor of a Stay.**

26        The University barely discusses the fact that the term of its patent has expired, summarily

27   concluding that this fact is "of no moment."  (Opposition at 3.)  But all authority is to the contrary.

28

First, when a patent expires, "the monopoly created by it expires too, and the right to make the article … passes to the public." *Sears, Roebuck & Co., v. Stiffel Co.*, 376 U.S. 225, 230 (1964).  Thus, a stay of litigation involving an expired patent will not result in undue prejudice to the patent owner.  *See Sorensen v. Lexar Media, Inc.*, No. C:08-00095-JW, 2009 WL 10695750, *2 (N.D. Cal. February 25, 2009) ("[G]iven that the '184 patent has otherwise expired, Plaintiff's remedies will be limited to damages already incurred from any alleged infringement. … Thus, the Court cannot ascertain any prejudice that will inure to Plaintiff as the result of a stay[.]").[7]

Second, even when a patent is *not* expired, a stay pending Patent Office proceedings will not unduly prejudice a patent owner who has not moved for a preliminary injunction.  *See Blacoh Fluid Controls, Inc. v. Syrinix, Inc.,* Case No. 17-cv-04007-NC, 2018 WL 1000688, *3 (N.D. Cal. February 21, 2018) ("Also, the fact that Blacoh failed to request a preliminary injunction weighs against its argument of undue prejudice.").[8]  The University never has sought preliminary injunctive relief.  It cannot receive a permanent injunction either, as the patent is expired.

Third, denial of the Motion has the potential to prejudice *Defendants*, who would have to defend themselves in litigation even though the Patent Office might extinguish the University's patent rights.  *Sorensen*, 2009 WL 10695750, at *2.

Fourth,  the potential for streamlining this case is greater because the University cannot "amend" its expired patent claims to avoid the invalidity challenges at issue in the IPR proceedings.  *See MLC Intellectual Property, LLC*, 2017 WL 4948560, *2-*3.

---

[7] *See also Sorensen v. Lexar Media, Inc.*, No. C:08-00095-JW, 2010 WL 11538250, *1 (N.D. Cal. October 27, 2010) (denying motion to lift stay while reexamination decision was on appeal, finding no prejudice because the patent "has expired and damages are not accruing"); *MLC Intellectual Property, LLC v. Micron Technology, Inc.*, Case No. 14-cv-03657-SI, 2017 WL 4948560, *2-*3 (N.D. Cal. November 1, 2017) ("The facts that the '571 patent is expired and that MLC is a non-practicing entity also support a stay, as MLC does not allege any current or future harm.  … [T]he Court notes that some courts have found that the likelihood for cancellation of one or more of the claims may be increased due to the fact that the [patent] is expired and not subject to amendment in the ex parte reexamination proceedings.") (internal citation omitted); *Lam Research Corporation v. Flamm*, Case No. 15-cv-01277-BLF, 2016 WL 4180412, *4 (N.D. Cal August 8, 2016) (staying case where parties were not competitors and patents had expired).

[8] *See also LifeScan, Inc. v. Shasta Technologies, LLC,* No. 5:11-cv-04494-EJD, 2013 WL 1149819, *3 (N.D. Cal. March 19, 2013) (granting stay as to two patents that were not the subject of a preliminary injunction, even though reexamination "can take more than two years to complete").

1

2.      **The University's Delay in Filing Suit Weighs In Favor of a Stay.**

The University alleges that LSI has infringed for years and refused to take a license. (Opposition at 3.)  This is fiction.  The University approached LSI about licensing patents generally in 2013, LSI responded, and then the University went radio-silent for three years before dropping this suit on LSI in August 2016, without prior notice.  The University's delay in asserting its purported patent rights for the first time only weeks before expiration undercuts any argument that a stay would result in undue prejudice.  *See VirtualAgility, Inc. v. Salesforce.com, Inc.,* 759 F.3d 1307, 1319 (Fed. Cir. 2014) ("[F]or some unexplained reason, waited nearly a year after the '413 patent issued before it filed suit against Defendants.  These facts weigh against VA's claims that it will be unduly prejudiced by a stay.").

3.      **Other Courts Have Rejected the University's Arguments.**

The University tries, but fails, to distinguish the decisions of the District of Minnesota and of this Court staying the University's other cases pending IPR proceedings.  For example, the University cites three points that supposedly distinguish the District of Minnesota wireless carrier cases from this case, but none of the points of distinction carry any discernable weight.  (*See* Opposition at 11-12.)  The University attempts to distinguish Judge Chhabria's stay in this District on the basis that Gilead had entered into a "stipulation" that could result in "simplification of issues." (*Id.* at 12-13.)  But after Judge Chhabria stayed the case, the University moved for reconsideration (which was denied), arguing that "Gilead's stipulation" was "unlikely to meaningfully simplify issues for trial."  (Case 3:17-cv-06056-VC, *see* Dkt. 310 at 1.) Accordingly, the University's attempt to distinguish Judge Chhabria's decision fails, as does the University's proposal that Defendants enter into an elaboration stipulation as a condition for securing a stay pending IPR in this case.  Contrary to the University's suggestion, LSI cannot raise "countless" invalidity defenses because invalidity contentions are governed by the Local Patent Rules and IPR-based estoppel is specifically addressed in the Patent Act.  *See* 35 U.S.C. § 315(e)(2).  Ultimately, there is no justification for treating this case differently than the other University cases with parallel IPR proceedings – all of which have been stayed.

4.     **There Was No "Gamesmanship" in Seeking IPR and a Stay.**

The University alleges that "the timing" of Defendants' IPR Petition and subsequent motion to stay "suggest that Defendants seek a tactical advantage through this Motion." (Opposition at 13.)  Not so.  Preparing an IPR Petition is a substantial undertaking that requires thorough prior art searching and careful selection of which references to assert and which claims to challenge.  The '601 Patent, which contains complicated subject matter, inspired an IPR Petition more than 70 pages in length involving four separate grounds and a 79 page expert declaration.  By statute, LSI had one year from the service of the Complaint to file the Petition for IPR. 35 U.S.C. § 315(b).  LSI filed its Petition five months before that deadline.  LSI then moved to stay on July 26, 2017, before any litigation on the merits, and long before discovery opened.  In fact, LSI filed its IPR Petition *before* the University served its infringement contentions, reflecting LSI's desire to expedite the process.  Hence, far from tactically delaying matters, LSI filed its IPR Petition *early*, before knowing which claims are at issue and well before the statutory deadline.

5.     **Any Risk of "Fading Memories" and "Loss of Documentation" is Outweighed By the Benefits of a Stay.**

The generalized prospect of "fading memories" and "loss of documentation" does not constitute undue prejudice.  Otherwise, no motion to stay would ever be granted.  Indeed, this Court has stayed litigation pending *ex parte* reexamination proceedings, even though such proceedings are far lengthier than IPR proceedings, and can take years to complete.  *See*, *e.g*., *LifeScan,* 2013 WL 1149819, *3 (granting stay over plaintiff's objection that reexamination "can take more than two years to complete").

In any event, the University offers no declarations or other form of evidence backing up its cursory arguments about the purely hypothetical loss of memories or documentation.  (*See* Opposition at 13-14.)  The University's patent is now 22 years old.  If evidence is going to be lost, it has happened already.  Further, LSI already has supplied all of the documentation that the University needs to attempt to makes it case.  This documentation includes, among other things, the voluminous product specifications for the accused products (each of which run thousands of pages long) and thousands upon thousands of lines of source code for the accused products.  And

1    if the University were legitimately concerned with "fading memories," it could have taken some

2    depositions.  To date, it has taken zero.  Likewise, the University has not issued subpoenas to any

3    of LSI's customers or former employees.  If the University can wait 22 years to seek documents

4    and testimony, it can wait a while longer until the IPR process is finalized.

5          **E.**      **The IPR Proceedings Could Simplify or Moot This Case.**

6          The University's argument that the IPR will not simplify any issues for trial is premised on

7    the University's naked assertions that the Federal Circuit will reverse the PTAB's denial of the

8    University's immunity defense and that the PTAB would not institute IPR even if the University

9    loses its appeal.  (*See* Opposition at 8-11, 14-15.)  Both assertions are obviously speculation and

10   both lack merit.

11         First, as discussed above, the University should not benefit in this forum from its derailing

12   of the IPR process.  The IPR would be substantially completed by now but for the University's

13   assertion of sovereign immunity (via a motion to dismiss) and its appeal of the PTAB's rejection

14   of that motion.  No doubt the University would point out its right to assert sovereign immunity to

15   stop the IPR process; at the same time, however, the University should recognize LSI's right to

16   have that immunity claim adjudicated before being forced to defend a parallel, expensive,

17   disruptive District Court litigation.

18         Second, assuming the University loses the appeal, the PTAB will either institute the IPR,

19   or it will deny institution.  Institution is likely because LSI has identified multiple instances of

20   prior art that disclose each and every limitation of the challenged patent claims, exactly.  But the

21   case will be simplified *either way*.  At a minimum, the IPR will likely shed light on the meaning of

22   the claims, may give rise to estoppel of arguments, claims or defenses, and could prompt a

23   settlement.  *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("[W]e hold

24   that statements made by a patent owner during an IPR proceeding, *whether before or after an*

25   *institution decision*, can be considered for claim construction and relied upon to support a finding

26   of prosecution disclaimer.") (emphasis added); *see also Microsoft Copr. V. Tivo Inc.*, No. 10:cv-

27   00240-LHK, 2011 WL 1748428 (N.D. Cal. May 6, 2011), at *4.  When the District of Minnesota

28   stayed the University's cases against wireless carriers, it held that "the potential for enormous cost

1   and time savings should an IPR result outweighs the delay caused by a stay … Even the chance

2   for simplification in these hyper complex cases warrants the measure of instituting a stay before

3   IPR has instituted." (Dkt. No. 87-1, at *20-*21.)  So too here.

4          For all of these reasons, this second factor of simplification also favors a stay.

5          **F.     Discovery is Not Complete and No Trial Date has Been Set.**

6          Defendants initially moved to stay before either Defendant had answered.  The District of

7   Minnesota did not decide that original stay motion because venue was improper and the case was

8   transferred to this District.  Two days after this Court issued its Patent Scheduling Order on March

9   16, 2018, Defendants re-noticed the Motion here.  At that time, there were still six months left in

10  discovery, and no trial date had been set.

11         Whether one looks at the date of the original motion, or the date of the re-noticed motion,

12  the case was at an early stage.  The University points out that the parties have done things like

13  exchange contentions and preliminary claim constructions.  (Opposition at 15.)  But these things

14  happen early under the Local Patent Rules.  Defendants concede, as they must, that neither party

15  has taken a deposition and that claim construction briefing has not yet started.  (*See id.*)

16         For all of these reasons, this third factor also favors a stay.

17         **G.     A Stay Will Reduce the Burdens of Litigation on the Court and Parties.**

18         Litigating overlapping issues of patent validity in different forums is hardly an efficient use

19  of this Court's or the parties' resources, especially because the patent is expired and the PTAB

20  already has rejected the University's sovereign immunity defense.  The University has no direct

21  response to these issues.  (*See* Opposition at 7 n.4.)  As such, this fourth factor also favors a stay.

22  **III.    CONCLUSION**

23         For the reasons stated above and in LSI's Moving Brief, LSI respectfully requests that the

24  Court stay this litigation pending the IPR involving the expired '601 Patent.

25

26

27

28

1    DATED:  April 27, 2018              Respectfully submitted,

2                                        KILPATRICK TOWNSEND & STOCKTON LLP

3

4                                        By: */s/ David E. Sipiora*
                                         David E. Sipiora (State Bar No. 124951)
5                                        *dsipiora@kilpatricktownsend.com*
                                         Edward J. Mayle (admitted *pro hac vice*)
6                                        *tmayle@kilpatricktownsend.com*
                                         1400 Wewatta Street, Suite 600
7                                        Denver, CO  80202
                                         Telephone:   303 571 4000
8                                        Facsimile:   303 571 4321

9                                        Scott Kolassa (State Bar No. 294732)
                                         *skolassa@kilpatricktownsend.com*
10                                       1080 Marsh Road
                                         Menlo Park, CA 94025
11                                       Telephone:   650 324 6349
                                         Facsimile:   650 618 1544

12
                                         Attorneys for Defendants LSI Corporation
13                                       and Avago Technologies U.S. Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28