Edward P. Sangster (SBN 121041)
ed.sangster@klgates.com
Jas Dhillon (SBN 252842)
jas.dhillon@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Tel:  (415) 882-8200
Fax:  (415) 882-8220

*Counsel for Plaintiff*
*Regents of the University of Minnesota*

Kristopher L. Reed (SBN 235518)
*kreed@kilpatricktownsend.com*
Edward J. Mayle (admitted *pro hac vice*)
*tmayle@kilpatricktownsend.com*
KILPATRICK TOWNSEND & STOCKTON LLP
1400 Wewatta Street, Ste. 600
Denver, CO  80202
Telephone:   303 571 4000
Facsimile:    303 571 4321

*Counsel for Defendants LSI Corporation*
*and Avago Technologies U.S. Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| REGENTS OF THE UNIVERSITY OF MINNESOTA,<br><br>    Plaintiff,<br><br>vs.<br><br>LSI CORPORATION and AVAGO TECHNOLOGIES U.S. INC.,<br><br>    Defendants. | Case No.: 5:18-cv-00821-EJD-NMC<br><br>**JOINT STATUS REPORT**<br><br>Status Conference: Nov. 17, 2022<br>Time: 10:00 a.m.<br>Location: San Jose, Courtroom 4, 5th Floor |

Plaintiff Regents of the University of Minnesota ("University") and Defendants LSI Corporation ("LSI") and Avago Technologies U.S. Inc. (jointly, "Defendants") (collectively referred to herein as the "Parties") submit this Joint Status Report pursuant to this Court's October 7, 2021 order setting the November 17, 2022 Status Conference, Dkt. 219.

## I. CASE BACKGROUND AND STATUS

### A. Case Summary

#### 1. University's Case Summary

On August 25, 2016, the University filed this action against Defendants alleging infringement of U.S. Patent No. 5,859,601 ("the '601 Patent"). The University alleges that the '601 Patent claims an efficient method for encoding data to be written to a magnetic disk in a hard disk drive ("HDD") that substantially increases the accuracy with which the data are subsequently read off of those magnetic disks. The University alleges that Defendants knowingly designed, developed, tested and adopted this invention and incorporated it into hundreds of millions of HDD chips sold by them, thereby gaining a competitive advantage through the resulting improvement in HDD performance. A reasonable royalty of even just pennies per infringing chip would amount to an award of tens of millions of dollars to the University.

Defendants assert below that they manufacture the accused products overseas, as if that matters to their liability and damages exposure. It does not. For example, Defendants infringe when they *use* the University's patented methods in the United States during Defendants' lengthy and necessary "sales cycle" to secure the "design wins" that result from that use. The Federal Circuit recently endorsed a damages theory very similar to the University's theory. *See Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 992-93 (Fed. Cir. 2022) (affirming jury instruction that design wins arising out of a sales cycle can trigger a U.S. sale when substantial activities of a sales transaction occur in the U.S.). The University will establish that it is entitled to a reasonable royalty of up to $.50 per infringing chip, which reflects the value of Defendants' infringement. The University also asserts and will prove that Defendants indirectly infringed because they knew of or were willfully blind to the '601 Patent before the University filed the complaint and that Defendants had no acceptable, non-infringing alternative to practicing the asserted claims of the '601 Patent.

Finally, Defendants' invalidity arguments are meritless. Defendants are estopped from asserting the prior art they contend anticipates or renders obvious claims 14 and 17 of the '601 Patent because they were aware of that prior art and "reasonably could have raised [it] during" their IPR, in which they failed to prove that claims 14 and 17 are unpatentable. *See Cal. Tech.*, 25 F.4th

at 989-91.  Nor can Defendants demonstrate by clear and convincing evidence that claims 14 and 17 of the '601 Patent are directed to unpatentable subject matter under Section 101.  Contrary to Defendants' argument, the Federal Circuit has found that claims directed to "efficient, improved method of encoding data" are patentable even if the claim employs a mathematical formula.  *See Cal Tech.*, 25 F.4th at 988; *see also Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1297 n.3 (Fed. Cir. 2015) (improving a physical process by overcoming limitations in physical devices, such as discerning more accurately what is on a physical recording medium from what a read head has sensed, is not abstract under Section 101).  Moreover, since the filing of Defendants' Section 101 motion in 2018, the Federal Circuit has held repeatedly that methods directed to improving computer functionality, like the encoding methods claimed in the '601 Patent, are not abstract.  *See, e.g., Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1308-10 (Fed. Cir. 2020) (asserted claim patent-eligible because the specific steps claimed solved a technological problem of a computer network, namely examining data packets passing through a connection point on a computer network); *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306-09 (Fed. Cir. 2020) (reversing Rule 12(b)(6) dismissal because claims were directed to a patent-eligible improvement to computer functionality, namely the reduction of latency experienced by parked secondary stations in communication systems); *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149-53 (Fed. Cir. 2019) (reversing judgement on the pleadings because claims directed to solving errors in transmitting encoded data from a transmitter to a receiver); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1302-04 (Fed. Cir. 2019) (affirming summary judgment that the claims are patent-eligible because they did not merely recite the performance of a known business practice on the Internet but were necessarily rooted in computer technology in order to solve a specific problem in the realm of computer networks); *see also Hybrid Audio, LLC v. Asus Computer, Int'l*, Case No. 3:17-cv-05947-JD, 2019 WL 3037540 at *4-6 (N.D. Cal. July 11, 2019) (claims directed to "mak[ing] better computers, specifically by enabling them to process audio signals more accurately and efficiently" are patent-eligible).  Defendants likewise cannot establish that the '601 Patent fails to meet the requirements of Section 112.  Defendants' own technical expert contradicted Defendants' Section 112 arguments that the claims of the '601 Patent are indefinite by filing a

declaration in the IPR where she construed the scope and terms of the asserted claims and applied them to the asserted prior art.

### 2. Defendants' Case Summary

Defendants deny the University's allegations. Defendants deny any accused products infringe any remaining claim of the '601 Patent. The accused products largely are manufactured and sold overseas (outside of the reach of U.S. patent law), and Defendants have sold only a small number of such products in the United States. Accordingly, there is no liability for direct infringement under 35 U.S.C. § 271(a). *See* Dkt. 172 at 1-2. Defendants did not know of any allegations of infringement by the University until the filing of the Complaint in this action—which was just a few months before the '601 Patent expired; thus, Defendants cannot be liable for indirect infringement under 35 U.S.C. §§ 271(b) and 271(c). *See* Dkt. 172 at 11-12. The asserted claims of the '601 Patent are invalid under 35 U.S.C. §§ 101, 102, 103, and 112, and the '601 Patent is unenforceable due to inequitable conduct. And even if the University could show that any claim is infringed, not invalid, and not unenforceable (and it cannot), any royalty award would be capped in view of a comparable license it previously granted. *See* Dkt. 172 at 2 n.3. Finally, any royalty award would be *de minimis* for the additional reason that all accused products were sold with acceptable modes that do not and cannot infringe (and are not even alleged to infringe). Dkt. 172 Ex. 4 at 4-5 (identifying non-infringing modes); *see Riles v. Shell Expl. & Prod.* Co., 298 F.3d 1302, 1312 (Fed. Cir. 2002) ("[T]he market could not award Riles a royalty for his method divorced of all relation to a potential non-infringing alternative method.").

### B.   IPR Proceedings and Stay Order

On March 10, 2017, Defendants filed a petition with the Patent Trial and Appeal Board ("PTAB") for IPR challenging the validity of certain claims in the '601 Patent, including all claims asserted in the litigation. Upon Defendants' motion, the Court stayed this case pending the conclusion of the IPR proceedings related to the '601 Patent. Dkt. 211.

At the time of the stay, the parties were engaged in fact discovery and had begun serving deposition notices. The Parties also completed the exchange of infringement and invalidity contentions required by Patent Local Rule §§ 3-1 through 3-4, the University served its damages

contentions pursuant to Patent Local Rule § 3-8 and the Parties satisfied Patent Local Rule §§ 4-1 through 4-4 on claim construction by exchanging preliminary claim constructions and extrinsic evidence, filing a Joint Claim Construction and Prehearing Statement, and completing depositions of the claim construction experts.  Although the parties did not file claim construction briefs before the stay issued, the University's opening claim construction brief was due two weeks after the date of the Stay Order.

Upon entry of the Stay Order, several motions were briefed and awaiting decision by the Court: (i) LSI's Motion for Judgment on the Pleadings that the Asserted Claims are Patent-Ineligible under 35 U.S.C. § 101, Dkt. 190; (ii) the University's Motion to Compel Discovery, Dkt. 116; and (iii) LSI's Motion to Strike Plaintiff's "Supplemental" Claim Construction Charts, Dkt. 129 (collectively, the "Motions").  In the Stay Order, the Court terminated "all pending matters" without prejudice.  Dkt. 211 at 7.

During the pendency of the IPR proceedings, the University narrowed the issues to be determined by filing a statutory disclaimer with the Patent Office cancelling claims 1-12, 15, 16, and 21 of the '601 Patent, leaving independent claim 13 and two dependent claims (*i.e.*, claims 14 and 17) at issue in the IPR.  On April 14, 2021, the PTAB issued its Final Written Decision ("IPR Decision") in which it found that LSI had "shown by a preponderance of the evidence that claim 13 of the '601 patent is unpatentable under 35 U.S.C. § 102 as anticipated by [the] Okada [reference], but Petitioner has not shown that claims 14 and 17 are unpatentable."  The University asserts both surviving claims—claims 14 and 17—against LSI in this litigation.  Neither claim was amended during the IPR.  Defendants appealed the IPR Decision to the United States Court of Appeals for the Federal Circuit.  The University did not cross appeal.

On August 11, 2022, the Federal Circuit rendered its decision affirming the IPR Decision.  The Federal Circuit issued its mandate on September 19, 2022.  Subsequently, the Court, upon stipulation by the Parties, lifted the stay.

II.     **CASE MANAGEMENT SCHEDULE**

The Parties have met and conferred to discuss a case management schedule.  Because the Parties could not agree upon a proposed schedule, they have set forth their positions below and have

attached their respective proposed schedules as exhibits to this Joint Case Management Statement.

### A. The University's Statement

The University filed this action for patent infringement over *six years* ago. Yet, Defendants now seek again to prevent the University from prosecuting its infringement claims by asking for another indefinite delay, having already delayed prosecution of this case since May 2018 by filing an IPR petition that ultimately was unsuccessful in invalidating some of the asserted claims in this action. Specifically, Defendants ask this Court to prohibit the University from moving forward with any discovery on its claims until the Court rules upon Defendants' pending motion for judgment on the pleadings under 35 U.S.C. §101 and the Court issues its claim construction order. Under Defendants' proposed schedule, a hearing on their Section 101 motion and claim construction would not occur until after January 16, 2023 at the earliest and discovery would not begin until an unspecified time after the Court rules on the motion and issues its claim construction order. Thus, Defendants effectively seek a de facto stay order that would prohibit any fact discovery until at least March 2023, and possibly much later.

In stark contrast, the University proposes a schedule for the orderly restart of the case that accounts for the status of the Motions when the Court issued the Stay Order and provides deadlines for claim construction, fact discovery and ADR that are consistent with the deadlines set forth in the Court's prior scheduling orders, which contemplated the filing of dispositive motions over three and one-half years ago, in January 2019. Fact discovery will be complete or almost complete under the University's schedule before the time it likely would even start under Defendants' proposal. Accordingly, the University respectfully submits that the Court should adopt its proposed scheduling order.

The University proposes that for the Motions that were filed and briefed in early 2018, the Parties submit supplemental briefing, not to exceed 10 pages. A purpose of the proposed supplemental briefing is to permit the Parties to address the effect, if any, of the IPR proceedings and any pertinent opinions that have been issued in the four-plus years since the Motions were filed. Defendants agree that such supplemental briefing, at least on the Section 101 motion, is appropriate.

Once the briefing is complete, the University proposes that the Court set a time for a hearing on the Motions at or around the time of the tutorial and claim construction hearing.

When the Court issued its Stay Order, the Court already had entered scheduling orders to provide deadlines for the following case activities:

- Claim construction briefing, which would have been completed approximately 1 month after the Stay Order;
- Case tutorial and claim construction hearing, which would have occurred approximately 2 months after the Stay Order;
- Fact discovery, which was in progress notwithstanding Defendants' Section 101 motion and which would have concluded approximately 4 months after the Stay Order; and
- ADR, which would have occurred 45 days after the Court's order on claim construction.

Dkt. 186, 197. The Court entered the foregoing deadlines upon agreement by the Parties (*see* Dkt. 181). There are no legal or factual bases to deviate substantially from those prior deadlines. As such, the University has proposed a case schedule (attached hereto as Exhibit A) that tracks generally the timeframe of the prior agreed-upon deadlines, triggered as of the November 17 Status Conference, with some accommodation for the holidays and counsel for the University's trial schedule in December. The University submits that this case schedule provides for the just and speedy resolution of the claims and defenses to which the University is entitled under the Federal Rules.

The Court should reject Defendants' attempt to further delay prosecution of the University's patent infringement claims, as Defendants are not entitled to a stay of discovery pending their Section 101 Motion. "[B]lanket stays of all discovery matters are an exception to the [federal] rules." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, Case No. 5:16-cv-06370-EJD, 2018 WL 1569811 at *1 (N.D. Cal. Feb. 16, 2018); *see also Skellerup Inus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that

1  effect.  In fact, such a notion is directly at odds with the need for expeditious resolution of
2  litigation") (citation and quotation marks omitted)).  To obtain a stay of discovery pending a
3  potentially dispositive motion, the moving party has a "heavy burden of making a 'strong showing'
4  why discovery should be denied." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal.
5  1990) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).  A party cannot
6  carry its burden "by superficial statements or vague articulations demonstrating nothing more than
7  the traditional burdens of litigation." *Id.*  Defendants have not carried their heavy burden to obtain a
8  stay of discovery.

9        Defendants attempt to package their schedule as necessary to purportedly "address[] the
10  impact of the IPR" but in reality the argument boils down to requesting a stay of discovery because
11  of the possibility that *if* the Court grants their Section 101 motion and *if* the Court decides that the
12  University should not be granted leave to amend, Defendants' motion would be dispositive of the
13  entire case.  This Court, however, has held that similar contentions are insufficient to carry the
14  "heavy burden" necessary to justify a stay.  *See Optronic Techs.*, 2018 WL 1569811 at *1-2 (stay of
15  discovery pending 12(b)(6) motion not warranted even though (i) defendants' motion might be
16  dispositive of the whole case; (ii) the motion could be decided without discovery; and (iii)
17  defendants asserted that discovery would be costly); *In re Apple In-App Purchase Litig.*, Case No.
18  5:11-cv-01758-EJD, 2012 U.S. Dist. LEXIS 18970, at *4 (N.D. Cal. Feb. 15, 2012) (denying motion
19  to stay because "Defendant's contentions that Plaintiffs have not alleged a cognizable claim and that
20  discovery would be costly do not prove the need for a stay").

21        In *Optronic Techs.*, the Court acknowledged that defendants' pending motion to dismiss
22  might be dispositive of the entire case "if" granted and "if" leave to amend were denied.  *See* 2018
23  WL 1569811 at *1-2.  The Court further determined that the motion to dismiss could be decided
24  with reference only to the complaint.  *See id.*  Yet, the Court held that those were "big 'ifs'" and
25  defendants were not entitled to a stay of discovery without, for example, an explanation as to why
26  the complaint was frivolous or a particularized showing as to why discovery would be more
27  burdensome than other civil litigations.  *See id.*
28

7

Here, Defendants cannot make the required showing to justify another stay of discovery that their proposed schedule would entail, especially in light of the previous delays in the case. Defendants have not and cannot assert that the University's claims are "utterly frivolous, or filed merely in order to conduct a 'fishing expedition' or for settlement value." *Id.* Indeed, the Federal Circuit already has confirmed the patentability of asserted claims in the '601 Patent over the printed prior art.

Defendants also overstate the supposed affect the IPR has on their Section 101 motion, including the construction of transition and invalidation of Claim 13. As an initial matter, the construction of "transition" in the IPR proceedings is not binding on the Court. *See*, *e.g.*, *XMTT, Inc. v. Intel Corp.,* Case No. 18-1810, 2022 WL 2904308 at *6 (D. Del. July 22, 2022) (district court not required to adopt a PTAB construction). In any event, that construction, in fact, supports the University's opposition to the Section 101 motion. In the University's opposition, the University demonstrated, among other things, that Defendants' Section 101 motion fails because the asserted claims of the '601 Patent are directed to a specific physical process, *i.e.*, encoding data on a recording medium, and claim a specific solution to a technical problem to improve computer performance, *i.e.*, improving error rate in reading data from a recording medium by limiting the number of consecutive transitions. Dkt. 201 at 11-15. There is nothing in the IPR Decision or the construction of "transition" that undercuts the University's arguments. Nor does the construction of "transition" undermine the applicability of the Federal Circuit cases the University cites on page 2 that uniformly hold that methods directed to improving computer functionality, like the encoding methods claimed in the '601 Patent, are not abstract.

The invalidation of claim 13 in the IPR also has no significance to the outcome of the Section 101 motion. To the contrary, the fact that the IPR Decision affirmed the patentability of claims 14 and 17 of the '601 Patent confirms that those claims recite an inventive concept that is fatal to Defendants' Section 101 motion. *See*, *e.g.*, *Cooperative Entm't, Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 131-35 (Fed. Cir. 2022) (reversing grant of motion to dismiss where patent recited inventive concept of a particular network structure for sharing content through a dynamic P2P network); *CosmoKey Solutions GmbH v. Duo Security LLC*, 15 F.4th 1091, 1097-99 (Fed. Cir. 2021)

1   (reversing judgment on the pleadings where claims related to authenticating a computer user
2   performing an online transaction recited inventive concept); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927
3   F.3d 1306 (Fed. Cir. 2019) (district court erred in granting motion to dismiss because allegations
4   support that the claims recite a specific, plausibly inventive way of capturing, transferring, and
5   publishing data)

6         Finally, Defendants filed three motions to dismiss at the outset of this case (Dkt. No. 31, 43,
7   57) but did not argue in any of those motions that the asserted claims of the '601 Patent were patent-
8   ineligible under 35 U.S.C. §101.  Indeed, Defendants waited until March 2018 to file their Section
9   101 Motion, *after* the parties had already engaged in fact discovery and had begun the claim
10  construction process.  Thus, Defendants should not be heard to assert now that conducting discovery
11  while the Section 101 Motion is pending would be overly burdensome.  *See Optronic Techs.*, 2018
12  WL 1569811 at *2  ("[d]iscovery is not stayed just because it imposes *some* burden" and without a
13  "particularized showing describing why discovery [would be] more burdensome" than other civil
14  litigations, "any interest Defendants may have in resisting discovery is outweighed by the interest of
15  Plaintiff, the public, and the court in maintaining an orderly and expeditious schedule").

16        The University's day in court has been delayed by years.  In the Stay Order, the Court
17  estimated that the University would have an opportunity to adjudicate its claims in 1-2 years. Dkt.
18  211 at 6.  That time period has now doubled and might triple under Defendants' proposed case
19  schedule.  Defendants cannot carry their heavy burden to delay this case any longer through a
20  blanket, indefinite stay of discovery.  Accordingly, the Court should enter the University's proposed
21  case management schedule set forth in Exhibit A attached hereto.

22        **B.**     **Defendants' Statement**

23        Defendants respectfully ask the Court to enter the schedule of Exhibit B.  The completed IPR
24  has significantly impacted this litigation. Defendant's proposed schedule would afford the Court the
25  opportunity to address this impact before engaging in costly fact discovery. At a minimum,
26  addressing the impact of the IPR would focus discovery on issues that remain viable in the case,
27  saving substantial resources. And this could be accomplished in relatively short order under
28  Defendants' proposal.

Courts in California use a two-pronged test to determine whether such a postponement of discovery is warranted. "First, a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed. And second, the court must determine whether the pending dispositive motion can be decided absent discovery." *Hall v. Tilton*, No. C 07-3233 RMW (PR), 2010 WL 539679, at *2 (N.D. Cal. Feb. 9, 2010). Here, Defendants satisfy both requirements.

**First**, the early stage of litigation favors Defendants' proposal that claim construction and potentially dispositive Section 101 issues should be resolved before the parties begin costly fact discovery anew. *See* Dkt. 211 at 4 ("Far more work lies ahead than has been completed."). In particular, the PTAB's construction of "transition" and resulting invalidation of claim 13 as anticipated—affirmed by the Federal Circuit—demonstrate that there is nothing non-abstract or inventive in the surviving dependent claims. Conducting discovery before weighing that impact would be inefficient.

**Second**, no discovery is needed for the Court to decide either claim construction or Defendants' motion under Section 101.

The '601 patent expired long ago. As the Court previously found, any hypothetical risk of "fading memories" and "loss of documentation" is low because the patent is a quarter-century old and "if any evidence has been lost, it seems like that this has already happened." Dkt. 211 at 5-6. Waiting another short period of time before resuming full-blown discovery will not prejudice the University. But it will save substantial resources for both sides. Given this, the prudent approach is to postpone discovery until after the Court assesses the impact of the IPR on claim construction and Defendants' Section 101 motion, and then resume discovery (if needed) on the remaining issues in the case.

10

JOINT STATUS REPORT                                       CASE NO. 5:18-CV-00821-EJD-NMC

Dated:  November 7, 2022

By:   /s/ Jas Dhillon

Edward P. Sangster (SBN 121041)
ed.sangster@klgates.com
Jas Dhillon (SBN 252842)
jas.dhillon@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Tel:  (415) 882-8200
Fax:  (415) 882-8220

Patrick J. McElhinny, *pro hac vice*
patrick.mcelhinny@klgates.com
Mark G. Knedeisen, *pro hac vice*
mark.knedeisen@klgates.com
Christopher M. Verdini, *pro hac vice*
christopher.verdini@klgates.com
Anna Shabalov, *pro hac vice*
anna.shabalov@klgates.com
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
(412) 355-6500

Theodore J. Angelis, *pro hac vice*
theo.angelis@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580

*Counsel for Plaintiff*
*Regents of the University of Minnesota*

By:   /s/ Kristopher L. Reed

Kristopher L. Reed (SBN 235518)
kreed@kilpatricktownsend.com
Edward J. Mayle (admitted *pro hac vice*)
tmayle@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
1400 Wewatta Street, Suite. 600
Denver, CO  80202
Telephone:     303 571 4000
Facsimile:      303 571 4321

*Counsel for Defendants LSI Corporation and Avago Technologies U.S. Inc.*

**CERTIFICATION PURSUANT TO CIV. L. R. 5-1(i)(3)**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby certify that concurrence in the filing of this document has been obtained from the signatories for whom a signature is indicated by a conformed signature (/s/).  I have on file records to support this concurrence for production for the Court if so ordered.

Dated:  November 7, 2022                       /s/ Jas Dhillon
                                                                Jas Dhillon