1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

REGENTS OF THE UNIVERSITY OF
MINNESOTA,

Plaintiff,

v.

LSI CORPORATION, et al.,

Defendants.

Case No.   5:18-cv-00821-EJD

**ORDER DENYING MOTION FOR
JUDGMENT ON THE PLEADINGS
THAT THE ASSERTED CLAIMS ARE
PATENT INELEGIBLE UNDER 35
U.S.C. § 101**

Re: ECF No. 190

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Before the Court is the motion for judgment on the pleadings filed by Defendants LSI
Corporation and Avago Technologies U.S. Inc. (collectively, "LSI").  They seek a finding that the
patent claims asserted in this matter are unpatentable under 35 U.S.C. § 101.  After LSI's motion
was fully briefed, the Court stayed this matter pending *inter partes* review ("IPR").  ECF No. 211.
Upon conclusion of the IPR proceedings, the parties filed supplemental briefs addressing the effect
of those proceedings on LSI's motion.  Having considered the parties' filings, the Court finds
LSI's motion suitable for decision without oral argument under Civil Local Rule 7-1(b).  For the
reasons that follow, the Court DENIES the motion.

**I.      BACKGROUND**

**A.      Factual Background**

Plaintiff Regents of the University of Minnesota ("UMN") is a public university that
supports and facilitates the research of its professors and students in a wide array of fields.  First
Am. Compl. ("FAC") ¶¶ 4–6, ECF No. 40.  To fund those efforts, UMN sometimes patents and
commercializes the inventions created by its researchers.  *Id.* ¶ 8.

Case No.: 5:18-cv-00821-EJD
ORDER DEN. MOT. FOR J. ON THE PLEADINGS

1

1    On January 12, 1999, the U.S. Patent and Trademark Office issued Patent No. 5,859,601

2    (the " '601 Patent"), titled "Method and Apparatus for Implementing Maximum Transition Run

3    Codes." *Id.* ¶ 46.  The '601 Patent was invented by Dr. Jaekyun Moon, then a professor at UMN,

4    and Dr. Barrett J. Brickner, then one of Dr. Moon's graduate students. *Id.* ¶¶ 48, 53.  The two

5    inventors assigned the '601 Patent to UMN. *Id.* ¶ 73.

6    UMN alleges that the '601 Patent generally relates to a coding scheme for hard disk drives

7    ("HDDs") known as a Maximum Transition Run ("MTR") code. *Id.* ¶ 47.  As UMN explains,

8    HDDs store digital information by magnetizing regions of a rotating disk. *Id.* ¶ 32–33.  To read

9    back data stored on the disk, a read head senses the magnetic fields from the various regions on

10   the disk and converts that information into an analog signal. *Id.* ¶ 39.  A sequence detector then

11   interprets that signal, translating it into binary data consisting of 1s and 0s. *Id.* ¶ 40.  However,

12   errors can occur during this process due to the presence of noise in the analog signal, including

13   noise generated by the presence of "transitions" that occur when the magnetic polarization

14   changes as the read head moves from one region of the disk to the next. *Id.* ¶¶ 38, 43–44.  The

15   problem of noise from transitions is amplified as the data capacity of an HDD increases:  increased

16   data capacity leads to an increased density of transitions, and that, in turn, leads to increased noise.

17   *Id.* ¶ 45.  According to UMN, the '601 Patent addresses the problem of noise by eliminating long

18   runs of consecutive transitions with an MTR code, thereby reducing the error rate. *Id.* ¶ 70.

19   **B.     Procedural History**

20   UMN initially filed this action in the District of Minnesota on August 25, 2016.  ECF No.

21   1.  The case was subsequently transferred before this Court on February 8, 2018, ECF No. 145,

22   and LSI filed the instant motion approximately one month later.  ECF No. 190 ("Mot.").  The

23   parties finished briefing the motion on April 27, 2018.  ECF No. 201 ("Opp'n"); ECF No. 210

24   ("Reply").  However, the parties also simultaneously briefed LSI's motion for stay pending IPR,

25   and on May 11, 2018, the Court granted the motion to stay without deciding the motion for

26   judgment on the pleadings.  ECF No. 211.

27   After protracted litigation that involved two separate appeals to the Federal Circuit, the

Case No.: 5:18-cv-00821-EJD

28   ORDER DEN. MOT. FOR J. ON THE PLEADINGS

2

*United States District Court*
*Northern District of California*

1    IPR proceedings concluded on August 11, 2022, when the Federal Circuit affirmed the decision of

2    the Patent Trial and Appeal Board ("PTAB") finding claim 13 of the '601 Patent to be

3    unpatentable while concluding that claims 14 and 17 of the '601 Patent were not shown to be

4    unpatentable.  *LSI Corp. v. Regents of the Univ. of Minn.*, 43 F.4th 1349 (Fed. Cir. 2022).  Shortly

5    thereafter, on October 7, 2022, the Court lifted its IPR stay upon stipulation of the parties.  ECF

6    No. 218.  The parties then filed supplemental briefs addressing the effect of the IPR proceedings

7    on LSI's § 101 motion.  ECF No. 250 ("LSI Suppl. Br."); ECF No. 252 ("UMN Suppl. Br.").

8    **II.    LEGAL STANDARD**

9        **A.    Federal Rule of Procedure 12(c)**

10            A party may move for judgment on the pleadings under Rule 12(c) to challenge the legal

11   sufficiency of the opposing party's pleadings.  *Samsung Elecs. Co. v. Blaze Mobile, Inc.*, __ F.

12   Supp. 3d __, 2023 WL 3510380, at *2 (N.D. Cal. May 16, 2023) (citation omitted).  Such motions

13   are "functionally identical" to Rule 12(b)(6) motions, and courts accordingly apply the same

14   standard for both.  *Gregg v. Haw., Dep't of Pub. Safety,* 870 F.3d 883, 887 (9th Cir. 2017)

15   (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.* 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)).

16   Consequently, courts evaluating a Rule 12(c) motion must "accept factual allegations in the

17   complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

18   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Courts are

19   also limited to materials in the pleadings, except that courts may consider materials that are subject

20   to judicial notice or incorporation by reference.  *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189

21   F.3d 971, 981 n.18 (9th Cir. 1999); *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir.

22   2018).  Judgment on the pleadings is appropriate if, applying the standards articulated above, the

23   moving party is entitled to judgment as a matter of law.  *Hal Roach Studios, Inc. v. Richard Feiner*

24   *& Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

25       **B.    35 U.S.C. § 101**

26           Section 101 of the Patent Act provides that a patent may be obtained for "any new and

27   useful process, machine, manufacture, or composition of matter, or any new and useful

28   Case No.: 5:18-cv-00821-EJD
ORDER DEN. MOT. FOR J. ON THE PLEADINGS

United States District Court
Northern District of California

1    improvement thereof." 35 U.S.C. § 101.  Although the language of the statute is broad, the

2    Supreme Court has explained that "[l]aws of nature, natural phenomena, and abstract ideas are not

3    patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)

4    (internal quotation marks and citation omitted).  When evaluating whether claims are unpatentable

5    under this exception, a court is required to "distinguish between patents that claim the building

6    blocks of human ingenuity and those that integrate the building blocks into something more."

7    *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).  In *Alice*, the Supreme Court

8    prescribed a two-step test for doing so.  First, a court "determine[s] whether the claims at issue are

9    directed to a patent-ineligible concept." *Id.*  Second, if the court concludes that claims are directed

10   to patent-ineligible subject matter, it then "consider[s] the elements of each claim both

11   individually and 'as an ordered combination' to determine whether the additional elements

12   'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*

13   *Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78 (2012).

14        The issue of "[p]atent eligibility under § 101 is a question of law that may involve

15   underlying questions of fact." *MyMail, Ltd. v. ooVoo*, LLC, 934 F.3d 1373, 1379 (Fed. Cir. 2019).

16   Thus, a court may not determine patent eligibility on a Rule 12(c) motion unless "there are no

17   factual allegations that, if taken as true, prevent resolving the eligibility question as a matter of

18   law." *Id.*  In evaluating patent eligibility on a Rule 12(c) motion, a court also must "either adopt

19   the non-moving party's constructions or resolve the dispute to whatever extent is needed to

20   conduct the § 101 analysis." *Id.* (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882

21   F.3d 1121, 1125 (Fed. Cir. 2018)).  If the court chooses to preliminarily resolve disputes over

22   constructions, it may do so with "less than a full, formal claim construction." *Aatrix*, 882 F.3d at

23   1125 (citation omitted).

24   **III.    DISCUSSION**

25        **A.    Asserted Claims**

26        Following the PTAB's decision to invalidate claim 13 of the '601 Patent, UMN now

27   asserts only claims 14 and 17 of that patent.  However, because those two claims both depend on

28   Case No.: 5:18-cv-00821-EJD
     ORDER DEN. MOT. FOR J. ON THE PLEADINGS
                                                              4

United States District Court
Northern District of California

1    claim 13, the Court first reproduces claim 13 below:

2            A method for encoding m-bit binary datawords into n-bit binary
         codewords in a recorded waveform, where m and n are preselected
3        positive integers such that n is greater than m, comprising the steps
         of:
4            receiving binary datawords; and
             producing sequences of n-bit codewords;
5            imposing a pair of constraints (j;k) on the encoded waveform;
             generating no more than j consecutive transitions of said sequence
6                in the recorded waveform such that $j \geqq 2$; and
             generating no more than k consecutive sample periods of said
7                sequences without a transition in the recorded waveform.

8    '601 Patent at 10:47–59.  Claim 14 adds the additional limitation, "wherein the consecutive

9    transition limit is defined by the equation $2 \leqq j < 10$."  *Id.* at 10:60–61.  And claim 17 further

10   narrows claim 14 by adding the limitation, "wherein the binary sequences produced by combining

11   codewords have no more than one of j consecutive transitions from 0 to 1 and from 1 to 0 and no

12   more than one of k+1 consecutive 0's and k+1 consecutive 1's when used in conjunction with the

13   NRZ recording format."  *Id.* at 11:1–6.

14         **B.      Analysis**

15         The Court begins with Step One of *Alice*.  At Step One, courts "determine whether the

16   claims at issue are directed to a patent-ineligible concept."  *Alice*, 573 U.S. at 217.  A claim is not

17   abstract at Step One merely because it invokes a mathematical formula.  *Diamond v. Diehr*, 450

18   U.S. 175, 187 (1981).  Rather, the fulcrum of this analysis is "the claim's character as a whole."

19   *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149 (Fed. Cir. 2019) (citation

20   omitted).  Put another way, a court must "consider the claim as a whole," which includes

21   "read[ing] it in light of the specification," before deciding if it is directed towards an abstract idea

22   or otherwise ineligible subject matter.  *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299,

23   1309 (Fed. Cir. 2020) (first citing *Diamond v. Diehr*, 450 U.S. at 188; and then citing *Data Engine*

24   *Techs. LLC v. Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018)).

25         There is "no [] single, succinct, usable definition or test" for what constitutes an abstract

26   idea.  *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016); *see also*

27   *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1350 (Fed. Cir. 2018) (Plager, J., concurring

28   Case No.: 5:18-cv-00821-EJD
     ORDER DEN. MOT. FOR J. ON THE PLEADINGS

United States District Court
Northern District of California

1    in part and dissenting in part) ("[A] search for a definition of 'abstract ideas' in the cases on § 101

2    from the Supreme Court, as well as from this court, reveals that there is no single, succinct, usable

3    definition anywhere available.").  Nonetheless, in the context of software patents, the Federal

4    Circuit has provided ample guidance for applying Step One.  The key distinction is whether the

5    "focus of the claim[] is on the specific asserted improvement in computer capabilities," in which

6    case the claim is not abstract, or if the claim focuses "on a process that qualifies as an 'abstract

7    idea' for which computers are invoked merely as a tool," in which case the claim is abstract.

8    *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016); *see also Uniloc USA, Inc.*

9    *v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020).  When a claim is directed to a

10   "technological solution to a technological problem," it is not abstract under the *Enfish* test.  *SRI*

11   *Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019).

### 1.    *Alice* Step One

13   The Court concludes that LSI has failed to show it is entitled to judgment on the pleadings

14   that claims 14 and 17 are patent ineligible.  As UMN alleges in its complaint, the '601 Patent is

15   directed to solving a specific problem that arises when using magnetic storage devices such as

16   HDDs.  According to UMN, the presence of noise when reading data from HDDs can lead to read

17   errors, and the amount of noise increases as HDD manufacturers seek to increase the density of

18   data that can be stored on an HDD.  FAC ¶¶ 42–45.  The '601 Patent addresses the problem of

19   noise by preventing the presence of certain patterns of data that are particularly challenging to

20   read, thereby reducing error and allowing manufacturers to increase storage density.  *Id.* ¶¶ 47,

21   70–71.  Taken together, these allegations show that the '601 Patent is directed to solving the

22   problems of noise and storage density in magnetic storage devices.

23   Of course, UMN cannot survive a pleading attack under § 101 by alleging that the claims

24   of the '601 Patent are directed to something that is not supported on the face of the patent.  Even at

25   the pleading stage, "a court need not accept as true allegations that contradict matters properly

26   subject to judicial notice or by exhibit, such as the claims and the patent specification." *Secured*

27   *Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (internal quotation

28   Case No.: 5:18-cv-00821-EJD
ORDER DEN. MOT. FOR J. ON THE PLEADINGS

United States District Court
Northern District of California

marks and citation omitted) (applying Ninth Circuit law).  But such contradictions do not exist

here.  It is true that the language of claims 14 and 17 (and claim 13, from which those claims

depend) do not explicitly refer to magnetic storage of any type.  '601 Patent at 10:47–61, 11:1–6.

However, the claim language does use the term "waveform" four times.  *Id.*  And the specification

suggests that the concept of a "waveform" is linked to magnetic recording[1]:

> Runlength limited (RLL) codes are commonly used in magnetic recording. These codes impose a (d,k) constraint on the recorded data sequence. With the Non-Return-to-Zero (NRZ) recording format, where the binary "1" represents a positive level in the ***magnetization waveform*** and the binary "0" negative level [sic] in the same waveform, d+l is the minimum number of consecutive like symbols and k+l is the maximum number of consecutive like symbols in the binary sequence.

*Id.* at 1:21–29 (emphasis added).

Other portions of the specification reinforce that the claims of the '601 Patent relate to

magnetic storage.  The specification explains that the '601 Patent "relates to a channel coding

technique to improve data storage devices such as ***magnetic*** computer disk drives," and that MTR

code is intended to "eliminate[] certain error-prone binary data patterns from the allowable set of

input data patterns that are to be recorded in the storage medium."  *Id.* at 2:40–42, 2:44–47.  It also

describes how "MTR code imposes a limit on the maximum number of consecutive transitions

that can occur in the ***written magnetization pattern in magnetic recording***."  *Id.* at 2:59–61.

Moreover, the specification identifies the specific problem that the patent seeks to solve, stating

that, by applying MTR coding, "the final [] error rate is improved significantly," and the

improvement in error rate "can be traded for an increase in storage density."  *Id.* at 2:47–50.

---

[1] This discussion of the meaning of "waveform" should not be taken as the Court's formal claim construction of the term because, in the context of this Rule 12(c) order, the Court construes the pleadings in the light most favorable to UMN, *see Manzarek*, 519 F.3d at 1031, including to the extent it endeavors to construe terms in the '601 Patent.  The Court also did not undertake a full claim construction analysis, *see Aatrix*, 882 F.3d at 1125, and in any event, the parties have not asked the Court to construe the term, "waveform."  Am. Joint Claim Construction Statement 3–4, ECF No. 240.

United States District Court
Northern District of California

1    When construed in the light most favorable to UMN, these portions of the '601 Patent mirror

2    UMN's allegations.

3           Taking UMN's allegations together with the '601 Patent and construing both in the light

4    most favorable to UMN, the Court finds that claims 14 and 17 are directed to improvement of

5    computer capabilities.  Namely, it finds that claims 14 and 17 are directed to reducing error

6    associated with magnetic storage of computer data and increasing storage density.  Consequently,

7    the claims present a "technological solution to a technological problem," and they are not abstract

8    at Step One.

9           The Court's conclusion is bolstered by analogous case law.  *See Enfish*, 822 F.3d at 1334

10   ("[B]oth this court and the Supreme Court have found it sufficient to compare claims at issue to

11   those claims already found to be directed to an abstract idea in previous cases.").  For example, in

12   *California Institute of Technology v. Broadcom Ltd.*, 25 F.4th 976, 984, 988 (Fed. Cir. 2022), the

13   Federal Circuit found that a claim disclosing "[a] method of encoding signal" was patent eligible

14   under § 101.  More directly on point, though, is *Carnegie Mellon University v. Marvell*

15   *Technology Group, Ltd.*, 807 F.3d 1283 (Fed. Cir. 2015).  There, the Federal Circuit dealt with a

16   method claim related to ameliorating the noise present when reading data from an HDD.  *Id.* at

17   1289–91.  Although the claim did not introduce any physical innovations to HDDs, the court

18   nonetheless suggested that "improving a physical process by overcoming limitations in physical

19   devices[, such as] discerning more accurately what is on a physical recording medium from what a

20   read head has sensed," was not likely to raise patent eligibility concerns.  *Id.* at 1297 n.3.  That is

21   precisely the situation here:  Claims 14 and 17 of the '601 Patent may not recite physical

22   inventions, but they are targeted to mitigating physical limitations in physical recording mediums.

23          Accordingly, the Court determines that claims 14 and 17 are not abstract.

24                **2.      LSI's Counterarguments**

25          LSI's arguments to the contrary are not convincing.  First, it argues that the claim language

26   covers "an abstract mathematical algorithm."  Mot. at 11.  Undoubtedly claims 14 and 17 employ

27   a mathematical formula, but that does not render them abstract.  *Broadcom*, 25 F.4th at 988 (citing

28   Case No.: 5:18-cv-00821-EJD
     ORDER DEN. MOT. FOR J. ON THE PLEADINGS

United States District Court
Northern District of California

1     *Diamond*, 450 U.S. at 187).  As the Court explains above, claims 14 and 17 are directed to

2     *improvements* in storage performance, not to the formula alone.  Because the claims represent

3     improvements, they claim more than just the formula and they are not abstract.  *Id.*

4             Second, LSI suggests that claims 14 and 17 do not represent improvements because the

5     solution that represents improvement was disclosed in the claim they depend from (claim 13), and

6     in IPR proceedings, the PTAB found claim 13 to be anticipated (*i.e.*, not novel).  LSI Suppl. Br. at

7     3–6.  LSI confuses the issue.  While courts may use similar language at times in their analysis of

8     eligibility under § 101 and novelty under § 102, ultimately "[e]ligibility and novelty are separate

9     inquiries."  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed.

10    Cir. 2017).  To the extent courts inquire into "improvements" at Step One of the eligibility inquiry,

11    they ask only whether a claim is a "technological solution" to a particular problem surrounding

12    computer performance.  *See Enfish*, 822 F.3d at 1336; *SRI Int'l*, 930 F.3d at 1303.  If the answer is

13    yes, the claim is such a solution, it is an "improvement" in the sense that computer capabilities are

14    improved when the problem is solved.  The novelty inquiry is different.  It asks not whether a

15    claim is a solution or not, but whether a piece of prior art proposed the *same* solution.  Plainly,

16    whether an idea is abstract should not depend on whether someone else had the idea first.  As

17    such, the Court finds that the PTAB's decision in the IPR proceedings is irrelevant to the patent

18    eligibility analysis here.

19            Third, LSI contends that UMN's allegations show that the claims 14 and 17 are directed to

20    an abstract idea that preempts all use of the mathematical formula referenced by the claims.  Reply

21    at 7–8.  In support, LSI points to allegations that "[a]ny commercially viable implementation of

22    MTR coding requires performance of the methods of claim 13 (Compl. ¶ 131), and that LSI's use

23    of "simulators" infringes (Compl. ¶¶ 20, 75, 95–98, 118–19, 122).  Neither set of allegations

24    justifies a finding of patent ineligibility as a matter of law.  In isolation, the allegation that all

25    implementations of MTR coding necessarily infringe on claim 13 might be read as preempting all

26    use of the formula in claim 13, but as the Court explained earlier, UMN's complaint focuses

27    specifically on HDDs.  In that context, it is clear that the allegation refers only to commercially

28    Case No.: 5:18-cv-00821-EJD
      ORDER DEN. MOT. FOR J. ON THE PLEADINGS

                                                      9

United States District Court
Northern District of California

United States District Court
Northern District of California

1    viable implementations in the HDD field.  As to the set of allegations regarding the use of

2    "simulators," the parties dispute whether "simulators" perform only abstract simulations or if they

3    rely on physical waveforms.  *See* Opp'n at 17; Reply at 8.  The pleading stage is not the

4    appropriate vehicle for resolving such factual disputes, and nothing in the allegations bear on the

5    meaning or function of "simulators."  As the Court must construe the allegations in favor of UMN,

6    it finds that "simulators" are sufficiently tethered to physical waveforms that the allegations

7    regarding those "simulators" do not imply that the claims of the '601 Patent preempt all use of the

8    formula they utilize.  And since the Court already concluded the pleadings show that the claims

9    are limited to magnetic storage media, the Court finds that the claims do not fully preempt all use

10   of the formula.

11          Fourth, LSI asserts that the claims are abstract because a human could perform the claims

12   using pen and paper.  Mot. at 15.  This is an instinctively appealing analogy, but it fails to

13   persuade in the end.  For one, the Court has already repeatedly rejected in this Order the notion

14   that the claims encompass no more than a mathematical formula.  It has found that, on the

15   pleadings, claims 14 and 17 require waveforms.  In turn, waveforms can only be formed by

16   recording data on magnetic storage media.  *See supra* Section III.B.1.  This requirement prevents a

17   human from being able to practice any claim with pen and paper.  More fundamentally, though,

18   the pen and paper analogy is not helpful in the context of software patents.  One district court has

19   already found the "mode of analysis [to be] unhelpful for computer inventions."  *Cal. Inst. of*

20   *Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 994 (C.D. Cal. 2014).  And for good reason.

21   As the *Hughes* court observed, software "necessarily uses algorithms to achieve its goals," so

22   "[p]en[]-and-paper analysis can mislead courts into ignoring [the] key fact [that] although a

23   computer performs the same math as a human, a human cannot always achieve the same results as

24   a computer."  *Id.* at 995.  Indeed, if the pen-and-paper mode of analysis were to be viable, virtually

25   all software patents would be abstract.  Yet, the Federal Circuit has unequivocally held that

26   "claims directed to software, as opposed to hardware, are [not] inherently abstract," and that

27   "[s]oftware can make non-abstract improvements to computer technology just as hardware

28   Case No.: 5:18-cv-00821-EJD
     ORDER DEN. MOT. FOR J. ON THE PLEADINGS
                                              10

1    improvements can." *Enfish*, 822 F.3d at 1335. Given that the consequences of adopting LSI's

2    pen-and-paper line of reasoning would conflict with binding precedent, the Court declines to credit

3    this fourth argument.

4         Finally, LSI argues that claims 14 and 17 are abstract under *RecogniCorp, LLC v. Nintendo*

5    *Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017). In that case, the Federal Circuit found that claims

6    reciting "[a] method for creating a composite image" were abstract because they were "directed to

7    the abstract idea of encoding and decoding image data." *Id.* at 1324, 1326. This, the Circuit

8    explained, reflected no more than "standard encoding and decoding, an abstract concept long

9    utilized to transmit information." *Id.* Unlike the claims in *RecogniCorp*, though, the claims here

10   reflect more than mere encoding and decoding. They improve data storage by eliminating

11   problematic patterns of data. The presence of improvement makes *RecogniCorp* inapposite. *See*

12   *Realtime Data, LLC v. Carbonite, Inc.*, 2017 WL 4693969, at *5 (E.D. Tex. Sept. 20, 2017)

13   (distinguishing *RecogniCorp* when the patent claims at issue did not "simply [claim] encoding and

14   decoding," but rather improved data compression).

15                                   *         *         *

16        Because the Court finds that the '601 Patent is not abstract at *Alice* Step One, it does not

17   proceed to Step Two. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361

18   (Fed. Cir. 2018) ("If the claims are directed to a patent-eligible concept, the claims satisfy § 101

19   and we need not proceed to the second step."). Accordingly, the Court DENIES LSI's motion for

20   judgment on the pleadings.

21   **IV.   CONCLUSION**

22        For the reasons stated above, the Court cannot conclude that the '601 Patent is ineligible

23   under § 101 at the pleading stage, and it DENIES LSI's motion for judgment on the pleadings.

24   The hearing on this motion, scheduled for August 31, 2023, is VACATED.

25

26

27

28   Case No.: 5:18-cv-00821-EJD
     ORDER DEN. MOT. FOR J. ON THE PLEADINGS
                                   11

United States District Court
Northern District of California

1          **IT IS SO ORDERED.**

2     Dated: August 25, 2023

3

4                                                    _____

5                                                    EDWARD J. DAVILA
                                                     United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28     Case No.: 5:18-cv-00821-EJD
       ORDER DEN. MOT. FOR J. ON THE PLEADINGS
                                    12

United States District Court
Northern District of California