1

HOLLAND & KNIGHT LLP

2  Kristopher L. Reed (SBN 235518)
   kris.reed@hklaw.com
3  One Arts Plaza
   1722 Routh Street, Suite 1500
4  Dallas, TX 75201
   Tel: (214) 964-9500 / Fax: (214) 964-9501
5
   Edward J. Mayle (admitted *pro hac vice*)
6  edward.mayle@hklaw.com
   1801 California Street, Suite 5000
7  Denver, CO 80202
   Tel: (303) 974-6660 / Fax: (303) 974-6659
8
   Attorneys for Defendants
9

10

11

12

13

14

15

16

17

18

19

KILPATRICK, TOWNSEND & STOCKTON LLP

April E. Isaacson (SBN 180638)
aisaacson@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Tel: (415) 576-0200 / Fax: (415) 576-0300

Kevin M. Bell (admitted *pro hac vice*)
kbell@ktslaw.com
1400 Wewatta St., Suite 600
Denver, CO 80202
Tel: (303) 571-4000 / Fax: (303) 571-4321

Andrew W. Rinehart (admitted *pro hac vice*)
arinehart@kilpatricktownsend.com
1001 West Fourth Street
Winston-Salem, NC 27101
Tel: (336) 607-7300 / Fax: (336) 607-7500

Kathleen R. Geyer (admitted *pro hac vice*)
kgeyer@kilpatricktownsend.com
1420 Fifth Ave., Ste. 3700
Seattle, WA  98101
Tel: (206) 467-9600 / Fax: (206) 623-6793

Attorneys for Defendants

### UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

20

REGENTS OF THE UNIVERSITY OF
21  MINNESOTA,

22             Plaintiff,

23       v.

24  LSI CORPORATION AND
    AVAGO TECHNOLOGIES U.S. INC.,
25
               Defendants.
26

27

28

Civil Action No. 18-cv-00821-EJD-NMC

**DEFENDANTS' NOTICE OF MOTION
AND MOTION TO STRIKE PORTIONS
OF PROFESSOR McLAUGHLIN'S
OPENING REPORT**

Date:   December 12, 2024
Time:  9:00 A.M.
Place:  Courtroom 4 – 5th Floor

Hon. Edward J. Davila

REDACTED VERSION

DEF. NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PROF.
MCLAUGHLIN'S OPENING REPORT
CASE NO. 18-CV-00821-EJD-NMC

1

# **TABLE OF CONTENTS**

2

I.      INTRODUCTION AND STATEMENT OF THE ISSUE TO BE
3       DECIDED ........................................................................................................1

4    II.    LEGAL STANDARD ........................................................................................3

5    III.   FACTUAL BACKGROUND ............................................................................4

6           A.      UMN's Original Infringement Contentions .........................................4

7           B.      UMN's Amended Infringement Contentions........................................4

8           C.      LSI Moved To Strike UMN Amended Contentions ...........................5

9           D.      Claim Construction Proceedings..........................................................6

10          E.      Prof. McLaughlin's New Infringement Theory and New
                    Construction of "Recorded Waveform"................................................8
11
     IV.    THE COURT SHOULD STRIKE UMN's NEW INFRINGEMENT
12          THEORY .........................................................................................................11

13   V.     CONCLUSION ...............................................................................................12

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Allvoice Devs. US, LLC v. Microsoft Corp.*,
   612 F. App'x 1009 (Fed. Cir. 2015) ................................................................................... 11

5

*Am. River Nutrition, LLC v. Beijing Gingko Grp. Biological Tech. Co., Ltd*,
   No. 8:18-CV-02201-FLA (JDEx), 2021 WL 8742302, at *5 (C.D. Cal. Dec. 14,
   2021) .................................................................................................................................... 12

*ASUS Computer Int'l v. Round Rock Rsch., LLC*,
   No. 12-CV-02099 JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ....................... 3

*Atmel Corp. v. Info. Storage Devices Inc.*,
   No. C 95-1987 FMS, 1998 WL 775115 (N.D. Cal. Nov. 5, 1998) ...................................... 3

*Dynetix Design Sols., Inc. v. Synopsys, Inc.*,
   No. C 11-5973 PSG, 2013 WL 4537838 (N.D. Cal. Aug. 22, 2013) ................................... 8

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
   822 F.3d 1312 (Fed. Cir. 2016) ......................................................................................... 12

*LSI Corp. v. Regents of Univ. of Minnesota*,
   43 F.4th 1349 (Fed. Cir. 2022) ........................................................................................... 2

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
   No. 14-CV-03657-SI, 2019 WL 1865921 (N.D. Cal. Apr. 25, 2019) ................................. 3

*Phigenix, Inc. v. Genentech, Inc.*,
   783 F. App'x 1014 (Fed. Cir. 2019) ................................................................................... 11

*Smart Wearable Techs. Inc. v. Fitbit Inc.*,
   No. 17-CV-05068-VC, 2018 WL 659013 (N.D. Cal. Feb. 1, 2018) ................................... 12

*Spectrum Scis. & Software, Inc. v. United States*,
   98 Fed. Cl. 8 (2011) ........................................................................................................... 9

*Taction Tech., Inc. v. Apple Inc.*,
   686 F. Supp. 3d 995 (S.D. Cal. 2023) ............................................................................... 12

*Treehouse Avatar LLC v. Valve Corp.*,
   54 F.4th 709 (Fed. Cir. 2022) ....................................................................................... 4, 11

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>NOTICE OF MOTION</u>

2

TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on December 12, 2024, at 9:00 A.M. or soon thereafter as

4

counsel may be heard by the Honorable Judge Davila, in the United States District Court for the

5

Northern District of California, located at 280 South 1st Street, San Jose, California, Defendants

6

LSI Corporation and Avago Technologies U.S. Inc. (collectively, "LSI") will move and hereby do

7

move to strike portions of Prof. McLaughlin's opening report that advance new infringement

8

theories and claim constructions.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

### I.   INTRODUCTION AND STATEMENT OF THE ISSUE TO BE DECIDED

Plaintiff ("UMN") served its original infringement contentions on December 11, 2017 ("Original Contentions").  On January 3, 2018, UMN served amended infringement contentions ("Amended Contentions") asserting infringement of claims 13, 14, and 17 of U.S. Pat. No. 5,859,601 ("the '601 patent").  Claim 13 (now cancelled) is an independent claim reciting a general "method for encoding" binary data (*i.e.*, 1's and 0's) such that there can be "no more than j consecutive transitions" in the "recorded waveform."  The patent calls this type of encoding maximum transition run encoding ("MTR").  The method can be used to encode and write data to external media.  In claim 13, the 'j' number of consecutive transitions (*e.g.*, flips from "1" to "0" or vice versa on the disk) must be greater than or equal to 2 but has no upper bound.  Claims 14 and 17 depend from claim 13 and both place an upper bound on this 'j' constraint by requiring the maximum number of consecutive transitions to be less than 10.

In its Amended Contentions, UMN alleged that third-party hard disk drives incorporating chips designed by LSI can be used to infringe claims 13, 14 and 17 using a setting called the "███ ███" to select a ████████ Coderate. (Amended Contentions, Ex. 1 at claim chart pages 10-12.). UMN also alleged that when another component in LSI's chips called an "████████ is enabled," (*i.e.*, the "LDPC Parity Bits" columns below), then "████████ encoder increases the MTR j and k constraints" such that the 'j' number of consecutive transitions in the waveform recorded to the hard disk "increases" from ████:

1

2

3

4

5

6

7

8

9

10



11  (*Id.*, Claim Chart at 10 (annotated), citing Table 201 from LSI's product specification).

12      At the time UMN served its Amended Contentions, claim 13 had not yet been cancelled by

13  the U.S. Patent Office.  And because claim 13 had no upper bound on the claimed 'j' constraint,

14  UMN asserted that the increased 'j' constraint value of ███████ "the ████████ is enabled"

15  nonetheless infringes that claim.  But recognizing that claims 14 and 17 require the 'j' constraint

16  to be less than 10, UMN stated in its Amended Contentions that use of the ████████████ in

17  hard disk drives only infringes when "the ██████████ is disabled"—a scenario which, as seen

18  in Table 201 above, would result in a 'j' constraint ██████████.

19      After UMN served its Amended Contentions, the Patent Office cancelled claim 13 due to

20  anticipation, leaving only claims 14 and 17 asserted in this litigation.  *See LSI Corp. v. Regents of*

21  *Univ. of Minnesota*, 43 F.4th 1349, 1354 (Fed. Cir. 2022). And subsequent discovery revealed that

22  the ████████████████████████, meaning that the 'j' constraint is ██████

23  whenever ██████████ is selected. (Ex. 2, McLaughlin Dep. Tr. at 151:12-17 (Q.  "You're

24  not aware of any evidence that any hard disk drive at issue in the case had the ████████

25  ██████, correct?"  A.  "That's correct.")).  Because a 'j' constraint ██████ does not satisfy the

26  requirement of both claim 14 and claim 17 that the 'j' constraint must be less than 10, UMN

27  should have immediately dismissed this case once this became known.

28

1    But instead of dismissing the case, UMN introduced a new infringement theory into the

2    case via the report of its paid expert, Professor McLaughlin.  This new theory is premised on a

3    previously undisclosed construction of the claim term "recorded waveform"—a claim term the

4    parties previously agreed should be given its plain and ordinary meaning.  Dkt. 240 at 2; *also* Dkt.

5    263 at 14.  Instead of using the plain meaning of "waveform" as agreed in the joint filing with the

6    Court (Dkt. 240 at 2), Prof. McLaughlin opines that "I would say [the parity bits] are part of *a*

7    recorded waveform, but they are not part of *the* recorded waveform, as described in the patent."

8    (Ex. 2, McLaughlin Dep. Tr. at 67:10-15 (emphasis added)).  And under this new definition of

9    "recorded waveform" where ████████████ are simply ignored, Prof. McLaughlin opines that

10   the 'j' constraint for the ████████████████████, regardless of whether the

11   ████████████.  (Ex. 3, McLaughlin report at page 115, ¶ 8.12.).

12        Because Prof. McLaughlin's infringement theory contradicts both (i) the parties'

13   agreement that "recorded waveform" should have its plain and ordinary meaning; and (ii) UMN's

14   own infringement theory set forth in the Amended Contentions where the 'j' constraint ████

15   ████████████" the Court should strike Professor McLaughlin's new

16   infringement theory alleging that use of ████████████ infringes claims 14 and 17.

17   **II.    LEGAL STANDARD**

18        "The patent local rules were adopted by this district in order to give claim charts more

19   'bite.'  The rules are designed to require parties to crystallize their theories of the case early in the

20   litigation and to adhere to those theories once they have been disclosed."  *Atmel Corp. v. Info.*

21   *Storage Devices Inc.*, No. C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998).  The

22   Patent Rules require "early identification" of infringement theories.  *MLC Intell. Prop., LLC v.*

23   *Micron Tech., Inc.*, No. 14-CV-03657-SI, 2019 WL 1865921, at *1 (N.D. Cal. Apr. 25, 2019).

24   Once contentions are served, they "constitute the universe" of a plaintiff's "theories, and those

25   contentions may be amended only by order of the court and upon a showing of good cause."  *Id.* at

26   *2.  Given the purpose of the Local Patent Rules' disclosure requirements, "expert reports cannot

27   go beyond the bounds of the disclosed infringement theories and introduce new theories not

28   disclosed in the contentions."  *Id.*; *ASUS Computer Int'l v. Round Rock Rsch., LLC*, No. 12-CV-

02099 JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) ("[A] party may not use an expert report to introduce new infringement theories."). Further, when "the court has adopted a construction that the parties requested and agreed upon, any expert theory that does not rely upon that agreed-upon construction is suspect." *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022). Courts may strike portions of an expert report "that did not rely on the claim construction agreed to by the parties." *Id.* (affirming no abuse of discretion in striking infringement theory relying on a new claim construction).

## III. FACTUAL BACKGROUND

### A. UMN's Original Infringement Contentions

UMN served its Original Contentions on December 11, 2017. (Ex. 4.). In the Original Contentions, UMN alleged that use of ███████████████████████████████ independent claim 13 (which has no upper bound on 'j'), while alleging that the ███████████ ████ also infringes claims 14 and 17 (which require 'j' must be less than 10). As to ███████ ███████, UMN alleged that "the value for ████████████████ (Ex. 4 at Claim Chart page 9.). UMN's Original Contentions did not mention or account for ████████████████ ████████████████████████████████████████████████ ████████████.

### B. UMN's Amended Infringement Contentions

On January 3, 2018, without seeking leave or attempting to show good cause, UMN served its Amended Contentions. (*See* Ex. 1.). In its Amended Contentions, UMN belatedly acknowledged what is manifest in the documentation for the accused products, namely, that "[f]or ████████████████████████████████████████████████████████ ████████████████████████████████████████████████" as shown in the following table:

1

2

3

4

5

6

7

8

9

10  (Ex. 1, Claim Chart at 10 (emphasis and annotation added)).  As shown in Table 201 above taken

11  from LSI's internal specifications, ███████████████████████████████████

12  ████████████████████████████████████████

13  ███████    And the value of the 'j' constraint ████████████████████████

14  █████████████████████████████████    Accordingly, with

15  respect to claim 14, UMN alleged in its Amended Contentions that only ████████████

16  ███████████████████████████████████████████████

17  ████████████████████████"[1]  (Ex. 1 at Claim Chart page 12

18  (emphasis added)).

19       **C.    LSI Moved To Strike UMN Amended Contentions**

20       LSI moved to strike UMN's Amended Contentions because UMN had not obtained leave

21  of court to amend its contentions and could not show diligence in seeking to do so.  *See* Dkt. 131.

22  As LSI explained, UMN's new infringement theories "involve particular allegations involving the

23  functionality of ████████████ in the accused devices" but "UMN did not disclose these or

24  any other ████████████████████ on or before" the deadline for serving contentions.

25  *Id.* at 13.  UMN opposed the motion to strike, arguing that its Amended Contentions were justified

26  _____

27  [1] It is undisputed that use of all code rate options ████████████████.  (Ex. 2,

28  McLaughlin Dep. Tr. at 51:9-52:2, 84:8-11, 104:11-16, 124:16-125:3.).

1    because ███████████ are critical to determining infringement and that new discovery

2    produced by LSI supposedly "provided more detail regarding where the LDPC█████

3    ████████████████████." Dkt. 184 at 6; *id*. at 10 ("The product specifications

4    that Defendants produced before the University served its Claim Construction Charts did not

5    explain where █████████████████████████████████████████████████████

6    ████████"); *see also* Ex. 5, June 28, 2023 Hrg. Tr. at 37:6-11 (UMN's counsel arguing that the

7    Amended Contentions are premised on "a nonpublic product specification that they produced after

8    we submitted our initial infringement contentions."). Magistrate Judge Cousins ultimately denied

9    LSI's motion to strike. Dkt. 288.

10        **D.    Claim Construction Proceedings**

11        Shortly before this case was stayed pending the Patent Office's *inter partes* review of the

12   '601 patent, the parties filed a Joint Claim Construction and Prehearing Statement. *See* Dkt. 204.

13   At that time, the parties disputed the meaning of the claim term "recorded waveform." *See* Dkt.

14   204-2. UMN submitted a declaration from Prof. McLaughlin, who argued that a "recorded

15   waveform" is simply "a waveform recorded to a magnetic recording medium." Dkt. 240-4 at 20, ¶

16   41. Prof. McLaughlin further opined that a person of ordinary skill in the art "would understand a

17   'waveform' in general to mean a continuous signal that varies over time" and that this is the

18   "common understanding … used in the '601 Patent." *Id*. at 22, ¶ 49. Prof. McLaughlin further

19   confirmed that the term "recorded waveform" does not have a special meaning in the context of

20   the '601 patent, and that the claimed recorded waveform is simply the "waveform supplied to the

21   write head that writes the data to the magnetic disk." *Id*. And Prof. McLaughlin even annotated

22   Figure 8.1 from a textbook that make clear that the "recorded waveform" includes parity bits from

23   a preceding "Error-Correction Encoder" (*e.g.*, the "LDPC encoder" in LSI's products):

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12



FIGURE 8.1.   Typical magnetic recording channel.

13   Dkt. 240-4 at 22-23, ¶ 49 ("Waveform" and red arrow in original).  The textbook used by Prof.

14   McLaughlin explains with respect to Figure 8.1 that "error-correction encoding" is used to

15   "introduce[] additional bits of information [*i.e.*, parity bits] into the stream of the user bits" prior to

16   the "Waveform" being recorded to the disk.  Ex. 204-4 at 85 of 89.  "While this operation requires

17   some extra disk storage, it improves error rate performance of the disk drive and increases the

18   reliability of the storage device." *Id.*

19        As acknowledged in the Amended Contentions, the error-correction encoding in the LSI

20   products is done by "███████████" while the channel encoding is done by the "███

21   ███." (*See* Ex. 1, Claim Chart at 1-2 (showing block diagrams of LSI's chips including the

22   "███████" in concert with the "███████"); *id.* at 4 ("If enabled, ███████

23   ███████████████████████████████████████

24   ███████.") (emphasis added).).  After Dr. McLaughlin confirmed in his claim

25   construction declaration that "recorded waveform" as recited in the asserted claims has its

26   ordinary meaning—*i.e.*, the continuous waveform supplied to a write head, which necessarily

27   includes parity bits when "the LDPC encoder is enabled"—the parties agreed that "recorded

28   waveform" does not have a special definition and should be given its "plain and ordinary

1  meaning." Dkt. 240 at 2.[2]  And as proposed by UMN, the Court held in its *Markman* Order that

2  the term "encoded waveform" referenced in claim 13 is just another way of saying "the recorded

3  waveform." Dkt. 263 at 10-12.

### E.      Prof. McLaughlin's New Infringement Theory and New Construction of "Recorded Waveform"

6          Again, the reason UMN provided the Court for serving Amended Contentions was to

7  consider and address new discovery regarding "███████████████ are placed in the

8  recorded bit stream." Dkt. 184 at 10.  Yet Prof. McLaughlin now argues in his opening expert

9  report that "it is my opinion that ██████████ *should not be considered* in determining

10  whether an encoded/recorded waveform satisfies the MTR (j;k) constraints of the Asserted

11  Claims."  (Ex. 3 at page 115, ¶ 8.12 (emphasis added).).  In other words, under UMN's new

12  infringement theory, Prof. McLaughlin argues that "it is immaterial in my opinion to determining

13  infringement that j might be ███████████████████ section is

14  considered."  (*Id.*, ¶ 8.13.). To arrive at this new theory, Prof. McLaughlin re-interprets "encoded

15  waveform" / "recorded waveform" to pretend that ███████████ simply do not exist in the

16  recorded bit stream.  This is shown in Prof. McLaughlin's annotations of LSI's technical diagram

17  included in his expert report:

---

25  [2] *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. C 11-5973 PSG, 2013 WL 4537838, at *2 (N.D.

26  Cal. Aug. 22, 2013) ("Dynetix never asked the court to construe at least three … terms … during

27  either of the court's claim construction hearings, but now on the eve of trial requests that the court

28  do so. … Because Dynetix failed to diligently develop its case, the court dismisses the claim.").

(Ex. 3, Appendix C at 31.).  As seen above, Prof. McLaughlin draws red rectangles around the portions of a recorded waveform ▮▮▮▮▮▮▮▮▮ and labels those sub-sections the "encoded waveform."  But Prof. McLaughlin blatantly ignores ▮▮▮▮▮▮ which are clearly seen as constituent parts of the exact same waveform.[3]

Indeed, Prof. McLaughlin acknowledged during his deposition that, under the plain and ordinary meaning of "recorded waveform," ▮▮▮▮▮▮ part of the recorded waveform:

```
15 Q. Outside the context of the '601 patent,
16 ▮▮▮▮▮▮▮▮▮ to a hard disk drive would be
17 considered part of a recorded waveform, right?
18 A. Yes.
```

---

[3] This approach is reminiscent of Procrustes from Greek mythology, as "Procrustes ... had an iron bed in which he invited travelers to spend the night.  If the guest was too short for the bed, Procrustes would ... stretch them to fit; if the guest proved too tall, Procrustes would amputate the excess length."  *Spectrum Scis. & Software, Inc. v. United States*, 98 Fed. Cl. 8, 22 n. 20 (2011).

(Ex. 2, McLaughlin Dep. Tr. at 65:15-18.). Professor McLaughlin also acknowledged that he was applying a new definition of "recorded waveform" that differs from the plain and ordinary meaning in the field that the parties agreed to during claim construction (*see* Dkt. 240 at 2):

```
10 Q. Right. Is it your opinion that ███████
         ███████ don't count as part of the recorded waveform,
12 yes or no?
13 A. I would say they are part of a recorded
14 waveform, but they are not part of the recorded
15 waveform, as described in the patent.
```

(Ex. 2 at 67:10-15; *also id*. at 156:23-147:6 ("They ███████ are part of a recorded waveform, but that is not the recorded waveform referred to in the patent.")). And Prof. McLaughlin's reason for using a new definition of the term "recorded waveform" that excludes ███████ also became clear during the deposition, namely, if ███████ are considered part of the recorded waveform, <u>there is no infringement</u>:

```
3  Q. And [if] ███████ are considered part of
4 the claimed -- the claimed recorded waveform, then
5 there would be no infringement, right?
6 A. Yeah, you're describing a hypothetical,
7 which I don't agree with, but if someone determines
8 that your hypothetical is correct, I would agree with
9 that.
                        * * *
17 Q. The reason you didn't agree with what I
18 said previously was because you don't consider the
19 ███████ to be a part of the claimed recorded
20 waveform; is that right?
21 A. That's correct.
```

1    (*Id.* at 68:3-9; 17-24; *see also* 154:11-15 (testifying ██████████ "should just not be considered

2    at all in determining infringement")).

### IV. THE COURT SHOULD STRIKE UMN'S NEW INFRINGEMENT THEORY

4       There is no mystery what happened here.  UMN failed to account for ████████

5    ████████████████ in its Original Contentions.  UMN attempted to cure that defect by

6    serving its operative Amended Contentions.  And the Amended Contentions expressly contend

7    that when the "██████████████████," "████████████████████

8    ██████." In the context of ██████████████, that means that the 'j' constraint

9    "increases" ██████  *See* Section III.B, *supra*.  And because claim 13 places no upper bound

10    on the 'j' constraint, at the time of service, UMN's Amended Contentions still represented a viable

11    infringement theory, even when "██████████████."

12       But two things happened after service of UMN's Amended Contentions. First, claim 13

13    was cancelled by the Patent Office, leaving only claims 14 and 17 remaining in the case. Both

14    claim 14 and claim 17 require that the 'j' constraint be less than 10.  Second, discovery revealed

15    that ██████████████████ in the accused products.  This means, under UMN's own

16    Amended Contentions, ████████████████ is selected. *See* Section III.B,

17    *supra*. And because a 'j' constraint value ████████████, there is no infringement of

18    either claim 14 or 17.

19       Realizing that no viable theory remained under its Amended Contentions, UMN

20    introduced a new infringement theory via an expert report—a theory premised on a new

21    construction of "recorded waveform" that arbitrarily ██████████  *See* Section III.E, *supra*.

22    This is precisely the scenario the Court's Patent Local Rules are designed to prevent. For this

23    reason, the Court should strike Professor McLaughlin's opinion that ████████████

24    option in the accused products infringes claims 14 and 17 of the '601 Patent. *See Treehouse*

25    *Avatar LLC*, 54 F.4th at 715 ("[Plaintiff] has failed to demonstrate that the district court abused its

26    discretion by striking portions of [expert's] report that did not rely on the claim construction

27    agreed to by the parties."); *Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1018 (Fed. Cir.

28    2019) (affirming striking of report); *Allvoice Devs. US, LLC v. Microsoft Corp.*, 612 F. App'x

1  1009, 1014 (Fed. Cir. 2015) ("[T]he district court's decision to exclude the TSF property store

2  theory … was not an abuse of discretion."); *Smart Wearable Techs. Inc. v. Fitbit Inc.*, No. 17-CV-

3  05068-VC, 2018 WL 659013, at *1 (N.D. Cal. Feb. 1, 2018) ("If the Court were to allow SWT to

4  skirt the Local Rules and assert a new theory of infringement at this stage, the rule requiring

5  infringement contentions would be meaningless.").[4]

6  **V.    CONCLUSION**

7        Defendants respectfully request that the Court grant their motion and strike Professor

8  McLaughlin's theory that use of the                          in the accused products infringes

9  claims 14 and 17 of the '601 patent.

---

18  [4] *See also Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1325 (Fed. Cir. 2016)

19  ("Stryker asserts that a litigant cannot be forced to foresee and incorporate all possible claim

20  constructions into its initial infringement contentions. This may be true, but the local rules provide

21  for opportunity to seek amendment of its contentions for this very reason."); *Taction Tech., Inc. v.*

22  *Apple Inc.*, 686 F. Supp. 3d 995, 1010 (S.D. Cal. 2023) ("Dr. Oliver's expert report improperly

23  contains a new theory of infringement."); *Am. River Nutrition, LLC v. Beijing Gingko Grp.*

24  *Biological Tech. Co., Ltd*, No. 8:18-CV-02201-FLA (JDEx), 2021 WL 8742302, at *5 (C.D. Cal.

25  Dec. 14, 2021) ("Under the Patent Local Rules, ARN had an affirmative duty to disclose its

26  infringement theory . . . and to include in its Infringement Contentions the detail required by

27  Patent Local Rule 3-1, but it failed to do so prior to serving . . . the Rockstraw Expert Report—

28  which occurred after claim construction and over two months after the close of fact discovery.").

1  DATED:  October 7, 2024              Respectfully submitted,

2                                       By: /s/ April E. Isaacson
                                        HOLLAND & KNIGHT LLP
3
                                        Kristopher L. Reed (SBN 235518)
4                                       kris.reed@hklaw.com
                                        One Arts Plaza
5                                       1722 Routh Street, Suite 1500
                                        Dallas, TX 75201
6                                       Tel: (214) 964-9500 / Fax: (214) 964-9501

7                                       Edward J. Mayle (admitted pro hac vice)
                                        edward.mayle@hklaw.com
8                                       1801 California Street, Suite 5000
                                        Denver, CO 80202
9                                       Tel: (303) 974-6660 / Fax: (303) 974-6659

10
                                        KILPATRICK, TOWNSEND & STOCKTON LLP
11
                                        April E. Isaacson (SBN 180638)
12                                      aisaacson@kilpatricktownsend.com
                                        Two Embarcadero Center, Suite 1900
13                                      San Francisco, CA 94111
                                        Tel:  (415) 576-0200 / Fax:  (415) 576-0300
14
                                        Kevin M. Bell (admitted pro hac vice)
15                                      kbell@ktslaw.com
                                        1400 Wewatta St., Suite 600
16                                      Denver, CO 80202
                                        Tel :(303) 571-4000 / Fax: (303) 571-4321
17
                                        Andrew W. Rinehart (admitted pro hac vice)
18                                      arinehart@kilpatricktownsend.com
                                        1001 West Fourth Street
19                                      Winston-Salem, NC 27101
                                        Tel: (336) 607-7300 / Fax: (336) 607-7500
20
                                        Kathleen R. Geyer (admitted pro hac vice)
21                                      kgeyer@kilpatricktownsend.com
                                        1420 Fifth Ave., Ste. 3700
22                                      Seattle, WA  98101
                                        Tel: (206) 467-9600 / Fax:  (206) 623-6793
23
                                        Attorneys for Defendants
24

25

26

27

28