Edward P. Sangster (SBN 121041)
ed.sangster@klgates.com
Erik J. Halverson (SBN 333492)
erik.halverson@klgates.com
**K&L Gates LLP**
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Tel: (415) 882-8200
Fax: (415) 882-8220

Patrick J. McElhinny *pro hac vice*
patrick.mcelhinny@klgates.com
Mark G. Knedeisen, *pro hac vice*
mark.knedeisen@klgates.com
Christopher M. Verdini, *pro hac vice*
christopher.verdini@klgates.com
Anna Shabalov, *pro hac vice*
anna.shabalov@klgates.com
Rachel E. Ellenberger, *pro hac vice*
rachel.ellenberger@klgates.com
**K&L Gates LLP**
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
(412) 355-6500

Theodore J. Angelis, *pro hac vice*
theo.angelis@klgates.com
**K&L Gates LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
(206) 623-7580

*Counsel for Plaintiff*
*Regents of the University of Minnesota*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| REGENTS OF THE UNIVERSITY OF MINNESOTA,<br><br>Plaintiff,<br><br>vs.<br><br>LSI CORPORATION and AVAGO TECHNOLOGIES U.S. INC.,<br><br>Defendants. | Case No.: 5:18-cv-00821-EJD-NMC<br><br>**PLAINTIFF'S STATEMENT REGARDING INTENDED PRESENTATION OF DAMAGES CASE** |

1     Pursuant to the Court's Order Regarding Motions in Limine ("MIL Order," Dkt. 405),
2 Plaintiff Regents of the University of Minnesota ("UMN") respectfully submits this statement
3 discussing at a ▮▮▮▮▮ how it intends to present its damages case following the Court's *Daubert*
4 Order ("*Daubert* Order," Dkt. 393). As the Court observed, ▮▮▮▮▮
5 ▮▮▮▮▮ Dkt. 405 at 4, and UMN reserves all rights in connection therewith.

6     If a jury finds the '601 Patent to be infringed and not invalid, UMN is entitled to recover
7 "damages adequate to compensate for the infringement, but in no event less than a reasonable
8 royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. UMN intends to
9 present a robust case regarding the value of LSI's infringement and the corresponding reasonable
10 royalty to which UMN is entitled, consistent with the Court's *Daubert* and MIL Orders.

11     To start, UMN intends to introduce testimony and documentary evidence from both UMN
12 and LSI fact witnesses that bear on issues critical to the hypothetical negotiation framework and
13 reasonable royalty, including, *inter alia*, the value of the patented methods, LSI's uses of the
14 infringing technology, LSI's extensive design, development, and sales cycle (collectively, the "Sales
15 Cycle"), LSI's own views of the value of its infringing technology, the competitive and financial
16 landscape facing LSI around the date of first infringement, LSI's projections and sales records for
17 the accused products, and UMN's and LSI's licensing practices. Additionally, UMN's technical
18 expert will testify about LSI's and its customers' uses of the infringing technology and the technical
19 benefits from using the patented methods. UMN's industry expert will then situate those uses within
20 the broader context of LSI's Sales Cycle, identify their value to LSI, and explain why those uses
21 were essential to LSI achieving design wins and reaching volume production of SoCs.

22     Using those inputs and her extensive review and analysis of the record evidence and other
23 reliable sources identified in her expert report, Ms. Lawton will testify about the damages opinions
24 reflected in her report, with the exception of her ▮▮▮▮▮
25 ▮▮▮▮▮[1] Dkt. 393 at 18. In other words, Ms. Lawton will testify,

---

[1] UMN respectfully disagrees with the Court's determination that ▮▮▮▮▮
▮▮▮▮▮ Dkt. 393 at 18, for the

1

PLAINTIFF'S STATEMENT ON DAMAGES CASE      CASE NO. 5:18-CV-00821-EJD-NMC

1  ▮▮▮ to ▮▮▮
2  without presenting ▮▮▮ *See* Dkt. 405 at 4.  Those ▮▮▮
3  include Ms. Lawton's underlying evaluation and resulting opinions regarding (i) her patent valuation
4  analysis, including the income and market approaches and resulting valuation metrics, such as the
5  ▮▮▮
6  ▮▮▮" (*id.*), (ii) the analytical approach finding
7  ▮▮▮ and (iii) the hypothetical negotiation approach,
8  including, consistent with her report, her discussion of the *Georgia-Pacific* factors and the upward or
9  downward pressure those factors put on the reasonable royalty determination.
10         Additionally, Ms. Lawton will present the three royalty bases she opines are appropriate for
11  the determination of a reasonable royalty: ▮▮▮
12  ▮▮▮
13  ▮▮▮
14  ▮▮▮
15  *See* Lawton Report, Dkt. 331-13, at Table 8.7.  The Court already has ▮▮▮
16  ▮▮▮ *See* Dkt. 393 at 10-14 (▮▮▮
17  ▮▮▮
18  ▮▮▮ *id.* at 17-18 (▮▮▮
19  ▮▮▮ *id.* at 18 ▮▮▮
20  ▮▮▮
21         By way of further specifics on the presentation of Ms. Lawton's valuation metrics and
22  ranges, Ms. Lawton expects to present the constellation of approaches and analyses that are
23  summarized at Table 7.13 of her report (Dkt. 331-13), and which Ms. Lawton opines the parties

---

reasons UMN's counsel stated on the record at the final pretrial conference.  *See* Mar. 6, 2025 Final Pretrial Conference Tr. at 61-64.  Notwithstanding any statements made herein, UMN reserves all rights in connection with the Court's ruling for purposes of appeal or otherwise.

would consider at the hypothetical negotiation.[2]  In presenting those approaches and her analysis, Ms. Lawton would explain each approach, how she arrived at the valuation metrics, and how the parties to the hypothetical negotiation would view the valuation metrics.  LSI, of course, will have the opportunity to cross-examine Ms. Lawton as to her analysis.

Addressing the matters specifically raised in the MIL Order, Ms. Lawton will not ▮▮▮▮▮▮▮▮▮▮ Dkt. 405 at 4.  She also will not ▮▮▮▮▮▮▮▮▮▮ nor will she ▮▮▮▮▮▮▮▮▮▮ *Id.*  Instead, Ms. Lawton will arm the jury with the relevant facts and analyses on valuation and the hypothetical negotiation, including a range of valuation metrics, from which the jury can determine what it believes an appropriate reasonable royalty rate (and ultimate reasonable royalty) to be.  By way of illustration, UMN may present Ms. Lawton's various metrics to the jury through demonstrative slides along the lines of the following, which highlights the parties' perspectives at the hypothetical negotiation (including the bounds on LSI's willingness to pay and UMN's willingness to accept):

---

[2] Pursuant to the Court's order that ▮▮▮▮▮▮▮▮▮▮ Dkt. 393 at 17, before presenting this table to the jury, UMN would update the description of the 2012 *CMU v. Marvell* jury verdict to reflect the $0.50 per unit rate of the verdict and remove the reference to a ▮▮▮▮▮▮▮▮▮▮ Ms. Lawton's testimony on the $0.50 per unit royalty in *CMU v. Marvell* still functions as, and is appropriate for the jury to consider as, a reasonableness check.  That reasonableness check is not ▮▮▮▮▮▮▮▮▮▮ Dkt. 405 at 3, but rather against all of the other valuation metrics offered in the Table 7.13 that are part of Ms. Lawton's analysis and part of what the jury should be entitled to consider in selecting a rate.

[redacted image]

This illustrative slide makes clear that Ms. Lawton will not opine that any particular metrics or valuation ranges, standing alone, represent a reasonable royalty rate.[3]

In closing argument, UMN expects to present again to the jury the constellation of valuation metrics described by Ms. Lawton (perhaps by displaying the demonstrative above), and to focus the jury on the apportioned valuation ranges, consistent with Ms. Lawton's testimony and the other evidence admitted at trial.  UMN also expects to address any royalty rate and valuation metrics to which LSI's damages expert, Mr. McGahee, opines at trial.  UMN cannot identify at this point which specific subsets of metrics it will focus on in its closing, as that will depend on how the evidence comes in at trial, but UMN does not expect at this time to ask the jury to award a single, specific royalty rate.  Instead, and as the Court observed at the Pretrial Conference, UMN's counsel anticipates performing some exemplary math to assist the jury, *i.e.* multiplying illustrative royalty

---

[3] All of the data points on this slide are disclosed in and supported by Ms. Lawton's report.  *See* Dkt. 331-13 at ¶ 933 (Table 7.13 of valuation metrics); *id.* at ¶¶ 748-852 (income approach analyses); *id.* at ¶¶ 873-928 (market approach analyses); *id.* at ¶¶ 956-58 (analytical approach analysis).

1  rates within the presented rate ranges by the royalty bases to which Ms. Lawton and/or Mr.
2  McGahee opine.  *See* Mar. 6, 2025 Final Pretrial Conference Tr. at 66 ("Counsel are going to get up
3  and do the math in realtime."); *id.* ("[It seems like one of them is going to have to stand up as the
4  easel and do the math.").  This will serve both to present to the jury a range of reasonable royalty
5  options based on the evidence and to illustrate how the jury could do its own math if it elects to
6  apply other rates or bases.
7        As detailed above, UMN's intended approach conforms to the Court's Orders.  It also
8  conforms to the established law on patent damages, which (i) does not require a damages expert to
9  opine to a single royalty rate and (ii) allows the jury to select a rate based on the range of evidence
10 with which they are presented.  *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 985 (Fed.
11 Cir. 2021) ("While an expert must use reliable methodology for determining the range of possible
12 hypothetical negotiation royalty rates, we are aware of no precedent that requires an expert to
13 provide a single proposed royalty rate. As an initial matter, a jury is entitled to choose a damages
14 award within the amounts advocated by the opposing parties and is not bound to accept a rate
15 proffered by one party's expert but rather may choose an intermediate royalty rate. … In addition,
16 we have previously held that a jury's damages award that fell within the range suggested by the
17 patentee's damages expert was supported by substantial evidence." (internal quotations and citation
18 omitted)); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1167–68
19 (Fed.Cir.1991) ("[T]he factual determination of a reasonable royalty, however, need not be
20 supported, and indeed, frequently is not supported by the specific figures advanced by either party....
21 [T]he district court may reject the extreme figures proffered by the litigants as incredible and
22 substitute an intermediate figure as a matter of its judgment from all of the evidence."); *cf. Apple Inc.*
23 *v. Motorola, Inc.*, 757 F.3d 1286, 1327 (Fed. Cir. 2014), *overruled on other grounds by Williamson*
24 *v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("[A] finding that a royalty estimate may
25 suffer from factual flaws does not, by itself, support the legal conclusion that zero is a reasonable
26 royalty. . . . [T]he fact finder is still required to determine what royalty is supported by the record.").
27       If the Court seeks additional information on Ms. Lawton's intended trial testimony, UMN
28 respectfully requests the opportunity to proffer Ms. Lawton *in camera* in advance of her testimony.

5

| | | |
|---|---|---|
| 1 | | Respectfully submitted, |
| 2 | Dated: March 14, 2025 | K&L GATES LLP |

/s/ Patrick J. McElhinny
Edward P. Sangster (SBN 121041)
ed.sangster@klgates.com
Erik J. Halverson (SBN 333492)
erik.halverson@klgates.com
**K&L Gates LLP**
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Tel: (415) 882-8200
Fax: (415) 882-8220

Patrick J. McElhinny, *pro hac vice*
patrick.mcelhinny@klgates.com
Mark G. Knedeisen, *pro hac vice*
mark.knedeisen@klgates.com
Christopher M. Verdini, *pro hac vice*
christopher.verdini@klgates.com
Anna Shabalov, *pro hac vice*
anna.shabalov@klgates.com
Rachel E. Ellenberger, *pro hac vice*
rachel.ellenberger@klgates.com
**K&L Gates LLP**
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania  15222
(412) 355-6500

Theodore J. Angelis, *pro hac vice*
thoe.angelis@klgates.com
**K&L Gates LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
(206) 623-7580

*Counsel for Plaintiff*
*Regents of the University of Minnesota*

---

6

PLAINTIFF'S STATEMENT ON DAMAGES CASE                                  CASE NO. 5:18-CV-00821-EJD-NMC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on March 14, 2025.

                                            */s/ Patrick J. McElhinny*
                                            Patrick J. McElhinny