UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REGENTS OF THE UNIVERSITY OF MINNESOTA,<br><br>Plaintiff,<br><br>v.<br><br>LSI CORPORATION, et al.,<br><br>Defendants. | Case No.   5:18-cv-00821-EJD<br><br>**ORDER RE DAUBERT MOTIONS**<br><br>**REDACTED PUBLIC VERSION**<br><br>Re:  ECF Nos. 312, 314, 318 |

In connection with their motion for summary judgment, Defendants LSI Corp. and Avago Technologies U.S. Inc. (collectively "LSI") filed motions to strike portions of the testimony provided by three of the experts that Plaintiff ("UMN") offers—Dr. Steven McLaughlin, Dr. Christopher Bajorek, and Catharine Lawton. For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the motions to strike.

**I.   LEGAL STANDARD**

Courts are tasked with serving as the gatekeepers of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Before a witness can testify as an expert, the proponent of such testimony must "demonstrate[] to the court that it is more likely than not that" the proposed expert satisfies the requirements of the Federal Rules of Evidence. Fed. R. Civ. P. 702. First, the court must find that the proposed expert is qualified by "knowledge, skill, experience, training, or education." *Id.* If the expert is qualified, the court must then further scrutinize the expert's proposed testimony to ensure that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on

1  sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d)
2  the expert's opinion reflects a reliable application of the principles and methods to the facts of the
3  case." *Id.* Or put more simply, the court must find that the proposed expert's testimony is
4  relevant and reliable. *Daubert*, 509 U.S. at 597.

5  That said, *Daubert* and Rule 702 do not direct courts to displace the jury's factfinding role.
6  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1306 (Fed. Cir. 2011) ("It is decidedly the
7  jury's role to evaluate the weight to be given to the testimony of dueling qualified experts.").
8  Although courts must ensure that expert testimony is sufficiently relevant and reliable, what they
9  assess "is not the correctness of the expert's conclusions but the soundness of his methodology."
10 *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (quoting *Primiano v. Cook*, 598 F.3d
11 558, 564 (9th Cir. 2010)).[1] Thus, *Daubert* is not a "guarantee[] of correctness." *i4i Ltd. P'ship v.
12 Microsoft Corp.*, 598 F.3d 831, 855 (Fed. Cir. 2010). In recognition of this principle, courts apply
13 *Daubert* flexibly and "with a 'liberal thrust' favoring admission." *Wendell v. GlaxoSmithKline*
14 *LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citations omitted). In other words, courts should
15 exclude expert testimony only when it is fatally defective in some respect; courts should not
16 exclude expert testimony merely because they think it shaky or questionable. *Id.* at 1237.

17 **II.    DISCUSSION**
18     **A.    Dr. Steven McLaughlin**

19 LSI moves to strike portions from the report of UMN's technical expert, Dr. Steven
20 McLaughlin, as containing a new infringement theory that contradicts both (1) the parties' agreed
21 claim construction as to one term, and (2) UMN's infringement theory outlined in its amended
22 infringement contentions. LSI's motion fails on both fronts.

23 UMN served its original infringement contentions on December 11, 2017, and
24 supplemental contentions on January 3, 2018. *See* Original Contentions, ECF No. 311-7; Suppl.
25 Contentions, ECF No. 311-4. Both assert infringement of claims 13, 14, and 17 of U.S. Patent No.

---

[1] Regional circuit law—in this case Ninth Circuit law—applies to evidentiary rulings. *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 914 (Fed. Cir. 2022).

Case No.: 5:18-cv-00821-EJD
ORDER RE DAUBERT MOTS.                    2

5,859,601 (the " '601 patent").

In the Supplemental Contentions, UMN alleged that third-party hard disk drives ("HDD") incorporating chips designed by LSI can be used to infringe claims 13, 14, and 17 using a setting called "RLL code" to select a ▬▬▬▬. Suppl. Contentions, Ex. A at 10. UMN also alleged that when the ▬▬▬▬ is enabled—as reflected by the ▬▬▬▬ column below—the ▬▬▬▬

This is reflected in the below table, which originated in LSI's internal specifications:

[redacted table]

*Id.* For claim 13[2] (which had no upper limit on the j constraint), UMN asserted that the j constraint value of ▬ infringes, which occurs when ▬▬▬▬. For claims 14 and 17 (which require the j constraint to be less than 10), UMN asserted that LSI's ▬▬▬▬ infringed in two ways: (1) ▬▬▬▬; or (2) "▬▬▬▬" *Id.* at 12.[3]

During claim construction, the parties agreed that "recorded waveform" should be given its plain and ordinary meaning. *See* Am. Joint Claim Construction Statement ("JCCS") 2, ECF No. 240. As for the disputed "encoded waveform" term, the Court concluded that it had the same

---

[2] The PTAB cancelled claim 13 and upheld claims 14 and 17 during *inter partes* review proceedings on April 14, 2021.

[3] Claim 17 depends from claim 14, so UMN's contentions for claim 14 apply to claim 17. *See* McLaughlin Opp. 8 n.7, ECF No. 328.

Case No.: 5:18-cv-00821-EJD
ORDER RE DAUBERT MOTS.                    3

1   meaning as "recorded waveform." Claim Construction Order 11, ECF No. 263.

2   UMN provided an expert report from Dr. McLaughlin dated April 18, 2024. McLaughlin Rep., ECF No. 311-6. In that report, Dr. McLaughlin opines that, "[u]nder the Court's construction of the terms 'producing sequences of n-bit codewords,' 'encoded waveform,' and 'recorded waveform,'" ▓▓▓▓▓ "should not be considered in determining whether an encoded/recorded waveform satisfies the MTR (j;k) constraints of the Asserted Claims." *Id.* ¶ 8.12. And "it is immaterial," in Dr. McLaughlin's opinion, "to determining infringement that j might be greater than 10 when a complete ▓▓▓▓▓ is considered." *Id.* ¶ 8.13. In other words, the ▓▓▓▓▓ can be ignored in determining infringement. It is this opinion LSI seeks to strike as newly disclosed.

The dispositive inquiry on a motion to strike is "whether the allegedly undisclosed 'theory' is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not previously identified in the plaintiff's contentions, or whether the 'theory' is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation." *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999, 2015 WL 3640694, at *2 (N.D. Cal. June 11, 2015). LSI contends Dr. McLaughlin's infringement theory is "new" because it contradicts (1) the parties' agreement regarding the construction of "recorded waveform," and (2) UMN's infringement theory in the Amended Contentions. The Court addresses both grounds below.

### 1.  Whether Dr. McLaughlin's Infringement Theory Contradicts the Parties' Agreement Regarding Construction of "Recorded Waveform"

LSI first challenges Dr. McLaughlin's infringement theory as "new" because it is premised on an undisclosed construction of the term "recorded waveform"—which the parties previously agreed should be given its plain and ordinary meaning. LSI contends that Dr. McLaughlin's opinion that ▓▓▓▓▓ "should not be considered" in determining whether an encoded/recorded waveform satisfies the MTR constraints is contrary to a plain and ordinary meaning of the term for two reasons: first, Dr. McLaughlin confirmed that, outside the context of the '601 Patent, ▓▓▓▓▓ *would* be considered part of the recorded waveform. McLaughlin

1  Mot. 9–10, ECF No. 312 (citing McLaughlin Dep. at 65:15–18, ECF No. 311-5). When asked
2  whether it was his opinion that " ▮▮▮▮▮ don't count as part of the recorded waveform,"
3  Dr. McLaughlin responded: "I would say they are part of *a* recorded waveform, but they are not
4  part of *the* recorded waveform, as described in the patent." McLaughlin Dep. at 67:10–15
5  (emphasis added). Second, Dr. McLaughlin annotates LSI's technical diagram, which reflects a
6  ▮▮▮▮▮
7  ▮▮▮▮▮ *See* McLaughlin Opp. 9 (citing McLaughlin Rep., App. C at 31). LSI
8  contends this selective narrowing is improper because ▮▮▮▮▮,
9  which Dr. McLaughlin simply ignores.

   Starting with the deposition testimony, the Court agrees Dr. McLaughlin seems to be
assigning two definitions of "recorded waveform": one when considered within the context of the
'601 patent, and one in every other context. And the definition Dr. McLaughlin applies in the
context of the '601 patent would result in no infringement. UMN excuses this different treatment
of the same term because Dr. McLaughlin was properly considering "the context of the
surrounding words of the claim." McLaughlin Opp. 16 (quoting *ACTV, Inc. v. Walk Disney Co.*,
346 F.3d 1082, 1088 (Fed. Cir. 2003)).

   The Court declines to strike Dr. McLaughlin's infringement theory as relying on a new
construction of the term "recorded waveform." In his report, Dr. McLaughlin acknowledges that
he is applying the plain and ordinary meaning of "recorded waveform." *See* McLaughlin Rep.
¶ 8.1 (vi). He goes on to identify the plain and ordinary definition of that term—"a continuous
time signal." *See id.* ¶ 8.11 (citing the JCCS). Dr. McLaughlin will be held to the opinions in his
report, and any contradictory testimony during deposition is appropriate for cross-examination.

   The same is true for Dr. McLaughlin's annotation of LSI's technical diagram. The
diagram, which reflects "▮▮▮▮▮
▮▮▮▮▮" simply illustrates Dr. McLaughlin's theory; it does not show that he applied special
meaning to the term "recorded waveform" or "encoded waveform." LSI may have legitimate
criticisms of Dr. McLaughlin's interpretation of the technical diagram. But those criticisms can be
appropriately tested during trial and are not a basis for striking his infringement opinion at this

Case No.: 5:18-cv-00821-EJD
ORDER RE DAUBERT MOTS.           5

stage.

In sum, the Court cannot determine that Dr. McLaughlin's opinion "is based on a claim construction that is materially different from the construction adopted by the parties and the court." *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022). Accordingly, the Court declines to strike Dr. McLaughlin's infringement opinion as relying on a new construction of the term "recorded waveform."

### 2. Whether Dr. McLaughlin's Infringement Theory Contradicts UMN's Amended Contentions

LSI next argues that Dr. McLaughlin's theory should be stricken as new because it is inconsistent with UMN's Supplemental Contentions. In its supplemental claim construction charts, UMN alleges that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" Suppl. Contentions, Ex. A at 12 (emphasis added). Dr. McLaughlin's challenged opinion is as follows: "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" McLaughlin Rep. ¶ 8.12.

The question, then, is whether Dr. McLaughlin's opinion "permissibly specified the application of" UMN's broader infringement theory that infringement occurs when ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ do not affect a codeword generated by the RLL encoder or whether UMN has "substituted a new theory altogether." *Sonos, Inc. v. Google LLC*, No. 20-cv-06754, 2023 WL 2918751, at *2 (N.D. Cal. Apr. 12, 2023) (*quoting Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, 2014 WL 1653131, at *5 (N.D. Cal. Apr. 24, 2014)). Looking at the Supplemental Contentions, the extent of UMN's contentions with respect to claim 14 is as follows:

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Suppl. Contentions, Ex. A at 12. The details of Dr. McLaughlin's infringement opinion were not

1  explicitly disclosed.  The specific infringement opinion presented by Dr. McLaughlin does
2  arguably fall under the broader infringement theory disclosed in the Supplemental Contentions,
3  though; he could be providing an example of ▇
4  ▇.  Dr. McLaughlin opines that infringement in this circumstance
5  occurs "▇
6  ▇
7  ▇."  McLaughlin Rep. ¶ 8.13.  Nothing, however, in the Supplemental Contentions
8  discloses the specific theory that a recorded waveform ▇ such that an
9  encoded/recorded waveform satisfies the MTR (j;k) constraints of the Asserted Claims.  Although
10 not strictly inconsistent with the contentions, this opinion as articulated in the McLaughlin Report,
11 reflects a narrowed, new infringement theory.
12      While "expert reports are expected to provide more information than is contained in
13 infringement contentions," *Digital Reg of Tex.* 2014 WL 1653131, at *5, the "purpose of requiring
14 parties to disclose the basis for their contentions is to make them explicit and streamline patent
15 litigation." *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601, 2016 WL 3230696, at *6 (N.D. Cal.
16 June 13, 2016), *aff'd*, 698 F. App'x 1028 (Fed. Cir. 2017); *see also Illumina, Inc. v. BGI
17 Genomics Co.*, 559 F. Supp. 3d 1072, 1081 (N.D. Cal. 2021) (finding infringement theory newly
18 disclosed where it was "not explicitly disclosed under the Patent Local Rules and cannot be
19 implicitly disclosed").  Here, UMN could have disclosed more clearly the infringement theory
20 articulated in Dr. McLaughlin's report in its infringement contentions.
21          **3.  Fairness**
22      As UMN avers, the Court also considers fairness under these circumstances.[4]  When, as
23 here, "the line between permissible application of a disclosed theory and impermissible
24 substitution of a new theory blurs, the district court reverts to a simple question: will striking the

---

[4] The Court is not persuaded that it can (or should) disregard all fairness concerns because LSI argued the infringement theories were new as opposed to lacking specificity.  *See* McLaughlin Reply 2, ECF No. 341; *see also Illumina*, 559 F. Supp. 3d at 1083 (considering fairness of striking theories that "should have been disclosed").

Case No.:  5:18-cv-00821-EJD
ORDER RE DAUBERT MOTS.                7

report result in not just a trial, but an overall litigation, that is more fair, or less?" *Sonos*, 2023 WL 2918751, at *2 (cleaned up); *see also Illumina,* 559 F. Supp. 3d at 1080 (considering "disclosure and fairness" when evaluating motion to strike).

Such is the situation before the Court. As explained above, Dr. McLaughlin's infringement theory does not appear to be a "substitution" of UMN's prior theory—although it is close. The Court finds it appropriate to consider the fairness of striking the requested portions of Dr. McLaughlin's report and any resulting prejudice. LSI argues that UMN's belated disclosure of the new infringement theory until after fact discovery closed "depriv[ed] LSI of the opportunity to further develop a record in the context of UMN's infringement theory." McLaughlin Reply 3. That may be true in a general sense, but LSI "identif [ies] no particular prejudice" from UMN refining its "[infringement] theories in [Dr. McLaughlin's] expert report[]." *Finjan*, 2015 WL 3640694, at *6 (declining to strike insufficiently supported theories in expert report "[a]bsent specific evidence of prejudice caused by the deficient disclosures"). Nor has LSI stated why deposing Dr. McLaughlin on this theory and serving a rebuttal report challenging this theory was not enough. *See Illumina*, 559 F. Supp. 3d at 1084 (no prejudice in declining to strike newly disclosed infringement theory where moving party had "full opportunity depose [expert] and respond to his opinions through its expert [] rebuttal report during expert discovery."); *see also Sonos*, 2023 WL 2918751, at *6 (declining to strike infringement theory where "both sides' experts spoke to the [allegedly new theory of infringement]"). Indeed, with its motion, LSI submitted deposition testimony from Dr. McLaughlin regarding his interpretation of "recorded waveform" that may bear on his credibility and undermine UMN's broader infringement theory involving that term. And LSI's expert, Dr. Koralek directly addressed Dr. McLaughlin's infringement theory. *See* Koralek Rep. ¶¶ 12–17, ECF No. 327-5.

The Court **DENIES** the motion to strike Dr. McLaughlin's report.[5] If appropriate, the

---

[5] The Court's conclusion does not endorse UMN's argument that LSI should have moved to compel more specifics about UMN's infringement theories. As LSI explained, UMN's contentions were "quite clear." But because Dr. McLaughlin's opinion is more appropriately characterized as application of a disclosed theory, the Court finds that, striking the report under these circumstances would result in a less fair trial.

Case No.: 5:18-cv-00821-EJD
ORDER RE DAUBERT MOTS.                8

Court will address further challenges to Dr. McLaughlin's report *in limine*.

**B.  Dr. Christopher Bajorek**

UMN offers Dr. Christopher Bajorek as an industry expert to help explain how the HDD industry functions.  LSI challenges his opinions on two main grounds.

First, LSI claims that Dr. Bajorek does no more than parrot UMN's other experts, Dr. McLaughlin and Ms. Lawton, so Dr. Bajorek's opinions should be excluded either as improper vouching or as cumulative under Rule 403.  LSI is correct that experts cannot simply vouch for other witnesses.  *Mata v. Or. Health Auth.*, 739 F. App'x 370, 372 (9th Cir. 2018).  But it is equally true that "[e]xperts routinely rely upon other experts hired by the party they represent for expertise outside of their field."  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).  In the Court's reading, Dr. Bajorek's report rests comfortably on the "relying on other experts" side of the line.  If at trial, Dr. Bajorek's testimony crosses over to the "vouching" side of the line, LSI is free to object at that time.  As for LSI's alternative objection that Dr. Bajorek's testimony is cumulative, the Court cannot assess whether that is the case until trial, and until it sees what other evidence is being presented.  *See Synopsys, Inc. v. Siemens Indus. Software Inc.*, No. 20-cv-04151, 2024 WL 1683637, at *7 (N.D. Cal. Apr. 17, 2024) (noting that some objections are better addressed at trial with the benefit of further context).

Second, LSI contends that Dr. Bajorek is actually a percipient fact witness rather than an expert, and because that is so, he must be excluded since UMN failed to disclose him as a fact witness and because his testimony would be impermissible lay opinion under Rule 401.  LSI premises its argument on the fact that Dr. Bajorek's testimony is largely based on his experiences in the HDD industry rather than on specialized knowledge.  But as the Ninth Circuit recently clarified, personal experience and specialized knowledge are not mutually exclusive.  *United States v. Holmes*, --- F.4th ----, 2025 WL 583307, at *7 (9th Cir. Feb. 24, 2025) ("[T]here is no 'on-the-job' exception to Rule 702.").  "The fact that a witness personally observes a matter does not take the witness's opinion about that matter outside the scope of Rule 702 if that opinion is the product of '*specialized* knowledge.'"  *Id.* (emphasis in original).  Indeed, Rule 702 expressly

Case No.: 5:18-cv-00821-EJD
ORDER RE DAUBERT MOTS.                    9

provides that "experience" can qualify an expert to share her specialized knowledge. Fed. R. Evid. 702. In this case, Dr. Bajorek serves as an industry expert offering specialized knowledge about the structure of the HDD industry beyond a lay witness's purview. Thus, there is no basis for excluding him as an undisclosed fact witness or for offering inadmissible lay opinions.

The Court **DENIES** the motion to strike Dr. Bajorek's testimony.

### C.     Catharine Lawton

UMN offers Catharine Lawton as a damages expert to provide opinions on what a hypothetical royalty negotiation would look like. LSI takes no issue with the rigor of Ms. Lawton's chosen methodologies. LSI primarily faults Ms. Lawton for not conforming her analyses to case law on patent damages, leading to flaws in her opinions about the proper royalty base and royalty rate. The Court addresses Ms. Lawton's royalty base and royalty rate opinions in turn before ending by addressing LSI's remaining arguments against Ms. Lawton's report.

#### 1.     Royalty Base

LSI begins by arguing that Ms. Lawton's opinions are unreliable because the patent claims at issue here are method claims, and when determining the royalty base, Ms. Lawton fails to distinguish between sales of products *capable* of practicing the patented method and sales of products that were *actually* configured to practice the patented method. According to LSI, Ms. Lawton needed to distinguish between these two categories because method claims can only be infringed by practicing the patented method, not by selling an apparatus capable of practicing the method.

LSI's premise is correct. "[I]nfringement can only occur in cases in which the patented method is practiced." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1359 (Fed. Cir. 2009); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993). But LSI's conclusion does not follow.

Begin with the text of the patent damages statute. The statute provides that "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. From this, the Court draws two observations relevant to the issue that LSI raises here. First, "a

reasonably royalty for the use made of the invention" is not the only permissible measure of damages. *See Brumfield v. IBG LLC*, 97 F.4th 854, 875 (Fed. Cir. 2024) (reasonably royalties are simply "*a* form of damages" authorized by § 284) (emphasis added). Instead, a reasonable royalty is the floor because damages can be "in no event less than" such a reasonable royalty. What this means here is that a reasonable royalty tied to "the use made of the invention" (*i.e.*, the sale of products actually configured to practice the patented method) is a floor, not a ceiling. This leads to the second observation. Section 284's general damages provision does not require damages to take any specific form but rather authorizes any kind of damages "adequate to compensate for the infringement." Indeed, technology companies "often strike licensing deals in which the amount paid for a particular technology is not necessarily limited to the number of times a patented feature is used by a consumer," and "a company licensing a patented method often has strong reasons not to tie the royalty amount strictly to usage." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009). So, the ultimate question is not whether a damages calculation is tethered to the number of uses of a claimed method so much as it is a question of whether the calculation compensates for the infringement in a broad sense.

Precedents from both the Supreme Court and Federal Circuit support this understanding of § 284. In *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407 (2018), the Supreme Court held that § 284 authorized patent plaintiffs to recover lost foreign profits. Two justices dissented, arguing that § 284 only allows recovery for damages from infringing actions that occurred within the United States, not for noninfringing actions that occurred abroad. *Id.* at 418–420 (Gorsuch, J., dissenting) (observing that a "U.S. patent does not protect its owner from competition beyond our borders," so uses of a patented invention abroad are noninfringing). The seven-justice *WesternGeco* majority directly responded to this argument, explaining that the dissent "wrongly conflate[d] legal injury with the damages arising from that injury." *Id.* at 417.

The Federal Circuit then picked up on this thread in *Brumfield*, noting that *WesternGeco* made clear that "damages are not the same as injury." *Brumfield*, 97 F.4th at 874. The Federal Circuit interpreted that statement of law to mean that courts should not myopically focus on the specific acts of infringement (the acts causing injury) when determining damages. The correct

approach to damages is to take a broader perspective of the *value* derived from infringement. *Id.* at 877. This value can sometimes arise from noninfringing activities when the infringement at issue "enables and is needed to enable otherwise-unavailable profits from" such noninfringing activities. *Id.* Of course, a plaintiff's ability to claim damages flowing from noninfringing conduct is limited. The "enables and is needed to enable" requirement demands a plaintiff show that there is a sufficient causal connection between those noninfringing activities and the infringement at issue before that plaintiff can expand its damages request. *Id.* at 877–79.

To be sure, *WesternGeco* and *Brumfield* dealt specifically with questions of extraterritoriality that are not present in this case. But the principles girding both decisions are applicable in the broader damages context as well. The reason there was doubt over the potential for damages from extraterritorial activity was because such activity is not infringing under U.S. patent law. *WesternGeco*, 585 U.S. at 418–420 (Gorsuch, J., dissenting). *WesternGeco* and *Brumfield* ultimately held that this infringing/noninfringing distinction did not matter for damages and that any activity, whether infringing or not, could give rise to damages so long as it was sufficiently tied to an act of infringement.

In any case, the availability of damages for certain noninfringing products comports with other, more general precedents on patent damages as well. At heart, damages are measured by "the value of what was taken." *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 648 (1915). One way to measure this value is to ask "what it would have been worth to the defendant, as it saw things at the time, to obtain the authority to use the patented technology, considering the benefits it would expect to receive from using the technology and the alternatives it might have pursued." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.* (*CMU*), 807 F.3d 1283, 1304 (Fed. Cir. 2015). If using the patented technology would unlock otherwise unavailable sales, even if those sales do not themselves use the patented technology, it is fair to conclude that a defendant would more greatly value the patented technology in proportion to the volume of such unlocked sales.

Given that determining the value a defendant would have assigned to the patented technology "necessarily involves an element of approximation and uncertainty," *Lucent*, 580 F.3d

at 1325, under certain circumstances it could be reasonable to use a running royalty on the sales of some noninfringing products as a proxy for that value. After all, companies licensing patented methods "often [have] strong reasons not to tie the royalty amount strictly to usage." *Id.* at 1334. Because, for instance, "[t]he administrative cost of monitoring usage can be prohibitively expensive," companies must sometimes use imperfect proxies. *Id.* Such is the case here, where evidence shows that UMN's claimed method would have run millions of times during the alleged infringement, rendering any sort of per-use royalty impractical. McLaughlin Rep. ¶ 6.103.

In sum, sales of even noninfringing products can contribute to the damages calculation if there is a strong enough causal connection between those sales and the alleged infringement. *See IPA Techs., Inc. v. Microsoft Corp.*, No. 18-cv-1-RGA, 2024 WL 1962070, at *1–2 (D. Del. May 2, 2024) (adopting this reading of *Brumfield* and other Federal Circuit opinions).

LSI's arguments to the contrary are unpersuasive. LSI relies mostly on *Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.*, 30 F.4th 1339 (Fed. Cir. 2022). There, the Federal Circuit wrote:

> Damages should be apportioned to separate out noninfringing uses, and patentees cannot recover damages based on sales of products with the mere capability to practice the claimed method. Rather, where the only asserted claim is a method claim, the damages base should be limited to products that were actually used to perform the claimed method.

*Id.* at 1357 (citing *Cardiac Pacemakers*, 576 F.3d at 1358–59). However, LSI reads too much into this language. *Niazi* dealt with an expert who was excluded after opining that sales of components should be included in the royalty base for a claimed method for no more reason than because the components could be used to practice the claimed method. *Id.* at 1356–57. The expert did not argue that the defendant would have been unable to sell those components without infringing. In that situation, where there is no argument that the defendant's infringement unlocked sales that would otherwise be unavailable, it is correct to say that the royalty base is limited to products actually used to practice the claimed method. *Niazi* did not have occasion to address the causation-based principles set forth in *WesternGeco* and *Brumfield* that allow for some awards of damages based on noninfringing activities. Likewise, LSI's appeal to *Enplas Display Device*

*Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398 (Fed. Cir. 2018), is unavailing since *Enplas* had no occasion to consider a causation theory of damages either.

LSI's final attempt to challenge the availability of damages for noninfringing sales fares no better. LSI cites to language in *Brumfield* that "reasonable royalty damages cannot include activities that do not constitute patent infringement." *Brumfield*, 97 F.4th at 876 (quoting *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015)). In doing so, LSI ignores that in the very next paragraph, *Brumfield* caveats that seemingly categorical statement by holding that a patent holder may increase damages "by pointing to foreign conduct that *is not itself infringing*" if the patentee shows that such "foreign conduct increases the value of the domestic infringement itself." *Id.* at 877 (emphasis added). Read fairly and as a whole, *Brumfield* contradicts LSI's position by establishing that there is an exception to the general rule that damages are limited to infringing conduct when there is a causal connection between the infringement and noninfringing conduct.

Accordingly, the Court does not strike Ms. Lawton's opinions regarding the proper royalty base for failure to parse out noninfringing products. There remains the factual question of whether UMN has shown the necessary causation to include noninfringing products in the royalty base. LSI may well have compelling arguments explaining why the claimed method was not vital for unlocking sales of noninfringing products. That, however, is a factual question for the jury to answer at trial. Right now, UMN is simply asking Ms. Lawton to calculate what the royalty base would be if it is successful in proving causation, and it is proper for her to calculate damages assuming that UMN will be able to prove its case. *10X Genomics, Inc. v. Vizgen, Inc.*, No. 22-cv-595-MFK, 2025 WL 26734, at *3 (D. Del. Jan. 3, 2025).

### 2. Royalty Rate

Next, LSI challenges Ms. Lawton's royalty rate calculation on two grounds. First, LSI contends that Ms. Lawton arbitrarily chose 25% of LSI's profits as the starting point for a royalty. Second, LSI asserts that Ms. Lawton failed to apportion the royalty rate because she did not attempt to separate the value of the infringing features from the noninfringing features of the products at issue.

LSI's first critique misses the mark. Damages experts cannot resort to a 25% "rule of thumb" for calculating royalties when that figure is not tied "to the facts of the case at issue." *Uniloc*, 632 F.3d at 1315. Adopting that figure without case-specific factual support is arbitrary and therefore merits exclusion under *Daubert*. *Id.* That said, there is no problem with using 25% as a starting point when there are case-specific facts supporting the figure. Such is the case here, where Ms. Lawton cited to interviews with UMN employees in charge of licensing to support using 25% of profits as a starting point for negotiations. Lawton Rep. ¶ 891 & nn.2011–12, ECF No. 331-13. Ms. Lawton also points to industry practice within university licensing. *Id.*[6] Although LSI questions whether these two pieces of information are sufficient to justify use of 25% as a starting point, those arguments go to Ms. Lawton's credibility and the quality of the underlying data and evidence she used to form her opinions; they are matters of weight, not admissibility. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015).

LSI is correct on its second critique, though, that lack of apportionment is fatal to Ms. Lawton's royalty rate opinion. "When the accused technology does not make up the whole of the accused product, apportionment is required." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018) (collecting cases). This requires patent holders to provide evidence separating the value of patented features from the value of unpatented features and permits an award only of damages attributable to the patented features. *Id.* (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)). That is the situation here, where the claimed method is just one of several methods that LSI's products can perform, and the component that performs the method is just one part of a larger chip. McLaughlin Dep. at 110:6–113:5; McLaughlin Rep. at p. 26.

Ms. Lawton appeared to recognize the need for apportionment, and she made efforts to do so. Using the "Income Approach"[7] to estimate the value of the patented claims in this case, Ms. Lawton prepared both "Case 1" estimates that attributed the entire operating profit from sales of

---

[6] Ms. Lawton cites to paragraph 199 of Appendix 3 in her report for support, but this appears to be a miscite. Lawton Rep., App. 3 ¶ 199, ECF No. 317-8. It appears she means to cite to paragraph 200. *Id.* at ¶ 200.

[7] The Court adopts Ms. Lawton's naming convention for her methodologies without further explanation because LSI does not challenge the reliability of those methodologies.

the relevant products to the patented claims, as well as "Case 2" estimates that attempted to apportion the operating profits according to the signal-to-noise ratio gain from the patented claims. Lawton Rep. ¶¶ 764–779 & tbl.7.11. Similarly, using the "Analytical Approach," Ms. Lawton calculated potential royalty rates with and without apportionment according to signal-to-noise ratio. *Id.* ¶ 957. Yet for some inexplicable reason, Ms. Lawton stopped there without taking the final step. At the last stage of her analysis, when forming her opinion on a reasonable royalty rate, Ms. Lawton listed each of the intermediate conclusions she reached along the way, including the value and potential royalty rate derived from her signal-to-noise ratio apportionment analyses. *Id.* ¶ 1078. She then proceeded to ignore the apportioned values, relying (as far as the Court can tell) only on her unapportioned findings that attributed the full value of the products at issue to the claimed methods. *Id.* ¶ 1079.

Because Ms. Lawton ignored her apportionment analysis when reaching her ultimate opinion on a reasonable royalty rate, that ultimate opinion is inconsistent with the law on patent damages. Accordingly, Ms. Lawton's opinion on reasonable royalty rate is not reliable or relevant under *Daubert*.

### 3. Other Arguments

LSI's remaining arguments against Ms. Lawton's opinions do not raise issues requiring exclusion.

***Prior Jury Verdict.*** LSI takes issue with Ms. Lawton's use of the jury verdict from the *CMU* case cited above as a "benchmark for value in this case." Lawton Rep. ¶ 919. LSI asserts that *CMU* is not comparable enough to this case to be a valid reference, but that goes to weight, not admissibility. The jury is free to assess how comparable *CMU* is to the circumstances here. *See Summit 6*, 802 F.3d at 1299 (juries can assess credibility of underlying facts that an expert relies on). LSI also objects because the *CMU* verdict postdates the hypothetical negotiation in this case by two years. However, there is no categorical bar against using post-negotiation evidence to inform the hypothetical negotiation. *Lucent*, 580 F.3d at 1333–34. Here, UMN represents that Ms. Lawton is referring to the *CMU* verdict only as a type of sanity check. The Court allows that limited purpose. The Court does not, though, permit Ms. Lawton to testify that the royalty from

1  the *CMU* verdict represented $0.10 for every tenth of a decibel gained in signal-to-noise ratio
2  because Ms. Lawton herself admitted that such an interpretation is not supported by the *CMU*
3  record. Lawton Dep. at 142:7–11, 145:17–146:11, ECF No. 317-5. Because the interpretation is
4  unsupported, it and any opinions derived from it are unreliable under *Daubert*. Accordingly,
5  while Ms. Lawton may testify about the final $0.50 per unit royalty that the jury awarded in *CMU*,
6  she cannot testify as to whether and how that verdict is broken down by decibels of signal-to-noise
7  ratio.

8  ***Technical Testimony.*** The parties agree that Ms. Lawton is not a technical expert who
9  may testify about infringement, and UMN represents that it will not solicit any infringement
10 testimony from Ms. Lawton. Nonetheless, LSI moves to exclude Ms. Lawton from offering
11 testimony on infringement or technical matters. The Court does not read Ms. Lawton's report as
12 offering technical testimony. To the extent that Ms. Lawton's testimony at trial might veer into
13 technical areas outside of her expertise, the more prudent and efficient way to deal with that is for
14 LSI to object at trial. *See Synopsys*, 2024 WL 1683637, at *7. As it stands now, without knowing
15 what Ms. Lawton's testimony will be, the Court cannot determine whether that testimony exceeds
16 the scope of her expertise.

17 The Court offers one point of guidance to the parties, though, because LSI specifically
18 objects to Ms. Lawton's efforts to place a value on signal-to-noise ratio gain. Valuation of a
19 technical feature or characteristic is well within Ms. Lawton's expertise even if she is not an
20 expert in the underlying technology. Indeed, that is what damages experts are tasked to do in
21 patent cases—they are asked to value aspects of technology but will rarely be technical experts.
22 Ms. Lawton can properly value signal-to-noise ration by relying on other technical experts and
23 evidence. If LSI believes Ms. Lawton is overstepping on this issue at trial, it should object then.

24 ***"Non-Accused" Products.*** LSI asks the Court to exclude all opinions quantifying
25 damages for what LSI calls "Non-Accused" Products. According to LSI, these "Non-Accused"
26 Products could not have infringed because UMN's technical expert, Dr. McLaughlin, never opined
27 about those products. UMN counters that Dr. McLaughlin opined that specific read channels
28 infringed, and there is evidence from which the jury could conclude that those read channels were

incorporated into the "Non-Accused" Products. Since LSI does not argue that UMN failed to disclose this theory in its infringement contentions, this issue is simply a factual dispute about which products infringe. It is not an issue for a *Daubert* motion challenging a damages expert.

*Use of Projections.* Finally, LSI takes issue with Ms. Lawton's use of sales projections because those projections postdated the hypothetical negotiation and are inconsistent with the actual sales data. But again, evidence is not irrelevant to a hypothetical negotiation merely because it postdates that negotiation. *Lucent*, 580 F.3d at 1333–34. While the focus of a hypothetical negotiation is on the parties' expectations at the time of the negotiation, *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001), evidence postdating the negotiation may still bear on those expectations if such evidence reflects information known to the parties at the time of the negotiation. *Lucent*, 580 F.3d at 1334. That is so here, where the projections came within six months after the date of the hypothetical negotiation and where Ms. Lawton concluded that the projections are based on contemporaneously reported data at the time. Lawton Rep. ¶¶ 755, 969; Lawton Dep. at 138:19–139:15. LSI may vigorously cross-examine Ms. Lawton on her decision to use those projections, but LSI's doubts about the projections do not justify complete exclusion.

\*   \*   \*

In conclusion, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to strike Ms. Lawton's testimony. The Court excludes Ms. Lawton's ultimate opinion providing a reasonable royalty rate for failure to apportion. To be clear, the Court is not excluding Ms. Lawton from testifying as to intermediate steps she took to reach that final royalty rate, only the royalty rate itself. The remainder of the motion is denied, without prejudice to LSI's ability to object at trial if it believes that Ms. Lawton has exceeded the scope of her expertise.

### III. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** the motions to strike as discussed above.

**IT IS SO ORDERED.**

Dated: February 27, 2025

_____
EDWARD J. DAVILA
United States District Judge